UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEMOCRATIC NATIONAL COMMITTEE, <br><br> DSCC, <br><br> *and* <br><br> DCCC, <br><br>     Plaintiffs, <br><br>   v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, <br><br> PAMELA BONDI, in her official capacity as U.S. Attorney General, <br><br> FEDERAL ELECTION COMMISSION, <br><br> And <br><br> JAMES E. TRAINOR III, SHANA M. BROUSSARD, ALLEN DICKERSON, and DARA LINDENBAUM, in their official capacities as Commissioners of the Federal Election Commission, <br><br>     Defendants. | Civil Action No. 25-587 (AHA) |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................................1

BACKGROUND ..................................................................................................................................3

I.      Legal Background. ...............................................................................................................3

II.     Factual Background. ............................................................................................................4

LEGAL STANDARDS ........................................................................................................................6

ARGUMENT.........................................................................................................................................7

        I.      Plaintiffs Lack Standing to Seek Declaratory or Injunctive Relief.........................7

        II.     Count II Fails to State a Claim for Relief...............................................................11

CONCLUSION....................................................................................................................................13

## TABLE OF AUTHORITIES

**Cases**

*Allen v. Wright*,
  468 U.S. 737 (1984) ..................................................................................................11

*Anthony v. Int'l Ass'n of Machinists & Aerospace Workers Dist. Lodge 1*,
  296 F. Supp. 3d 92 (D.D.C. 2017)............................................................................6, 7

\* *Arpaio v. Obama*,
  797 F.3d 11 (D.C. Cir. 2015)................................................................................ 6, 8-9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................6, 7

*Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp.*,
  564 F.3d 462 (D.C. Cir. 2009).....................................................................................6

*Attias v. CareFirst, Inc.*,
  865 F.3d 620 (D.C. Cir. 2017).....................................................................................6

*Cal. Medical Ass'n v. FEC*,
  453 U.S. 182 (1981) .....................................................................................................6

*Campaign Legal Ctr. v. 45Committee, Inc.*,
  118 F.4th 378 (D.C. Cir. 2024)............................................................................ 12-13

\* *Ctr. for Democracy & Tech.* v. Trump,
  507 F. Supp. 3d 213 (D.D.C. *2020), vacated as moot sub nom. Ctr. for Democracy & Tech. v. Biden*, No. 21-5062, 2021 WL 11659822 (D.C. Cir. Aug. 9, 2021)....................................9, 10

\* *Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ........................................................................................ 7, 8, 9, 10

*Collins v. Yellen*,
  594 U.S. 220 (2021) .....................................................................................................2

\* *Defs. of Wildlife v. Perciasepe*,
  714 F.3d 1317 (D.C. Cir. 2013).............................................................................9, 10

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992) ...................................................................................................13

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
  561 U.S. 477 (2010) .....................................................................................................2

*Goland v. United States*,
    903 F.2d 1247 (9th Cir. 1990) ..................................................................................8

*Indus. Energy Consumers of Am. v. FERC*,
    125 F.4th 1156 (D.C. Cir. 2025) ..............................................................................10

*Libertarian Nat'l Comm. v. FEC*,
    228 F. Supp. 3d 19 (D.D.C. 2017) ............................................................................8

*Lodge 1858, Am. Fed'n of Gov't Emps. v. Webb*,
    580 F.2d 496 (D.C. Cir. 1978) ..................................................................................4

\* *Lujan v. Defs. of Wildlife*,
    504 U.S. 552 (1992) ............................................................................................6, 11

*Mississippi v. Johnson*,
    71 U.S. (4 Wall.) 475 (1867) ..................................................................................13

*Morgan Drexen, Inc. v. CFPB*,
    785 F.3d 684 (D.C. Cir. 2015) ..................................................................................8

*Nat'l Ass'n of Home Builders v. EPA*,
    667 F.3d 6 (D.C. Cir. 2011) ..................................................................................6, 8

*Nat'l Republican Senatorial Comm. v. FEC*,
    712 F. Supp. 3d 1017 (S.D. Ohio 2024) ...................................................................8

*Platte River Whooping Crane Critical Habitat Maint. Tr. v. FERC*,
    962 F.2d 27 (D.C. Cir. 1992) ....................................................................................9

*Seila Law LLC v. CFPB*,
    591 U.S. 197 (2020) ............................................................................................1, 2

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) ..................................................................................................11

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ..................................................................................................8

*United Presbyterian Church in the U.S.A. v. Reagan*,
    738 F.2d 1375 (D.C. Cir. 1984) ................................................................................9

*Wagner v. FEC*,
    717 F.3d 1007 (D.C. Cir. 2013) ................................................................................8

*Whitmore v. Arkansas*,
    459 U.S. 149 (1990) ..................................................................................................9

**Constitution**

U.S. Const., art. II, § 1, cl. 1 ...................................................................................................1

U.S. Const., art. II, § 3 .............................................................................................................1

**Statutes**

5 U.S.C. § 2105(a)(1) ...............................................................................................................4

8 U.S.C. § 1226a(a) ................................................................................................................13

28 U.S.C. § 2201 ......................................................................................................................5

52 U.S.C. § 30106 ...............................................................................................................3, 12

52 U.S.C. § 30107(a) ...........................................................................................................3, 12

52 U.S.C. § 30108 ....................................................................................................................3

52 U.S.C. § 30110 ................................................................................................................4, 5

**Rules**

Fed. R. Civ. P. 12(b) ................................................................................................................1

**Administrative & Executive Materials**

\* Exec. Order 14,215, *Ensuring Accountability for All Agencies*,
    90 Fed. Reg. 10447 (Feb. 18, 2025) ................................................................................*passim*

Defendants Donald J. Trump and Pamela Bondi respectfully move this Court to dismiss the above-captioned case pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction and to dismiss Part II of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

**INTRODUCTION**

Plaintiffs' Complaint requests an advisory opinion that this Court has no jurisdiction to provide. Plaintiffs do not allege that President Trump, the Attorney General, or the Federal Election Commission have taken *any* specific action that harm them. To wit, they do not and cannot claim that President Trump or the Attorney General have directed the Federal Election Commission to change its interpretation of law or adopt a certain outcome in any enforcement matter or advisory opinion request because such action has not happened and may never happen. Instead, they claim that the President *could* at some point in the future take such action that *might* adversely impact Plaintiffs' organizations. This is not sufficient to establish Article III standing.

On February 18, 2025, President Trump issued Executive Order 14,215, *Ensuring Accountability for All Agencies*, 90 Fed. Reg. 10447 (Feb. 18, 2025) ("Executive Order" or "E.O. 14,215"). Like the Supreme Court, the Executive Order explained that "[t]he Constitution vests all executive power in the President and charges him with faithfully executing the laws." E.O. 14,215 § 1; *compare with Seila Law LLC v. CFPB*, 591 U.S. 197, 203 (2020) ("Under our Constitution, the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" (quoting U.S. Const., art. II, § 1, cl. 1; *id.* § 3)). Like the Supreme Court, the Executive Order likewise explained that the Constitution "provides for subordinate officers to assist the President in his executive duties," and that "these executive branch officials remain subject to the President's ongoing supervision and control." E.O. 14,125

1

§ 1; *compare with Seila Law*, 591 U.S. at 203–04 ("Because no single person could fulfill that responsibility alone, the Framers expected that the President would rely on subordinate officers for assistance."), *and Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 483 (2010) ("Since 1789, the Constitution has been understood to empower the President to keep [Executive] officers accountable.").

In accordance with those well-settled principles, the Executive Order provided that "[t]he President and the Attorney General, subject to the President's supervision and control, shall provide authoritative interpretations of law for the executive branch." E.O. 14,215, § 7; *compare with Collins v. Yellen*, 594 U.S. 220, 254 (2021) (noting that "interpreting a law enacted by Congress to implement the legislative mandate is the very essence of 'execution' of the law" (citation omitted)). Yet Plaintiffs—the organizations comprising the National Democratic Party—filed a complaint, decrying the Executive Order as an "unprecedented assertion of presidential power." Compl. ¶ 9, ECF No. 1. In Plaintiffs' view, the Executive Order calls into question the constitutionality of the Federal Election Commission (FEC, or Commission), as established by the Federal Election Campaign Act (FECA). Accordingly, Plaintiffs now ask this Court for a declaratory judgment that the FECA is constitutional, and for an injunction against all Defendants (including the President himself) prohibiting them from applying the Executive Order to the Commission.

Cases and controversies are made of sterner stuff, and there is none to be found here. *None* of the parties before the Court has asserted that the FECA is unconstitutional, yet Plaintiffs ask the Court to opine on that statute's constitutionality. And the Executive Order—still less than a month old—has had *no* effect on the operation of the Commission. Nonetheless, Plaintiffs request this Court to enjoin Defendants from applying the Executive Order to the Commission. In other words,

they are asking the Court to enjoin Defendants from doing what they have never done—and have given no indication that they would do.

In short, Plaintiffs ask for a textbook advisory opinion. No federal court has the power to grant that request. That conclusion obviates the need to consider the merits. But were the Court to do so, it should find that by its own terms the Executive Order purports simply to recognize the President's authority to supervise the Executive Branch and in no way conflicts with the FECA. The Court should dismiss.

## BACKGROUND

### I. Legal Background.

In 1974, Congress amended Federal Election Campaign Act to establish the Federal Election Commission. The Commission is composed of six members appointed by the President with the advice and consent of the Senate. 52 U.S.C. § 30106(a)(1). No more than three members "may be affiliated with the same political party." *Id.* In general, the Commission is directed by statute to "administer, seek to obtain compliance with, and formulate policy with respect to" the FECA, and has "exclusive jurisdiction with respect to the civil enforcement" of that Act. *Id.* § 30106(b)(1).

The Commission is also empowered "to render advisory opinions." *Id.* § 30107(a)(7). The FECA also permits individuals to submit "a complete written request concerning the application of th[e] Act … with respect to a specific transaction or activity by the person," and the Commission is required to respond in sixty days or less. *Id.* § 30108(a). Such advisory opinion "may be relied upon by . . . any person involved in the specific transaction or activity with respect to which [the] advisory opinion [was] rendered," so as to avoid sanctions under the FECA. *Id.* § 30108(c)(1)(A).

Finally, the FECA provides that

3

> [t]he Commission, the national committee of any political party, or any individual eligible to vote in any election for the office of President may institute such actions in the appropriate district court of the United States, including actions for declaratory judgment, as may be appropriate to construe the constitutionality of any provision of [the] Act.

*Id.* § 30110. Formerly appearing as 2 U.S.C. § 437h, this provision further requires the district court to "certify all questions of constitutionality of [the FECA] to the United States court of appeals for the circuit involved, which shall hear the matter sitting en banc." *Id.*

## II.   Factual Background.

On February 18, 2025, President Trump issued Executive Order 14,215, *Ensuring Accountability for All Agencies*. That order explained that "[t]he Constitution vests all executive power in the President and charges him with faithfully executing the laws." E.O. 14,215 § 1. And because "it would be impossible for the President to single-handedly perform all the executive business of the Federal Government," the order further explained that the Constitution "provides for subordinate officers to assist the President in his executive duties." E.O. 14,125 § 1.

As relevant to this case, the order provides that "[t]he President and the Attorney General's opinions on questions of law are controlling on all employees in the conduct of their official duties." *Id.* § 7. "Employee" is defined to have "the meaning given that term in" 5 U.S.C. § 2105. *Id.* § 2. Under § 2105, to be an employee an individual must be "subject to the supervision of" either "the President," a "Member[,] or Members of Congress, or the Congress," a "member of a uniformed service," another employee, "the head of a Government controlled corporation," or an adjutant general. 5 U.S.C. § 2105(a)(1), (3); *see also Lodge 1858, Am. Fed'n of Gov't Emps. v. Webb*, 580 F.2d 496, 504 (D.C. Cir. 1978).

Plaintiffs the Democratic National Committee (DNC), the Democratic Senatorial Campaign Committee (DSCC), and the Democratic Congressional Campaign Committee (DCCC) share the mission of electing Democratic candidates to public office. *See* Compl. ¶¶ 13–15.

4

Collectively, Plaintiffs constitute the National Democratic Party, and as such they frequently "raise and spend money and interact with candidates and other political actors." *Id.* ¶ 16.

As they do so, Plaintiffs allege that they "interact with the Commission on a regular basis." *Id.* ¶ 46. For one, they are commonly the "subjects of … complaints made with the Commission." *Id.* ¶ 47. In particular, Plaintiffs point to a currently pending complaint, which alleges that the DSCC ran ads that improperly contributed to and coordinated with a local candidate's campaign. *Id.* ¶ 54. Plaintiffs also allege that they frequently seek advisory opinions from the Commission to obtain the Commission's blessing on a specific contemplated transaction or activity. *Id.* ¶ 48.

On February 28, Plaintiffs filed a complaint raising two Counts. They bring Count I under the Declaratory Judgment Act, 28 U.S.C. § 2201, and under the FECA, 52 U.S.C. § 30110, and seek a declaratory judgment declaring that the FECA is constitutional. Compl. ¶¶ 61–73. In their view, E.O. 14,215 calls FECA's constitutionality into question because it would "prohibit[] the Commissioners . . . from 'advanc[ing] any interpretation of the law . . . that contravenes the President or the Attorney General's opinion on a matter of law.'" *Id.* ¶ 66 (second alteration in original) (quoting E.O. 14,215 § 7). Thus, Plaintiffs assert, their current suit is "appropriate to construe the constitutionality" of the FECA. *Id.* ¶ 62 (quoting 52 U.S.C. § 30110). Furthermore, in Count II Plaintiffs seek equitable relief on largely the same theory. According to Plaintiffs, the executive order violates the FECA by "prohibit[ing] the Commissioners from exercising independent legal judgment in carrying out their statutory duties." *Id.* ¶ 77. Plaintiffs therefore ask this Court to "enjoin Defendants from applying [E.O. 14,215] to the Commission or the Commissioners." *Id.* ¶ 79.

## LEGAL STANDARDS

"Standing is a prerequisite to the existence of a 'Case[]' or 'Controvers[y],' which is itself a precondition to the exercise of federal judicial power." *Attias v. CareFirst, Inc.*, 865 F.3d 620, 625 (D.C. Cir. 2017) (alterations in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 552, 560 (1992)). "The irreducible constitutional minimum of standing contains three elements: (1) injury-in-fact, (2) causation, and (3) redressability." *Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 464 (D.C. Cir. 2009) (internal quotation marks and citation omitted). "Thus, to establish standing, a litigant must demonstrate a personal injury fairly traceable to the opposing party's allegedly unlawful conduct and likely to be redressed by the requested relief." *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 11 (D.C. Cir. 2011) (citation, alterations, and internal quotation marks omitted).

"[A] showing of standing is an essential and unchanging predicate to any exercise of [federal court] jurisdiction." *Id.* (citation and internal quotation marks omitted). That includes actions for "prospective declaratory and injunctive relief." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015); *see also Cal. Medical Ass'n v. FEC*, 453 U.S. 182, 192 n.14 (1981) ("A party seeking to invoke [§ 30110] must have standing to raise the constitutional claim.").

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Anthony v. Int'l Ass'n of Machinists & Aerospace Workers Dist. Lodge 1*, 296 F. Supp. 3d 92, 95 (D.D.C. 2017) (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Under this standard, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (quoting *Iqbal*, 556 U.S. at 678, 679). "A pleading must offer

Case 1:25-cv-00587-AHA   Document 17-1   Filed 03/14/25   Page 12 of 19

more than 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action,' . . . and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* (alteration in original) (citation omitted) (quoting *Iqbal*, 556 U.S. at 678).

**ARGUMENT**

Plaintiffs' lawsuit presents claims in search of a problem. Filing their complaint ten days after President Trump issued Executive Order 14,215, Plaintiffs make numerous assertions challenging the constitutionality of the order. They claim that the order is an "unprecedented assertion of presidential power," Compl. ¶ 9, and that the order is "incompatible" with Supreme Court precedent, *id.* ¶ 45. Yet their response is not to challenge the *Executive Order*, but instead to seek an advisory opinion from this Court on the constitutionality of the *FECA*.

Plaintiffs place the cart before the horse. E.O. 14,215 has not been applied to the Commission's legal interpretations of the FECA, nor is there any indication that the President or the Attorney General will issue any such interpretation. Their claimed harm depends on a series of speculative contingencies, but a "theory of standing, which relies on a highly attenuated chain of possibilities, does not satisfy the requirement that threatened injury must be certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). Because Plaintiffs lack any nonspeculative injury, Article III does not countenance their request for a free-floating affirmation that the FECA is constitutional. This Court should dismiss.

**I.      Plaintiffs Lack Standing to Seek Declaratory or Injunctive Relief.**

The irreducible constitutional minimum of standing is an injury in fact, which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical, a causal connection between the injury and the conduct complained of, and it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

7

*Morgan Drexen, Inc. v. CFPB*, 785 F.3d 684, 689 (D.C. Cir. 2015) (cleaned up).  Because Plaintiffs seek "forward-looking relief," they "must show [they are] suffering an ongoing injury or face an immediate threat of injury." *Id.* (citation omitted).  To claim standing based on "[a]n allegation of future injury," a plaintiff must show that "the threatened injury is 'certainly impending,' or there is a '"substantial risk" that the harm will occur.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper*, 568 U.S. at 409, 414 n.5).

No such injury is present here.  In the mine-run § 30110 case, the plaintiff challenges the FECA's limitations on campaign financing as unconstitutional, usually on First Amendment grounds.  *See, e.g.*, *Wagner v. FEC*, 717 F.3d 1007, 1008 (D.C. Cir. 2013) (First Amendment challenge to restrictions on contributions from government contractors); *Goland v. United States*, 903 F.2d 1247, 1252 (9th Cir. 1990) (First Amendment challenge to reporting requirements); *Libertarian Nat'l Comm. v. FEC*, 228 F. Supp. 3d 19, 22 (D.D.C. 2017) (First Amendment challenge to contribution limits); *Nat'l Republican Senatorial Comm. v. FEC*, 712 F. Supp. 3d 1017, 1029 (S.D. Ohio 2024) (First Amendment challenge to limits on coordinated party expenditures).  And in those cases, the plaintiff can generally show standing simply by showing that the challenged provision of the FECA deprives him or her of a legally protected interest.  *See, e.g.*, *Wagner*, 717 F.3d at 1010 n.1 (the court's "constitutional jurisdiction [was] clear" because the plaintiffs "declare[d] that they would make political contributions but for section 441c [the FECA's contributions limit]").  For instance, a plaintiff's inability to spend past the FECA's contribution limit would impose a concrete injury "fairly traceable to the opposing party's allegedly unlawful conduct." *Nat'l Ass'n of Home Builders*, 667 F.3d at 11 (cleaned up).

Not so here.  Plaintiffs in this case seek a declaratory judgment that the FECA *is* constitutional.  There is no corresponding "certainly impending" injury faced by Plaintiffs.  *Arpaio*,

8

797 F.3d at 19 (quoting *Clapper*, 568 U.S. at 410).  Plaintiffs' purported injury is instead that the President and Attorney General *might* issue an interpretation of law with which the Commissioners *might* disagree, and that the President's or Attorney General's interpretation of law *might* be dispositive in a proceeding to which Plaintiffs are a party.  But this "highly attenuated chain of possibilities" cannot support standing.  *Clapper*, 568 U.S. at 410.

Courts have repeatedly held that claimed harm based on potential agency actions that have not yet occurred and may never occur is insufficient for Article III standing.  "Article III standing requires more than the possibility of potentially adverse regulation."  *Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1324-25 (D.C. Cir. 2013); *see also Platte River Whooping Crane Critical Habitat Maint. Tr. v. FERC*, 962 F.2d 27, 35 (D.C. Cir. 1992) ("Allegations of injury based on predictions regarding future legal proceedings are, however, 'too speculative to invoke the jurisdiction of an Art[icle] III Court.'" (alteration in original) (quoting *Whitmore v. Arkansas*, 459 U.S. 149, 157 (1990)).  For example, in *United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375 (D.C. Cir. 1984) (Scalia, J.), the D.C. Circuit rejected standing based on a claim that an executive order could lead to agencies taking future adverse actions against them.  *Id.* at 1378-81.  Likewise, in *Center for Democracy & Technology v. Trump*, 507 F. Supp. 3d 213 (D.D.C. 2020), *vacated as moot sub nom. Center for Democracy & Technology v. Biden*, No. 21-5062, 2021 WL 11659822 (D.C. Cir. Aug. 9, 2021),[1] the court found that the potential that an agency would promulgate adverse regulations in implementing an executive order was insufficient for standing, explaining: "To be sure, the government might issue regulations that CDT does not like. But it is just as possible that it will not. 'Article III standing requires more than *the possibility* of potentially

---

[1] The D.C. Circuit dismissed the appeal and vacated the judgment as moot because the President rescinded the executive order at issue during the pendency of the appeal.

9

adverse regulation.'" *Id.* at 223 (quoting *Perciasepe*, 714 F.3d at 1324-25). Plaintiffs' claim for standing runs afoul of this well-established case law.

Plaintiffs attempt to escape this conclusion with their bare assertion that "[t]he inability to rely on the independent legal judgment of the FEC's Commissioners inevitably harms Plaintiffs." Compl. ¶ 59. They claim that their "ability to defend [themselves] against the pending complaint . . . will be substantially impaired if the President is able to dictate [how] the Commission resolve[s] disputed questions of law." *Id.* But—again—standing cannot be "predicated on 'guesswork as to how independent decisionmakers will exercise their judgment.'" *Indus. Energy Consumers of Am. v. FERC*, 125 F.4th 1156, 1163 (D.C. Cir. 2025) (quoting *Clapper*, 568 U.S. at 410). And here, Plaintiffs will only face any injury at all if the President or Attorney General independently reaches a legal interpretation that differs from the Commissioners' independent legal interpretations, and even then *only* if that legal issue is determinative of Plaintiffs' rights. Standing requires plaintiffs to do more than hypothesize scenarios in which they might someday somehow be affected by a currently benign action.

Perhaps to avoid the obvious problem that the President and Attorney General have not issued any interpretation of the FECA to date (let alone one that conflicts with Plaintiffs' views on a matter affecting Plaintiffs), Plaintiffs also suggest that the mere fact of the Executive Order will affect their "calculus as to whether to request" advisory opinions. Compl. ¶ 59. That cursory allegation does not help them either. Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416. Perhaps Plaintiffs intend to change their litigation strategy because they think, someday, the President or Attorney General might interpret the FECA differently than the Commissioners in a way that concerns their suit. But that change (and any

10

accompanying harm) is self-inflicted; it cannot be traced to an Executive Order which does not obligate the President or Attorney General to make *any* legal determinations *at all*.

At bottom, Plaintiffs' suit is clearly designed to challenge the constitutionality of the Executive Order, which has yet to be implemented. But the Executive Order regulates how *federal employees* engage in legal interpretation, not Plaintiffs. Where, as here, "the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Lujan*, 504 U.S. at 562 (quoting *Allen v. Wright*, 468 U.S. 737, 758 (1984)). The Executive Order has never been applied to Plaintiffs, and it has never been applied to federal employees who would in turn decide upon Plaintiffs' cases. Nor is there any concrete indication that the Executive Order will be applied in that way. Plaintiffs cannot point to any injury, let alone an injury traceable to Defendants. This Court should dismiss this entire case for lack of subject-matter jurisdiction.

## II. Count II Fails to State a Claim for Relief.

Because this Court lacks jurisdiction to hear this case, it should dismiss both counts of the complaint without considering the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). However, were this Court to look further, it can reject Plaintiffs' request for equitable relief in Count II for failure to state a claim.

The basis for Plaintiffs' request for equitable relief in Count II is that the Executive Order violates the FECA. According to Plaintiffs, the Executive Order's command that the President's "opinions on questions of law are controlling on all employees," E.O. 14,215 § 7, in the Executive Branch "violates FECA because it prohibits the Commissioners from exercising independent legal judgment." Compl. ¶ 77. Thus, Plaintiffs argue, this Court must "enjoin Defendants from applying [the Executive Order] to the Commission or the Commissioners." Compl. ¶ 79.

11

But there is simply no contradiction between the Executive Order and the FECA. In eighty-four paragraphs of their complaint, Plaintiffs search in vain for *any* provision in the FECA which prohibits the President or Attorney General from promulgating authoritative legal interpretations. Without any express conflict to point to, Plaintiffs resort to contradiction by implication. In particular, they suggest that the Commission's authority to "issue advisory opinions," make and repeal rules, or "approve enforcement actions" in consultation with its General Counsel would be rendered "meaning[less]" if the President or Attorney General can control the Commission's legal interpretations. Compl. ¶¶ 25, 30. Plaintiffs also make much of the FECA's nondelegation clause, which provides that "[a] member of the Commission may not delegate to any person his or her vote or any decisionmaking authority or duty vested in the Commission by the provisions of this Act." 52 U.S.C. § 30106(c).

Plaintiffs' arguments fail. *First*, Plaintiffs are incorrect to suggest that the Executive Order deprives the Commission of any role. The Executive Order does not bind the President or Attorney General to stake a position on any or every legal issue that will appear before the Commission. Furthermore, the Executive Order says nothing to affect the Commission's factfinding authorities—such as the Commission's power to require "the attendance and testimony of witnesses and the production of all documentary evidence relating to the execution of its duties." 52 U.S.C. § 30107(a)(3).

*Second*, and more to the point, none of the provisions Plaintiffs mine from the FECA preclude a role of the President or Attorney General in administering the election laws. That the Commission has "exclusive jurisdiction with respect to the civil enforcement" of the FECA is not challenged at all by the Executive Order. 52 U.S.C. § 30106(b)(1). The FECA's exclusive jurisdiction provision "serve[s] only to specify who can bring a civil action and when," *Campaign*

12

*Legal Ctr. v. 45Committee, Inc.*, 118 F.4th 378, 387 (D.C. Cir. 2024) (citation omitted); regardless of any potential future Presidential positions on law, it remains the Commission who will bring any civil enforcement action under the FECA.

Similarly, the Commission would not delegate its authority if it followed the legal position of the President or Attorney General. For instance, 8 U.S.C. § 1226a(a)(3) provides the Attorney General the authority to certify certain aliens as suspected terrorists and to then take such aliens into custody. The statute specifies that the Attorney General "may delegate [this] authority … only to the Deputy Attorney General," who "may not delegate such authority." 8 U.S.C. § 1226a(a)(4). Yet no one divines from those words a rule that the President must have no say in those matters.

In brief, there is no tension between the FECA and the Executive Order. Given the lack of jurisdiction, this Court need not consider Count II on the merits at all. But, if it does so, the Court should dismiss.[2]

## CONCLUSION

The Court should dismiss the complaint for lack of subject-matter jurisdiction and should dismiss Count II for failure to state a claim.

---

[2] Additionally, irrespective of anything else said in this memorandum, Plaintiffs are wrong to ask this Court to enjoin the President from applying the Executive Order. *See* Compl. ¶ 82. "[T]his court has no jurisdiction of a bill to enjoin the President in the performance of his official duties." *See Franklin v. Massachusetts*, 505 U.S. 788, 802–03 (1992) (plurality); *id.* at 827 (Scalia, J., concurring in part and concurring in the judgment); *Mississippi* v. *Johnson*, 71 U.S. (4 Wall.) 475, 501 (1867).

13

Dated:  March 14, 2025	Respectfully Submitted,

	YAAKOV M. ROTH
	Acting Assistant Attorney General
	Civil Division

	CHRISTOPHER R. HALL
	Assistant Director, Federal Programs Branch

	*/s/ Jeremy S.B. Newman*
	JEREMY S.B. NEWMAN
	Trial Attorney
	United States Department of Justice
	Civil Division, Federal Programs Branch
	1100 L Street, N.W.
	Washington, DC 20005
	Tel: (202) 532-3114
	Fax: (202) 616-8470
	Email: jeremy.s.newman@usdoj.gov

	*Attorneys for Defendants Donald J. Trump and Pamela Bondi*

14