**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| DEMOCRATIC NATIONAL COMMITTEE, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 25-cv-587 |
| v. | ) ) | |
| DONALD J. TRUMP, *et al.*, | ) ) | MEMORANDUM IN SUPPORT OF MOTION TO DISMISS |
| Defendants. | ) ) | |

**FEDERAL ELECTION COMMISSION DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS**

Lisa J. Stevenson (D.C. Bar No. 457628)
Acting General Counsel
lstevenson@fec.gov

James D. McGinley (D.C. Bar No. 1017536)
Associate General Counsel
jmcginley@fec.gov

March 21, 2025

Christopher H. Bell (D.C. Bar No. 1643526)
Acting Assistant General Counsel
chbell@fec.gov

Sophia H. Golvach (D.C. Bar No. 1656365)
Attorney
sgolvach@fec.gov

FEDERAL ELECTION COMMISSION
1050 First Street, NE
Washington, DC 20463
(202) 694-1650

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................2

I.     THE FEDERAL ELECTION COMMISSION ................................................2

II.    FACTUAL AND PROCEDURAL HISTORY ................................................6

       A.     Executive Order 14,215 ................................................................6

       B.     Plaintiffs' Complaint ................................................................7

ARGUMENT ................................................................................................9

I.     LEGAL STANDARDS ................................................................................9

       A.     Motion to Dismiss for Lack of Jurisdiction ................................9

       B.     Motion to Dismiss for Failure to State a Claim ..........................10

II.    PLAINTIFFS LACK ARTICLE III STANDING, AND THEIR
       CAUSES OF ACTION ARE NOT RIPE ........................................................10

       A.     Standing and Prudential Ripeness ................................................12

       B.     Because Plaintiffs' Injuries Are Insufficiently
              Imminent and Withholding Judgment Will Not
              Harm Plaintiffs, Plaintiffs Lack Standing, and
              Their Claims Are Not Ripe ................................................13

              1.     Plaintiffs' Alleged Injuries Are Speculative and
                     Not Imminent. ................................................14

              2.     Withholding the Court's Decision Will Not
                     Harm Plaintiffs ................................................19

III.   PLAINTIFFS' COUNT I LACKS THE FOUNDATIONAL
       MINIMUM OF ADVERSITY AND IS OUTSIDE THE
       SCOPE OF FECA'S JUDICIAL REVIEW PROVISION ........................19

       A.     There Is No Adversity Where All Parties Agree FECA is
              Constitutional ................................................20

      B.      The Court Should Dismiss Count I for Failure to State a
               Claim Because it is Beyond the Scope of FECA's Judicial
               Review Provision, 52 U.S.C. § 30110 ............................................................22

IV.     PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM FOR
       RELIEF BECAUSE THERE IS NO TENSION BETWEEN
       EXECUTIVE ORDER 14,215 AND FECA ............................................................23

      A.      E.O. 14,215's Section 8 Limits the Scope of Section 7 as
               Applied to the Commission ............................................................24

      B.      E.O. 14,215 Section 8 Should be Afforded Substantial
               Weight In Light of Section 7's General and Broadly
               Applicable Directive that Does Not Command Specific Action ....................27

CONCLUSION ............................................................................................................31

# TABLE OF AUTHORITIES

CASES                                                                                PAGE(S)

*Abbott Lab'ys v. Gardner*, 387 U.S. 136 (1967)................................................................ 13, 19

*Akinseye v. District of Columbia*, 339 F.3d 970 (D.C. Cir. 2003)................................................ 10

*Am. Petroleum Inst. v. EPA*, 683 F.3d 382 (D.C. Cir. 2012)........................................................ 12

*Arpaio v. Obama*, 797 F.3d 11 (D.C. Cir. 2015) ................................................................ 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................... 10

*Bassidji v. Goe*, 413 F.3d 928 (9th Cir. 2005) ............................................................... 27

*Bazarian Int'l Fin. Assocs., L.L.C. v. Desarrollos Aerohotelco, C.A.*,
    793 F. Supp. 2d 124 (D.D.C. 2011)..................................................................... 18

*Beberman v. Blinken*, 61 F.4th 978 (D.C. Cir. 2023) .......................................................... 21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................. 10

*Bldg. & Const. Trades Dep't, AFL-CIO v. Allbaugh*,
    295 F.3d 28 (D.C. Cir. 2002)......................................................................... 29, 30

*Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 236 (2011). ......................................................... 24

*C&E Servs., Inc. of Washington v. Dist. of Columbia Water and Sewer Auth.*,
    310 F.3d 197 (D.C. Cir. 2002)........................................................................ 17

*Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317 (D.C. Cir. 2013) ............................................ 16

*Califano v. Sanders*, 430 U.S. 99 (1977) .................................................................... 13, 19

*California v. Trump*, 613 F. Supp. 3d 231 (D.D.C. 2020) ...................................................... 15

*Cal. Med. Ass'n v. FEC*, 453 U.S. 182 (1981)................................................................. 20

*Carney v. Adams*, 592 U.S. 53 (2020) ........................................................................ 20

*Church v. Biden*, 573 F. Supp. 3d 118 (D.D.C. 2021).......................................................... 11

*City & Cnty. of S.F. v. Trump*, 897 F.3d 1225 (9th Cir. 2018) ................................................ 27, 28, 31

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) .............................................................. 11, 17

*Common Cause v. Trump*, 506 F. Supp. 3d 39 (D.D.C. 2020) ...................................................... 28

*Cueto v. Bureau of Immigr. and Customs*,
  584 F. Supp. 2d 147 (D.D.C. 2008) ........................................................................................ 20

*El Paso Nat. Gas Co. v. FERC*, 50 F.3d 23 (D.C. Cir. 1995) ...................................................... 14

*Ex parte Endo*, 323 U.S. 283 (1944) ............................................................................................ 27

*Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs*,
  873 F. Supp. 2d 363 (D.D.C. 2012) ........................................................................................ 18

*Grand Lodge of the Fraternal Ord. of Police v. Ashcroft*,
  185 F. Supp. 2d 9 (D.D.C. 2001) ...................................................................................... 10, 12

*HIAS, Inc. v. Trump*, 985 F.3d 309 (4th Cir. 2021) .................................................................... 31

*Holmes v. FEC*, 823 F.3d 69 (D.C. Cir. 2016) ............................................................................ 22

*In re Cao*, 619 F.3d 410 (5th Cir. 2010) ...................................................................................... 22

*Indus. Energy Consumers of Am. v. FERC*, 125 F.4th 1156 (D.C. Cir. 2025) ............................ 15

*J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124 (2001) ............................... 30

*Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249 (D.C. Cir. 2005) ........................................ 9

*Jones v. Ashcroft*, 321 F. Supp. 2d 1 (D.D.C. 2004) ..................................................................... 9

*Jordan v. Fed. Bureau of Prisons*, Civ. No. 21-5217, 2024 WL 2932371 (D.C. Cir. 2024) (per
  curiam) ..................................................................................................................................... 20

*Khadr v. United States*, 529 F.3d 1112 (D.C. Cir. 2008) ............................................................... 9

*Louisiana v. Biden*, Civ. No. 21-778, 2021 WL 4312502 (W.D. La. Aug. 23, 2021) ................. 27

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................................. 12, 15

*Lutter v. JNESO*, 86 F.4th 111 (3d Cir. 2023) ............................................................................. 20

*Marx v. General Revenue Corp.*, 568 U.S.371, 385 (2013) ........................................................ 24

*MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118 (2007) .......................................................... 18

*Miriyeva v. U.S. Citizenship & Immigr. Servs.*, 9 F.4th 935 (D.C. Cir. 2021) ....................... 17, 18

*Missouri v. Biden*, 558 F. Supp. 3d 754 (E.D. Mo. 2021) ............................................................ 19

*Moore v. Charlotte-Mecklenberg Bd. of Educ.*, 402 U.S. 47 (1971) ........................................... 21

*Nat'l Black Police Ass'n v. Dist. of Columbia*, 108 F.3d 346 (D.C. Cir. 1997) .......................... 20

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803 (2003) ............................................... 19

*Nat'l Assoc. of Diversity Officers in Higher Ed. v. Trump*, No. 25-1189
    (4th Cir. Mar. 14, 2025) ......................................................................................................... 18

*Navegar, Inc. v. United States*, 103 F.3d 994 (D.C. Cir. 1997) .................................................. 18

*NRSC v. FEC*, 712 F. Supp. 3d 1017 (S.D. Ohio 2024) ................................................. 19, 22, 23

*Nw. Forest Res. Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996) ...................................... 26, 27

*Open Soc'y Just. Initiative v. Trump*, 510 F. Supp. 3d 198 (S.D.N.Y. 2021) ........................ 16, 30

*POET Biorefining, LLC v. Env't Prot. Agency*, 970 F.3d 392 (D.C. Cir. 2020) .......................... 12

*Pool v. City of Houston*, 87 F.4th 733 (5th Cir. 2023) ................................................................. 21

*Pub. Citizen, Inc. v. Trump*, 297 F. Supp. 3d 6 (D.D.C. 2018) ................................................... 16

*Pub. Citizen, Inc. v. Trump*, 435 F. Supp. 3d 144 (D.D.C. 2019) ......................................... 16, 17

*Pub. Utils. Com'n of the State of Calif. v. F.E.R.C.*, 236 F.3d 708 (D.C. Cir. 2001) .................. 20

*Rattigan v. Holder*, 689 F.3d 764 (D.C. Cir. 2012) .................................................................... 30

*Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122 (D.C. Cir. 2012) ............................................. 10

*Roshan v. Smith*, 615 F. Supp. 901 (D.D.C. 1985) .......................................................... 12, 15, 18

*Settles v. U.S. Parole Comm'n*, 429 F.3d 1098 (D.C. Cir. 2005) ................................................ 10

*Summers v. Earth Island Inst.*, 555 U.S. 488 (2009) ................................................................... 21

*Texas v. United States*, 523 U.S. 296 (1998) .............................................................................. 12

*Trump v. New York*, 592 U.S. 125 (2020) .................................................................................... 12

*Udall v. Tallman*, 380 U.S. 1 (1965) ........................................................................................... 28

*United States v. Abu Marzook*, 412 F. Supp. 2d 913 (N.D. Ill. 2006) ......................................... 27

*United States v. Hassanzadeh*, 271 F.3d 574 (4th Cir. 2001) ................................................ 24, 27

*United States v. Johnson*, 319 U.S. 302 (1943) ......................................................................... 20

*United States v. New Orleans Public Serv., Inc.*, 553 F.2d 459 (5th Cir.1977)........................... 27

*United Transp. Union v. I.C.C.*, 891 F.2d 908 (DC. Cir. 1989) ................................................. 16

*Wyo. Outdoor Council v. U.S. Forest Service*, 165 F.3d 43 (D.C. Cir. 1999)...................... 13, 18

*Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) ........................................... 29, 30

**Statutes**

28 U.S.C. § 2201 .................................................................................................................. 8, 20

52 U.S.C. § 30106 ................................................................................................................ 3, 25

52 U.S.C. § 30106(a)(1) ................................................................................................ 3, 25, 26

52 U.S.C. § 30106(a)(2) .......................................................................................................... 25

52 U.S.C. § 30106(b)(1) ........................................................................................................ 3, 5

52 U.S.C. § 30106(c) .................................................................................................. 3, 4, 13, 26

52 U.S.C. § 30106(f)(4) ............................................................................................................. 3

52 U.S.C. § 30107 ................................................................................................................ 3, 25

52 U.S.C. § 30107(a)(6) ...................................................................................................... 3, 26

52 U.S.C. § 30107(a)(7) ...................................................................................................... 3, 26

52 U.S.C. § 30107(a)(8) ...................................................................................................... 5, 26

52 U.S.C. § 30107(a)(9) ...................................................................................................... 5, 26

52 U.S.C. § 30108(a) ................................................................................................................. 4

52 U.S.C. § 30108(a)(1)....................................................................................................... 4, 13

52 U.S.C. § 30108(a)(2)............................................................................................................. 4

52 U.S.C. § 30108(c) .................................................................................................... 5

52 U.S.C. § 30109(a) .................................................................................................. 13

52 U.S.C. § 30109(a)(1) ............................................................................................... 3

52 U.S.C. § 30109(a)(2) ........................................................................................... 3, 4

52 U.S.C. § 30109(a)(4)(A)(i) ...................................................................................... 4

52 U.S.C. § 30109(a)(6)(A) .......................................................................................... 4

52 U.S.C. § 30109(a)(8) ............................................................................................... 3

52 U.S.C. § 30109(a)(8)(A) .......................................................................................... 4

52 U.S.C. § 30109(a)(8)(C) .......................................................................................... 4

52 U.S.C. § 30109(a)(12) .............................................................................................. 8

52 U.S.C. § 30110 .............................................................................................. *passim*

52 U.S.C. § 30111(a)(8) ............................................................................................ 3, 5

**Rules and Regulations**

Federal Rule of Civil Procedure 12(b)(1) .............................................. 2, 9, 10, 12, 21

Federal Rule of Civil Procedure 12(b)(6) ................................................. 2, 9, 10, 23

11 C.F.R. § 111.4 .......................................................................................................... 3

11 C.F.R. § 111.21 ........................................................................................................ 8

11 C.F.R. § 112.1(a)-(b) ............................................................................................... 4

11 C.F.R. § 112.1(b)-(d) ............................................................................................... 4

11 C.F.R. § 200.2(a) ................................................................................................... 13

11 C.F.R. § 200.2(a)(1) ................................................................................................ 5

11 C.F.R. § 200.3 .......................................................................................................... 5

**Executive Orders**

Executive Order No. 14,215, *Ensuring Accountability for All Agencies*,
   90 Fed. Reg. 10447 (Feb. 18, 2025) ................................................................. *passim*

**Miscellaneous**

H.R.12406, H. Rep. No. 94-917, 94th Cong., 2d Sess. (1976), *reprinted in* FEC, Legislative
   History of Federal Election Campaign Act Amendments of 1976 (1977) ............................... 25

# INTRODUCTION

Plaintiffs DNC, DSCC, and DCCC bring the instant lawsuit based upon the "purport[ed]" effects of Executive Order 14,215 ("Executive Order," or "E.O. 14,215") on the Federal Election Commission ("FEC" or "Commission"). (*See* Pls.' Compl. for Declaratory J. and Injunctive Relief ("Compl.") (ECF No. 1) ¶¶ 17, 18, 43, 58, 76.)  The Executive Order provides in relevant part that "[t]he President and the Attorney General, subject to the President's supervision and control, shall provide authoritative interpretations of law for the executive branch."  E.O. 14,215, § 7.  It further provides that "[n]othing in this order shall be construed to impair or otherwise affect the authority granted by law to an executive department, agency, or the head thereof" and that "[t]his order shall be implemented consistent with applicable law and subject to the availability of appropriations."  E.O. 14,215, § 8(b)(i), (c).  Plaintiffs' Complaint, which speculates that, *at some point in the future*, the President and the Attorney General will come to a different legal conclusion than the Commission with respect to the Federal Election Campaign Act ("FECA"), which they will then impose on the Commission and harm plaintiffs, fails as a matter of law.  The Complaint's allegations do not create a ripe "case or controversy" necessary to invoke this Court's subject-matter jurisdiction, nor do they state a claim upon which relief may be granted.  On either basis, the Court must dismiss the Complaint.

*First*, plaintiffs lack Article III standing, having not suffered a concrete, non-speculative injury in fact.  Plaintiffs have not challenged any Commission action implementing the Executive Order, and their hypothetical claims of future events do not suffice for standing purposes.  *Second*, and for similar reasons, plaintiffs' case is not prudentially ripe.  Not only are plaintiffs' harms insufficiently imminent, withholding judgment will not harm plaintiffs.  *Third*, plaintiffs do not establish a genuine controversy within the meaning of the Declaratory Judgment

Act nor adversity between the parties to establish a constitutional cause of action in Count I. In other words, the Court lacks jurisdiction where defendants *do not contest* plaintiffs' claim that the relevant portions of the Federal Election Campaign Act are constitutional. And *fourth*, Count I fails to state a claim because plaintiffs in actuality challenge the constitutionality *of the Executive Order and not FECA*, which is beyond the scope of FECA's judicial review provision that they invoke.

*Finally*, plaintiffs fail to state a claim because there is simply no conflict between E.O. 14,215 and FECA. When courts must evaluate an executive order in the abstract, as plaintiffs demand here, courts require a high degree of specificity and an unambiguous command to act before a challenge to that order can proceed. In contrast, when more generalized language is accompanied by an admonition to carry out the order consistent with applicable law, courts will not assume the order will be implemented illegally. Here, plaintiffs' proposed construction advances a myopic focus on Section 7, which both fails to account for the generalized and non-specific language of that Section *and* does not even mention Section 8, which provides that the Executive Order should be carried out consistent with applicable law and the authority vested to the heads of federal agencies. *See* E.O. 14,215, § 8(b)(i), (c).

Before allowing this lawsuit to proceed, this Court must be assured that it has before it a justiciable controversy presenting plausibly meritorious causes of action. Because it cannot, dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6).

## BACKGROUND

## I.    THE FEDERAL ELECTION COMMISSION

The FEC is a six-member, independent agency of the United States government with "exclusive jurisdiction" to administer, interpret, and civilly enforce FECA. *See generally* 52

U.S.C. §§ 30106, 30107.  Congress authorized the Commission to "formulate policy" with respect to FECA, *id.* § 30106(b)(1); to make, amend, and repeal rules and issue advisory opinions, *id.* §§ 30107(a)(7), (8), 30111(a)(8), 30111(a)(8); and to investigate possible violations of the Act, *id.* § 30109(a)(1)-(2).  The Commission is further vested with independent litigating authority and has "exclusive jurisdiction with respect to the civil enforcement" of FECA.  *Id.* § 30106(b)(1).  The Commission may "initiate, . . . defend [in matters regarding FEC administrative complaints][1] . . . or appeal any civil action in the name of the Commission to enforce the provisions of" FECA when authorized by the affirmative vote of four or more Commissioners.  *Id.* § 30107(a)(6); *see id.* § 30106(c).  In addition, FECA generally authorizes the FEC to "appear in and defend against any action instituted under this Act[,]" which is not subject to a Commissioner vote.  52 U.S.C. § 30106(f)(4).[2]

FECA provides that decisions of the Commission "with respect to the exercise of its duties and powers under the provisions of th[e] Act shall be made by a majority vote of the members of the Commission," and that certain specified actions require "the affirmative vote of 4 members of the Commission."  52 U.S.C. § 30106(c) (citing *id.* § 30107(a)(6)-(9)).  No member of the Commission may "delegate to any person his or her vote or any decisionmaking authority or duty vested in the Commission" by FECA.  *Id.* § 30106(c).  Importantly, no more than three Commissioners can represent the same political party.  *Id.* § 30106(a)(1).

FECA permits any person to file an administrative complaint with the Commission alleging a violation of the Act.  *Id.* § 30109(a)(1); 11 C.F.R. § 111.4.  After reviewing the

---

[1]    *See* 52 U.S.C. § 30109(a)(8).

[2]    The Commission's authority to conduct appeals, 52 U.S.C. § 30107(a)(6), generally does not authorize the Commission to independently conduct discretionary appeals before the Supreme Court, *i.e.*, by petition for certiorari. *See FEC v. NRA Pol. Victory Fund*, 513 U.S. 88, 98 (1994).

complaint and any respondent responses, if at least four of the FEC's Commissioners vote to find "reason to believe" FECA has been violated, the Commission may investigate the alleged violation.  52 U.S.C. §§ 30106(c), 30109(a)(2).  If the Commission proceeds with an investigation, it then must determine whether there is "probable cause" to believe that FECA has been violated, which likewise requires the affirmative vote of at least four Commissioners.  52 U.S.C. §§ 30109(a)(4)(A)(i), 30106(c).  FECA authorizes the agency, if four Commissioners agree, to institute a *de novo* civil enforcement action in federal district court if no conciliation agreement is reached.  *Id.* § 30109(a)(6)(A).  If the Commission dismisses an administrative enforcement matter, FECA provides that a complainant "aggrieved" by the dismissal "may file a petition with the United States District Court for the District of Columbia" to obtain judicial review.  *See id.* § 30109(a)(8)(A).  The reviewing court may only order the Commission to "conform with" the court's declaration within 30 days, *id.* § 30109(a)(8)(C), and if it does not, the administrative complainant may bring "a civil action to remedy the violation involved."  *Id.*

Any person may request an advisory opinion regarding the application of FECA and Commission regulations to a specific transaction or activity by the person.  *Id.* § 30108(a)(1); 11 C.F.R. § 112.1(a)-(b).  FECA generally provides that the Commission "shall render [an] advisory opinion" within 60 days of receiving a request.  52 U.S.C. § 30108(a); *see* 11 C.F.R. § 112.1(b)-(d).  In the event that an advisory opinion is requested by "a candidate, or any authorized committee of such candidate, during the 60-day period before any election for Federal office involving the requesting party," the Commission must treat the request on an expedited basis, and "render a written advisory opinion relating to such request no later than 20 days after the Commission receives a complete written request."  52 U.S.C. § 30108(a)(2).  An advisory opinion must garner four affirmative Commissioner votes to issue.  *See id.* §§ 30106(c),

30107(a)(8).  When the Commission issues an advisory opinion finding the proposed transaction

or activity lawful under FECA and its regulations, the opinion acts as a safe harbor against

sanctions provided by FECA for any person involved in any specific transaction or activity that

is indistinguishable in all material aspects from the transaction or activity addressed in the

advisory opinion.  52 U.S.C. § 30108(c).

　　　　Pursuant to Commission regulations, "[a]ny interested person may file with the

Commission a written petition for the issuance, amendment, or repeal of a rule" implementing

FECA. 11 C.F.R. § 200.2(a)(1).  The regulations set forth detailed steps guiding how petitions

for rulemaking are processed.  *See* 11 C.F.R. § 200.3 (discussing, *inter alia*, public notices,

public comment and hearings).  Once it has considered any comments on a Notice of

Availability, Notice of Inquiry, Advance Notice of Proposed Rulemaking, or public hearing, as

well as "any other information relevant to the subject matter of the petition, the Commission will

decide whether to initiate a rulemaking." *Id.* § 200.4(a).  If the Commission decides not to

proceed with a rulemaking, it "publish[es] a Notice of Disposition in the Federal Register and

notif[ies] the petitioner." *Id.* § 200.4(b).  Each of the various steps the Commission must or may

take throughout this process, such as issuing a Notice of Availability, Notice of Inquiry, or

Advance Notice of Proposed Rulemaking, or holding a public hearing, in addition to the decision

to initiate a formal rulemaking, requires the affirmative votes of at least four FEC

Commissioners. *See* 52 U.S.C. §§ 30106(b)(1), (c), 30107(a)(8)-(9), 30111(a)(8).  In addition to

these formal actions, the Commission organizes its priorities and directs agency resources for

regulation matters via affirmative votes directing the drafting and preparation of notices and rules prior to a final vote by the Commissioners.

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.  Executive Order 14,215

On February 18, 2025, President Trump issued Executive Order 14,215, *Ensuring Accountability for All Agencies*, 90 Fed. Reg. 10447 (Feb. 18, 2025) (hereinafter "EO" or "EO 14,215").  The order stated that "[t]he Constitution vests all executive power in the President and charges him with faithfully executing the laws."  EO 14,215 § 1.  And because "it would be impossible for the President to single-handedly perform all the executive business of the Federal Government," the order further explained that the Constitution "provides for subordinate officers to assist the President in his executive duties."  *Id.*

Under Section 7 (Rules of Conduct Guiding Federal Employees' Interpretation of the Law) of EO 14,215, the President and the Attorney General, subject to the supervision of the President, "shall provide authoritative interpretations of the law for the executive branch."  Their opinions on "questions of law" are "controlling on all employees in the conduct of their official duties."  *Id.*  And "[n]o employee of the executive branch acting in their official capacity may advance an interpretation of the law as a position of the United States that contravenes the President or the Attorney General's opinion on a matter of law, including but not limited to the issuance of regulations, guidance, and positions advanced in litigation, unless authorized to do so by the President or in writing by the Attorney General."  *Id.*  However, Section 8 (General Provisions) of the Executive Order provides that "[n]othing in this order shall be construed to impair or otherwise affect . . . the authority granted by law to an executive department, agency,

or head thereof." *Id.* § 8.  Section 8 also provides that the executive "order shall be implemented

consistent with applicable law." *Id.*

Other sections of the Executive Order lay out additional topics, including agency

regulation review by the Office of Information and Regulatory Affairs ("OIRA"), performance

standard reporting and management by the director of the Office of Management and Budget,

and agency consultation on policies and priorities with the Executive Office of the President.  *Id.*

§§ 3-6.  President Trump has issued a Fact Sheet contextualizing the Executive Order.  *See* Fact

Sheet: President Donald J. Trump Reins in Independent Agencies to Restore a Government that

Answers to the American People, THE WHITE HOUSE, Feb. 18, 2025,

https://www.whitehouse.gov/fact-sheets/2025/02/fact-sheet-president-donald-j-trump-reins-in-

independent-agencies-to-restore-a-government-that-answers-to-the-american-people/. However,

the Commission is not aware of any guidance provided by the administration concerning

implementing the Order.

### B.  Plaintiffs' Complaint

DNC, DSCC and DCCC are the national campaign committees of the Democratic Party,

"dedicated to electing Democratic candidates at the national, state, and local levels," including

the U.S. Senate and the U.S. House of Representatives.  (Compl. ¶ 13; *see also id.* ¶¶ 14-15.)  On

February 28, 2025, plaintiffs filed their Complaint with this Court asserting that E.O. 14,215

purports to "eliminate FECA's requirement that the executive branch's legal interpretations of

FECA's provisions reflect the bipartisan consensus of an expert multimember board and replace

that bipartisan consensus with the judgment of a single partisan political figure—the President of

the United States."  (*Id.* ¶ 5.)  Plaintiffs allege that as "repeat players before the FEC who interact

with the Commission on an ongoing basis," (*id.* ¶ 55), their "core activities" rely on the premise

that "the FEC's decisions will be rendered by a bipartisan Commission that is made up of members of multiple political parties, each exercising independent judgment." (*Id.* ¶ 57.) Plaintiffs allege that, as a result of the E.O., the Commission will take "positions on questions of law for the partisan purpose of disadvantaging Democratic campaigns and Democratic candidates" in fulfilling the FEC's statutory mandates, (*see id.* ¶ 57, and that plaintiffs' ability to "rely on the independent legal judgment of the Commission" is hampered. (*Id.* ¶ 59.) More specifically, plaintiffs claim that the E.O. has harmed them because their "calculus" on whether to request an advisory opinion from the FEC might be affected, and their ability to file and defend against administrative complaints in the future will be "substantially impaired" because they will be unable to rely on the "independent legal judgment" of the Commissioners.[3] (*Id.* ¶ 59.)

The Complaint raises two Counts. Count I alleges a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201, and under the special judicial review provision of FECA, 52 U.S.C. § 30110, which requires a district court to certify questions of constitutionality of FECA to the U.S. Court of Appeals for the D.C. Circuit, sitting *en banc*. (*Id.* ¶¶ 61-73.) Plaintiffs allege that the E.O. is inconsistent with FECA, and thus calls FECA's constitutionality into question, because it prohibits the Commission and Commission employees from "advancing any interpretation of the law" that "contravenes the President or Attorney General's opinion on a matter of law." (*Id.* ¶ 76 (quoting E.O. 14,215 § 7).)

Plaintiffs seek equitable relief in Count II, and allege that Section 7 of the EO as applied to the Commission "violates FECA" because it allegedly "prohibits Commissioners from

---

[3]    Plaintiffs also reference an allegedly pending matter under review. (*See* Compl. ¶¶ 51-54.) The agency does not discuss open enforcement matters pursuant to statutory confidentiality provisions. *Cf.* 11 C.F.R. § 111.21; 52 U.S.C. § 30109(a)(12).

exercising independent legal judgment and carrying out their statutory duties." (Compl. ¶ 77.)

Plaintiffs ask *this* Court to "[d]eclare that the provisions of FECA empowering the

Commissioners to exercise independent legal judgment" do not violate the U.S. Constitution;

declare that Section 7 of E.O. 14,215 is unlawful as applied to the Commission, and to enjoin

defendants from applying Section 7 of the EO to the Commission. (*Id.* ¶¶ 80-82.)[4]

## ARGUMENT

## I.    LEGAL STANDARDS

### A.    Motion to Dismiss for Lack of Jurisdiction

A plaintiff bears the burden of demonstrating that she has properly invoked this Court's

subject-matter jurisdiction. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015); *see also*

*Khadr v. United States,* 529 F.3d 1112, 1115 (D.C. Cir. 2008). Federal Rule of Civil Procedure

12(b)(1) allows dismissal for "lack of jurisdiction over the subject matter" of claims asserted in

the Complaint. *Khadr,* 529 F.3d at 1115. When deciding a motion under Rule 12(b)(1), a court

must accept all well-pleaded factual allegations in the complaint as true. *See Jerome Stevens*

*Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). Because the court has "an

affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority,"

*Jones v. Ashcroft,* 321 F. Supp. 2d 1, 5 (D.D.C. 2004) (internal quotation marks and citation

omitted), however, the factual allegations in the complaint "will bear closer scrutiny in resolving

---

[4]    More than a week after filing its Complaint, On March 11, 2025, plaintiffs filed a Motion
for Preliminary Injunction, repeating virtually the same allegations in the Complaint, and seeking
preliminary injunctive relief against application of Section 7 of EO 14,215 to the Commission
and Commissioners. (*See* Pls.' Mot. for Prelim. Injunction, ECF No. 12.)

a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of the Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001).

To determine whether it has jurisdiction over a claim, the court may consider materials outside the pleadings. *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005). No action of the parties can confer subject matter jurisdiction on a federal court because subject matter jurisdiction is both a statutory requirement and a constitutional requirement under Article III. *Akinseye v. District of Columbia,* 339 F.3d 970, 971 (D.C. Cir. 2003).

### B.    Motion to Dismiss for Failure to State a Claim

Dismissal of a complaint is appropriate under Federal Rule of Civil Procedure 12(b)(6) where, accepting plausible factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor, the complaint fails as a matter of law to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 129 (D.C. Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of a cause of action's elements, supported by mere conclusory statements," do not suffice. *Id.* at 663.

## II.    PLAINTIFFS LACK ARTICLE III STANDING, AND THEIR CAUSES OF ACTION ARE NOT RIPE

The Commission joins Defendants President Trump and Attorney General Bondi's arguments regarding plaintiffs' lack of standing as set forth in their Motion to Dismiss. (*See* Defs. Trump & Bondi's Mem. in Support of Mot. to Dismiss the Compl. (ECF No. 17-1) (filed Mar. 14, 2025), at 7-11 ("Defs.' Trump and Bondi Mot. to Dismiss" or "Motion").) As explained in their Motion, the Executive Order "has not been applied to the Commission's legal

interpretations of the FECA, nor is there any indication that the President or Attorney General will issue any such interpretation." (*Id.* at 7.) Consequently, plaintiffs lack standing as to either of their two Counts, and the Complaint should be dismissed in its entirety on this basis.

Crucially, plaintiffs do not allege that the President or the Attorney General has directed the Commission to implement any particular interpretation of FECA, either as a matter of policy or with respect to plaintiffs specifically. (*See id.* at 10 ("[T]he President and Attorney General have not issued any interpretation of the FECA to date."); *see generally* Compl.) Rather, plaintiffs vaguely allege that, in an unspecified manner, on an unspecified date, regarding an unspecified issue, the President and Attorney General might come to a different conclusion than the Commission on a matter of law and might then prevail upon the Commission to supplant the independent views of its Commissioners to disadvantage plaintiffs. (*See* Mot. at 10; *see generally* Compl.) This is entirely speculative and has not come to pass, and indeed there are particular reasons to believe it *will* not come to pass. *See infra* Part IV (explaining that the Executive Order is compatible with FECA).

Because plaintiffs' injuries are wholly speculative and rely on a tenuous chain of assumptions about government actions and their effect on the parties, there is no live case or controversy for this Court to adjudicate. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411-12 (2013). And even if plaintiffs had met the irreducible constitutional minimum to establish their standing, their claims fail for a further reason: they are not ripe. *See Church v. Biden*, 573 F. Supp. 3d 118, 135 (D.D.C. 2021). In either case, plaintiffs' causes of action are not justiciable, and the Court must dismiss the Complaint.

A.    **Standing and Prudential Ripeness**

The Article III standing inquiry comprises three essential elements.  First, a plaintiff must show it has "suffered an injury in fact," which the Supreme Court defines as "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). Second, a plaintiff must show that there is a "causal connection between the injury and the conduct complained of," which requires the injury to be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* (cleaned up).  And third, plaintiff must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (cleaned up). "Each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Id.*  Where a plaintiff fails to establish standing, a court must dismiss for lack of jurisdiction under Rule 12(b)(1). *See Grand Lodge of Fraternal Ord. of Police*, 185 F. Supp. 2d at 13.

Though related to standing, the prudential ripeness doctrine is distinct.  It addresses not "*who* may bring an action" but "*when* such an action may be brought." *Roshan v. Smith*, 615 F. Supp. 901, 904 (D.D.C. 1985).[5]  Prudential ripeness "ensures that Article III courts make decisions only when they have to, and then, only once." *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 387 (D.C. Cir. 2012).  To weigh the prudential ripeness of a case, courts consider: (1) the

---

[5]      Historically, courts considered both constitutional and prudential ripeness, but the D.C. Circuit has recognized that constitutional ripeness has been, at least in part, "subsumed into the Article III requirement of standing." *POET Biorefining, LLC v. Env't Prot. Agency*, 970 F.3d 392, 403 (D.C. Cir. 2020).  For avoidance of doubt, however, plaintiffs also fail to establish Article III ripeness because their claims are "dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 529 U.S. 125, 131 (2020) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

"'fitness of the issues for judicial decision'"; and (2) the "extent to which withholding a decision will cause hardship to the parties.'" *Church*, 573 F. Supp. 3d at 135 (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 49 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)). "[T]he ripeness requirement dictates that courts go beyond constitutional minima and take into account prudential concerns which in some cases may mandate dismissal even if there is not a constitutional bar" to the court considering the case. *Wyo. Outdoor Council v. U.S. Forest Service*, 165 F.3d 43, 48 (D.C. Cir. 1999).

**B. Because Plaintiffs' Injuries Are Insufficiently Imminent and Withholding Judgment Will Not Harm Plaintiffs, Plaintiffs Lack Standing, and Their Claims Are Not Ripe**

Despite plaintiffs' arguments to the contrary, the Commission continues to carry out its statutorily mandated duties, including adjudicating administrative complaints, 52 U.S.C. § 30109(a), considering and rendering advisory opinions, *id.* § 30108(a)(1), and responding to petitions for rulemaking, 11 C.F.R. § 200.2(a), subject to the requirement that Commissioners "not delegate to any person his or her vote or any decisionmaking authority or duty vested in the Commission" by FECA. *Id.* § 30106(c). The Commission is not currently aware of any external interpretations of FECA, save judicial interpretations, that are binding on the Commissioners. (*See* Mot. at 11 ("The Executive Order has never been applied . . . to federal employees who would in turn decide upon plaintiffs' cases.").) As set forth *infra*, FECA is entirely consonant with E.O. 14,215, and the Commission is carrying out its duties on that basis. *See infra* Part IV. Plaintiffs' injuries are thus neither sufficiently concrete nor imminent to support standing or the

ripeness requirement; moreover, plaintiffs will not be harmed by the Court withholding its decision, which, standing alone, renders plaintiffs' causes of action unripe.

### 1.    Plaintiffs' Alleged Injuries Are Speculative and Not Imminent

Plaintiffs do not allege that the Commission has deviated from conducting its business as usual.  Instead, they ground their injuries in hypothetical scenarios requiring specific series of decisions by the President and Attorney General, the FEC, and plaintiffs themselves.  *See El Paso Nat. Gas Co. v. FERC*, 50 F.3d 23, 27 (D.C. Cir. 1995) (concluding that injuries flowing from a "hypothetical premise" do not support standing); Mot. at 7 ("[Plaintiffs'] claimed harm depends on a series of speculative contingencies.").  Plaintiffs claim to rely on an "understanding" that the Commission will not take "positions on questions of law for the partisan purpose of disadvantaging Democratic campaigns and Democratic candidates" in fulfilling the FEC's statutory mandates.  *See* Compl. ¶ 57.  Plaintiffs allege that the Executive Order "obliterates this understanding" by doing away with the Commission's independent legal judgment.  *Id.* ¶¶ 58-59.  Plaintiffs then allege two injuries that flow from the Executive Order, one hypothetical and the other forward-looking.  As to the former, plaintiffs say the Executive Order would have affected plaintiffs' "calculus as to whether to request an advisory opinion" in weeks leading up to the 2024 election.[6]  (*Id.* ¶ 59.)  As to the latter, plaintiffs assert the Executive Order might influence the Commission's decisions moving forward and plaintiffs' ability to defend themselves in administrative actions, including with respect to an allegedly

---

[6]    Plaintiffs reprise and elaborate on these concerns in arguing for preliminary injunctive relief.  In their briefing, plaintiffs allege, *inter alia*, that they fear "new or different" approaches to fundraising "*could* result" in an FEC complaint; they "now *anticipate*" adverse rulings in any efforts they *may* make; and they "*expect*" unfavorable and punitive actions and "will be forced to limit their efforts to innovate" in unspecified ways.  (*See* Pls.' Mem. in Supp. of Mot. for Prelim. Inj. (ECF No 12-1) at 19 ("Pls. P.I. Mot.").)

pending administrative complaint against plaintiffs.  *See id.* ¶¶ 51-56, 59.  Nowhere in the

Complaint, however, do plaintiffs allege that the Commission has taken any action affecting

them since the Order was issued, or that such a decision was averse to their interests.  (*See*

*generally id.*)  Plaintiffs' allegations do not suffice for this court's jurisdiction.  *See California v.*

*Trump*, 613 F. Supp. 3d 231, 240 (D.D.C. 2020) (quoting *Lujan*, 504 U.S. at 560) (rejecting

"conjectural or hypothetical" injuries that are neither "actual [n]or imminent" as insufficient for

standing).  By the same token, plaintiffs' claims are not now fit for judicial decision and thus not

ripe.  *Roshan*, 615 F. Supp. at 905 ("[T]o the extent that the justiciability challenge focuses on

the sufficiency versus remoteness of the alleged injury, ripeness and standing concerns merge.")

To date, the Executive Order has not been applied to the Commission's legal

interpretations of FECA, nor is there any indication that the President or Attorney General will

ever issue any such interpretation.  *See Indus. Energy Consumers of Am. v. FERC*, 125 F.4th

1156, 1162 (D.C. Cir. 2025) (rejecting standing when "petitioners fail to demonstrate that they

will ever suffer any injury" from the Federal Energy Regulatory Commission's grant of an

abandonment incentive); Mot. at 7 (explaining "E.O. 14,215 has not been applied to the

Commission's legal interpretations of the FECA, nor is there any indication that the President or

the Attorney General will issue any such interpretation").  Indeed, the Commission has not taken

*any* action materially affecting plaintiffs since the Executive Order was issued.  *See supra* p. 8

n.3.  As such, plaintiffs cannot show that the Executive Order has resulted in the Commission

taking any particular view of FECA, much less any view that harms plaintiffs.  (*See* Mot. at 7,

10.)

While "[t]he risk of future injury can, at times, support a party's standing to sue," where a

party alleges "'only future injuries,'" it "'confronts a significantly more rigorous burden to

establish standing.'" *Pub. Citizen, Inc. v. Trump*, 435 F. Supp. 3d 144, 155 (D.D.C. 2019) (quoting *United Transp. Union v. I.C.C.*, 891 F.2d 908 (DC. Cir. 1989)).  Specifically, an asserted future injury must be "certainly impending" or there must be a "substantial risk" that the harm will occur.  *Pub. Citizen, Inc*, 435 F. Supp. 3d at 155; *Clapper*, 568 U.S. at 409 ("Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative.")

Plaintiffs cannot meet that high burden particularly here, where their allegations rest on "predictive assumptions" about future decisions the FEC *may* make, including in response to actions plaintiffs *may* take, and/or in response to interpretations of the law President Trump or the Attorney General *may* make.  *See Pub. Citizen, Inc.*, 435 F. Supp. 3d at 155-156; *Pub. Citizen, Inc. v. Trump*, 297 F. Supp. 3d 6, 19 (D.D.C. 2018) (rejecting predictions as to how an agency will act in light of an Executive Order as "speculative and conclusory").  It is thus highly speculative to assume, as plaintiffs do, that the FEC will violate the law in implementing the Executive Order.  *See* Compl. ¶ 77 (alleging that Commissioners will not exercise independent legal judgment); *Open Soc'y Just. Initiative v. Trump*, 510 F. Supp. 3d 198, 215-16 (S.D.N.Y. 2021).  ("[A]t present, it is no more than speculation that OFAC intends to violate [the International Economic Emergency Powers Act] in its enforcement of the Executive Order.").  It is equally speculative to conclude that the Executive Order will lead the FEC to take adverse actions against plaintiffs.  *Cf. Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1324-25 (D.C. Cir. 2013) ("Article III standing requires more than the possibility of potentially adverse regulation.").

This is so even when plaintiffs, as here, allege that the Executive Order "authorizes" the conduct they fear.  *Clapper*, 568 U.S. at 412; *see* Compl. ¶ 43 (alleging that the Executive Order

"preclude[s] the Commissioners and other FEC employees from advancing any legal positions other than those of the President and Attorney General").  In *Clapper v. Amnesty International*, human rights organizations, attorneys, and others alleged that, due to government surveillance authorized by the FISA Amendments Act, there was an "objectively reasonable likelihood" that their communications with their foreign contacts would be intercepted.  *See Clapper*, 568 U.S. at 407, 410-411.  Even though the statute authorized such targeting, the Supreme Court concluded that, without specific facts demonstrating that their contacts, *specifically*, would be targeted, plaintiffs' injuries were not imminent.  *See id.* at 412.

Plaintiffs' injuries here are even less immediate than those in *Clapper*.  (*See* Compl. ¶¶ 58 (explaining that the Executive Order "purports to provide" the President with the capability to direct the FEC's legal interpretations but providing neither examples nor a timeline).)  Unlike the FISA Amendments Act, E.O. 14,215 does not authorize or proscribe any *specific* action or legal view for the myriad executive agencies upon which it touches.  *See generally* E.O. 14,215. Rather, it is a government-wide order embodying a policy without particular emphasis on the FEC and which, as explained, *infra*, must be "implemented consistent with applicable law."  *See id.* §8(c); *infra* Part IV.  Because plaintiffs' injuries are not "certainly impending," and they allege no facts supporting a "substantial risk" of their injuries occurring, they are not sufficiently imminent to support standing.  *See Pub. Citizen, Inc*, 435 F. Supp. 3d at 155.

The relevant criteria to establish standing are the same for claims brought pursuant to the Declaratory Judgment Act, and require the dismissal of plaintiffs' Count I seeking that relief.  It is black letter law that the availability of declaratory relief requires the existence of a judicially remediable right.  *C&E Servs., Inc. of Washington v. Dist. of Columbia Water and Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002); *see Miriyeva v. U.S. Citizenship & Immigr. Servs.*, 9 F.4th

935, 945 (D.C. Cir. 2021) ("Since the district court otherwise lacked jurisdiction over Miriyeva's

claims . . . ."); *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 126-27 (2007).  Because

plaintiffs raise only hypothetical injuries, *i.e.*, that the Commission will take legal positions for

partisan and anti-democratic reasons that undermine the Commission's independent judgment,

these allegations fall on the side of "merely abstract or speculative" rather than the "immediate"

or "real" allegations that a party needs to qualify for a declaratory judgment.  *See Navegar, Inc.

v. United States*, 103 F.3d 994, 998 (D.C. Cir. 1997); *see also Bazarian Int'l Fin. Assocs., L.L.C.

v. Desarrollos Aerohotelco, C.A.*, 793 F. Supp. 2d 124, 128 (D.D.C. 2011) (emphasizing the

Declaratory Judgment Act's requirement to establish a controversy rather than an abstract

question).

      For the same reasons, plaintiffs' causes of action fail the first prong of the ripeness

analysis because the issues they raise are not fit for judicial decision.  *See Roshan*, 615 F. Supp.

at 905.  Premature review and judgment of the FEC's actions in the way plaintiffs envision

"denies the agency an opportunity to . . . apply its expertise" in implementing the Executive

Order consistent with FECA.  *See Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs*, 873 F.

Supp. 2d 363, 369 (D.D.C. 2012) (quoting *Wyo. Outdoor Council*, 165 F.3d at 50).  If the Court

were to intervene now, before the ink has dried on the Executive Order, it would risk "entangling

[itself] in abstract disagreements over administrative policies" rather than "protect[ing] the

agenc[y] from judicial interference until an administrative decision has been formalized and its

effect felt in a concrete way" by plaintiffs.[7]  *See Wyo. Outdoor Council*, 165 F.3d at 50 (quoting

---

[7]    *See* Order, *Nat'l Assoc. of Diversity Officers in Higher Ed. v. Trump*, No. 25-1189 (4th
Cir. Mar. 14, 2025) (Rushing, J. concurring) (explaining that a case failing to challenge any
particular agency action implementing certain Executive Orders "highlights serious questions
about the ripeness of this lawsuit").

*Abbott Lab'ys*, 387 U.S. at 148-49, *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)).

### 2.    Withholding the Court's Decision Will Not Harm Plaintiffs

Even if plaintiffs had standing and their claims were fit for judicial decision, plaintiffs' causes of action would still not be ripe under the second prong of the ripeness test: withholding a decision causes no hardship to plaintiffs. *Church*, 573 F. Supp. 3d at 135. Plaintiffs do not allege any harm has yet befallen them—indeed, the Commission has not taken any action materially impacting plaintiffs since the Executive Order was issued—and the Commission is functioning normally. *See, e.g.*, Compl. ¶ 59 (stating that "DSCC's ability to defend itself against [a] pending complaint against it *will be* substantially impaired *if* the President is able to dictate that the Commission resolve" controversies against it (emphasis added)). Because any impact of the Executive Order "cannot be 'said to be felt immediately . . . in conducting [plaintiffs'] day-to-day affairs,' and because 'no irremediably adverse consequences flow[] from requiring a later challenge,'" plaintiffs' claims are not ripe. *See Missouri v. Biden*, 558 F. Supp. 3d 754, 769–70 (E.D. Mo. 2021), *aff'd*, 52 F.4th 362 (8th Cir. 2022) (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 810 (2003)).

### III.   Plaintiffs' Count I Lacks the Foundational Minimum of Adversity and is Outside the Scope of FECA's Judicial Review Provision

The Court should properly dismiss the Complaint in its entirety because plaintiffs lack standing and the matter is not ripe. Count I, however, fails for additional reasons meriting dismissal for lack of subject matter jurisdiction and failure to state a claim. A court must scrutinize a § 30110 claim for such jurisdictional requirements before proceeding to certification. *See NRSC v. FEC*, 712 F. Supp. 3d 1017, 1022 (S.D. Ohio 2024) ("As is with any other case that comes before an Article III court, there must be a 'case' or 'controversy' for the court to

adjudicate.'") (quoting *Cal. Med. Ass'n v. FEC*, 453 U.S. 182, 192 n.14 (1981)).  Here, plaintiffs' Count I does not clear § 2201 and Article III's adversity threshold where all parties apparently agree FECA is constitutional.  And relatedly, because no controversy exists regarding FECA's constitutionality, plaintiffs' Count I could only be premised on a challenge to E.O. 14,215 and must fall outside the scope of FECA's judicial review provision, 52 U.S.C. § 30110, which is limited to actions to "construe the constitutionality of" FECA.

### A.    There Is No Adversity Where All Parties Agree FECA is Constitutional

Yet another bar to Count I is the lack of adversity between the parties.  Article III, Section 2 of the Constitution requires that courts resolve "actual, ongoing controversies."  *See Pub. Utils. Com'n of the State of Calif. v. F.E.R.C.*, 236 F.3d 708, 714 (D.C. Cir. 2001).  A case or controversy requires, *inter alia*, genuine adversity among at least two parties to the litigation. *See Lutter v. JNESO*, 86 F.4th 111, 123 & n.6 (3d Cir. 2023) (citing *United States v. Johnson*, 319 U.S. 302, 305 (1943)); *see Jordan v. Fed. Bureau of Prisons*, No. 21-5217, 2024 WL 2932371, at *2 (D.C. Cir. 2024) (per curiam) ("'We have long understood [Article III] to require that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions.'" (quoting *Carney v. Adams*, 592 U.S. 53, 58 (2020)).  In the absence of adversity, and accordingly, a case or controversy, a court would render an unconstitutional advisory opinion.  *See Nat'l Black Police Ass'n v. Dist. of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997); *Cueto v. Bureau of Immigr. and Customs Enf't,* 584 F. Supp. 2d 147, 149 (D.D.C. 2008) ("Article III courts are not authorized to render advisory opinions, which is what results when an opinion is rendered in the absence of an actual case or controversy.").

20

Here, Count I purports to bring a § 30110 claim, but it raises no constitutional challenges to FECA.  By the Complaint's terms, and as expounded on in the motion for a preliminary injunction, plaintiffs seek a ruling "that [FECA] is constitutional."  (Pls.' Mot. for Prelim. Inj. At 16.)  The President and Attorney General Bondi's Motion share plaintiffs' view as to FECA's constitutionality.  Defs. Mot. at 2 (*"None* of the parties before the Court has asserted that FECA is unconstitutional, yet plaintiffs ask the Court to opine on that statute's constitutionality.") (emphasis in original); *see id.* at 10 ("[T]he President and Attorney General have not issued any interpretation of the FECA to date (let alone one that conflicts with Plaintiffs' views on a matter affecting Plaintiffs).").  The Commission further agrees with Plaintiffs as to FECA being constitutional.  With no controversy for the Court to resolve, plaintiffs place this Court in the untenable position of having to issue an advisory opinion.  *See Pool v. City of Houston*, 87 F.4th 733, 733-34 (5th Cir. 2023); *see also Moore v. Charlotte-Mecklenberg Bd. of Educ.*, 402 U.S. 47, 47-48 (1971)).  To issue such an opinion would be to transcend the Court's Article III authority. *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009).  With only a hypothetical dispute left to resolve, the Court lacks subject-matter jurisdiction over Count I.  *See Pool*, 87 F.4th at 734 ("Such faux disputes do not belong in federal court."); *see also Beberman v. Blinken*, 61 F.4th 978, 981 (D.C. Cir. 2023) ("That [cases and controversies] requirement ensures that courts stick to their constitutionally limited role of adjudicating actual and concrete disputes and do not issue free-roving advisory opinions.") (quotation marks omitted).

Accordingly, the Court should dismiss Count I under 12(b)(1) for lack of subject matter jurisdiction.

**B.  The Court Should Dismiss Count I for Failure to State a Claim Because It Is Beyond the Scope of FECA's Judicial Review Provision, 52 U.S.C. § 30110**

Even if plaintiffs could establish Article III standing and a case or controversy (both under Article III and the Declaratory Judgment Act), the Court should nonetheless dismiss Count I because plaintiffs' arguments transcend the scope of § 30110.  Section 30110 allows certain entities, including the FEC and national committee of any political party (like plaintiffs), to "institute such actions in the appropriate district court of the United States, including actions for declaratory judgment, as may be appropriate to construe the constitutionality of this Act."  52 U.S.C. § 30110.  Count I challenges only the Executive Order, *not* FECA.  (*See* Compl. ¶¶ 61-73 ("As a result of Executive Order 14215, Plaintiffs have a concrete, ripe dispute with Defendants . . .").)  Count I is thus beyond the scope of § 30110, and plaintiffs fail to state a claim for which relief can be granted.

In essence, plaintiffs bring a § 30110 challenge based on a claim that an executive order allegedly implicates FECA.  The FEC is not aware of a similar challenge.  Courts have in analogous circumstances held that § 30110 pertains only to challenges that flow from the Act itself, and explicitly rejected a challenge that implicated only the Commission's regulations.  *See Holmes v. FEC*, 823 F.3d 69, 76 (D.C. Cir. 2016) (explaining that the dividing line between inappropriate and appropriate § 30110 challenge is whether the challenge is "a consequence of the Commission's regulations" rather than the FECA itself).  In *Holmes* plaintiffs challenged the effect of the timing of contributions on candidates' ability to transfer campaign funds, but the court rejected that challenge, noting that "the Act is silent on both subjects."  *Id*.  However, this need not preclude the Court from interpreting FECA "in light of the FEC regulations that implement the statute."  *In re Cao*, 619 F.3d 410, 418 (5th Cir. 2010); *see NRSC*, 712 F. Supp.

3d at 1030-32 (collecting cases and distinguishing between challenges that are "purely regulatory" and those that raise constitutional challenges to the Act).

Here, plaintiffs do not even challenge a regulation promulgated pursuant to FECA, and instead offer only the text of an Executive Order which does not mention FECA *at all*. Their challenge is therefore not, in any meaningful sense, an effort to "construe the constitutionality" of FECA. 52 U.S.C. § 30110. And plaintiffs' attempt to interpret "construe" broadly is unpersuasive. The definition of "construe" in the context of § 30110 necessitates a live question as to the statute's meaning. *See Construe*, Black's Law Dictionary (12th ed. 2024) ("To analyze and explain the meaning of (a sentence or passage)."). Plaintiffs' invocation of § 30110 notwithstanding, the Complaint focuses only on the meaning of E.O. 14,215, and no contrary interpretation of FECA has been issued by Defendants, the President, or the Attorney General. (*See* Mot. at 10.) Critically, "[n]one of the parties before the Court has asserted that the FECA is unconstitutional." (*Id.* at 2.) To the extent the parties disagree, it is solely with respect to E.O. 14,215. Accordingly, the Court should also dismiss Count one under Rule 12(b)(6).

## IV.    Plaintiffs' Complaint Fails to State a Claim for Relief Because There is No Tension Between Executive Order 14,215 and FECA

In addition to this court lacking jurisdiction, plaintiffs' Complaint should be dismissed for the additional, independent reason that it fails to state a claim. As the President and Attorney General have explained, "there is simply no contradiction between the Executive Order and the FECA." (*See* Mot. at 12.) It is "incorrect to suggest that the Executive Order deprives the Commission of any role" in carrying out its statutory duties, *id.*, and indeed, "has had *no* effect on the operation of the Commission." (*Id.* at 2.)

Section 8 of the Executive Order provides that "this order"— including Section 7—may only apply to an extent that does not "impair or otherwise affect . . . the authority granted by law

23

to an . . . agency, or the head thereof" and where it is "consistent with applicable law."  *See* E.O. 14,215 § 8(b)(i), (c).  Plaintiffs, positing an overly broad reading of Section 7 that entirely disregards equally operative language in Section 8, ultimately misconstrue the proper application of E.O. 14,215 to the FEC.  This Circuit's precedents make clear that where, as here, plaintiffs allege only the theoretical possibility of future harm, an executive order must use clear and specific language that unambiguously commands action to justify the intervention of the judiciary.  This is no such case.  Although the court may assume all plausible factual allegations in the Complaint as true, plaintiffs fail to allege any facts that the Order is currently having an effect, and in light of Section 8's admonition to interpret the Executive Order consistent with applicable law and existing agency authority, this Court should not assume the Order will be implemented unlawfully.

**A.    E.O. 14,215's Section 8 Limits the Scope of Section 7 as Applied to the Commission**

Plaintiffs' allegations in this case rely on a myopic focus on the Executive Order's Section 7.  But Section 8, which plaintiffs fail to mention in their Complaint, is critical to evaluating the Order's intent and legal effect with regards to the Commission.  A proper reading of the EO considers Section 7 *in conjunction with* Section 8, which properly limits the former's application to the FEC consistent with FECA.  In contrast, plaintiffs' approach risks failing to give the Order its full effect and rendering a portion of it "superfluous."  *See, e.g.*, *United States v. Hassanzadeh*, 271 F.3d 574, 580 (4th Cir. 2001).  As with statutes, the court should favor one interpretation of an executive order over another where one "interpretation . . . gives effect to every word," *Marx v. General Revenue Corp.*, 568 U.S. 371, 385 (2013), and not where a proffered statutory construction gives meaning to one passage "only at the expense of rendering the remainder . . .  superfluous."  *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 236 (2011).

24

Specifically, Section 8 provides two relevant caveats.  First, it provides that "[n]othing in this order"—necessarily including Section 7—"shall be construed to impair or otherwise affect . . . the authority granted by law to an . . . agency, or head thereof."  *See* E.O. 14,215 § 8(b)(i).  Second, Section 8 provides that "[t]his order"—necessarily including Section 7—"shall be implemented consistent with applicable law."  *See* E.O. 14,215 § 8(c).  The "law" applicable to the Commission is FECA—and it is FECA that grants authority to the FEC and its Commissioners over federal campaign finance law.  FECA vests the Commission with "exclusive jurisdiction" to administer, interpret, and civilly enforce the Act.  *See* 52 U.S.C. §§ 30106, 30107.  FECA authorizes the Commission to perform a variety of rulemaking and enforcement functions.  *See supra* pp. 2-6.  This was by careful design, as Congress crafted FECA to provide the Commission necessary latitude to regulate the "sensitive area that the system of administration and enforcement enacted into law," H.R.12406, H. Rep. No. 94-917, 94th Cong., 2d Sess. at 3 (1976), *reprinted in* FEC, Legislative History of Federal Election Campaign Act Amendments of 1976, at 804 (1977), at the heart of representative government: political activity and campaigns for federal office.

The FEC's bipartisan structure provides further reason for the Court to read E.O. 14,215 as consistent with FECA.  FECA adopted a unique structure to ensure that the Commission remained nonpartisan in action and decisions.  To minimize "room for partisan misuse," H.R. Rep. No. 94-917, at 3, the FEC is composed of six members, appointed by the President, by and with the advice and consent of the Senate, where no more than three members of the Commission may be affiliated with the same political party.  52 U.S.C. § 30106(a)(1)-(2).  And critically, to exercise the agency's core functions with regards to rulemakings, enforcement proceedings and litigation, "the affirmative vote of 4 members of the Commission shall be

required in order for the Commission to take any action." 52 U.S.C § 30106(c) (providing for a four-vote majority to take any action "in accordance with paragraph (6), (7), (8), or (9) of section 30107(a)" of FECA). The four-vote requirement to initiate, *inter alia*, enforcement investigations and proceedings, advisory opinions, rulemakings, and litigation prevents these tools from being exercised in a partisan manner, as Commissioners by necessity must seek support for the FEC's most consequential actions beyond those members affiliated with their party. FECA's detailed procedural scheme and bipartisan structure are encompassed within Section 8's limits codified by "applicable law." E.O. 14,215 § 8(b)(i), (c).

Executive Order 14,215's application to the FEC is evidenced by the Order's "object and policy[,]" which do not indicate an intention to interfere with the FEC's core functions. *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 830 (9th Cir. 1996). Along with the Order itself, the White House published a Fact Sheet contextualizing the Order. *See* Fact Sheet: President Donald J. Trump Reins in Independent Agencies to Restore a Government that Answers to the American People, THE WHITE HOUSE, (Feb. 18, 2025), https://www.whitehouse.gov/fact-sheets/2025/02/fact-sheet-president-donald-j-trump-reins-in-independent-agencies-to-restore-a-government-that-answers-to-the-american-people/. But importantly, the Fact Sheet expressly points to agencies other than the FEC—including the FTC, FCC, and SEC—for "exercising enormous power over the American people without Presidential oversight" and issuing regulations that "cost billions of dollars," but fails to mention the FEC in any comparable way. *See id*. And the President's exclusive right to appoint Commissioners, 52 U.S.C. § 30106(a)(1),

limited by the requirement that no more than three belong to a single political party, evidences the kind of "supervision and control" expressed in E.O. 14,215.  *See* E.O. 14,215 §§ 1, 7.

> **B.    E.O. 14,215 Section 8 Should be Afforded Substantial Weight In Light of Section 7's General and Broadly Applicable Directive that Does Not Command Specific Action**

While judicial interpretation of executive orders does not precisely mimic statutory interpretation, they are close cousins.  Reviewing courts "approach the construction of Executive Order[s] as [they] would approach the construction of legislation[.]"  *See Ex parte Endo*, 323 U.S. 283, 298 (1944) (interpreting Executive Order like a statute).  This generally requires focus on the order's text and the application of canons of statutory construction where necessary.  *See City & Cnty. of S.F.  v. Trump*, 897 F.3d 1225, 1238–39 (9th Cir. 2018) ("As is true of interpretation of statutes, the interpretation of an Executive Order begins with its text[.]") (internal quotation marks and citations omitted); *United States v. New Orleans Pub. Serv., Inc.*, 553 F.2d 459, 476 (5th Cir.1977) (explaining that canons of statutory construction apply equally to interpreting executive orders, and further noting that "[w]here the words are plain there is no room for construction" (internal quotation omitted)).  In cases presenting interpretative questions concerning executive orders, courts borrow from their interpretive toolbelt applied regularly to construe statutes.  *See e.g.*, *Hassanzadeh*, 271 F.3d at 580; *Louisiana v. Biden*, No. 21-cv-778, 2021 WL 4312502 (W.D. La. Aug. 23, 2021); *United States v. Abu Marzook*, 412 F. Supp. 2d 913, 922 (N.D. Ill. 2006) ("the Court interprets Executive Orders in the same manner that it interprets statutes.").  Moreover, an executive order should likewise be "construed consistently with [its] 'object and policy.'"  *Bassidji v. Goe*, 413 F.3d 928, 934 (9th Cir. 2005) (*quoting Nw. Forest Res. Council*, 82 F.3d at 830).  The object of judicial review in such cases is that the court

respect "quite clearly a reasonable interpretation" of an executive order.  *Udall v. Tallman*, 380

U.S. 1, 4 (1965).

It is, of course, relatively common for Presidential Orders and Memoranda to include

language that the directives therein should be implemented consistent with applicable law.  That

cannot save the government when it takes concrete action pursuant to a presidential order that

itself violates the law.  This is no such case, as plaintiffs effectively admit in their descriptions of

merely hypothetical future harm.  *See supra*, pp. 13-19.  When the court is left with only the

order itself, the proper question is whether the order "unambiguously commands action," or

otherwise offers "clear and specific language" such that the order's "savings clause does not and

cannot override its meaning."  *City & Cnty. of S.F.*, 897 F.3d at 1239-40.

That is not the case here.  As detailed *supra*, E.O. 14,215 Section 7 is written broadly to

apply to all government employees in all agencies throughout the government, in the conduct of

a non-exhaustive list of duties including issuing of regulations, guidance, and litigation.

However, it specifies no agency, office, or individual employee in particular, and provides no

specific instruction for how this policy of establishing a "unified and coherent execution of

Federal law" is to be carried out.  E.O.14,215 § 1.  This case is thus squarely akin to the decision

in *Common Cause v. Trump*, 506 F. Supp. 3d 39, 47 (D.D.C. 2020), where a district court panel

dismissed plaintiffs' challenge to a Presidential Memorandum directing the Commerce Secretary

to provide the President with information to support administration census policies, finding the

matter was not ripe for review.  The court observed that "[a] significant contingency plagues this

case," in that it knew neither what information the Commerce Secretary would provide to the

President, nor what actions the President would take with that information.  *Id*.  "The

memorandum announce[d] a general policy to exclude illegal aliens, but only 'to the maximum

extent feasible and consistent with the discretion delegated to the executive branch[,]' as well as

'consistent with the Constitution and other applicable law[.]'" In this context the court rightly

found that it "cannot ignore these repeated and unambiguous qualifiers imposing lawfulness and

feasibility constraints on implementing the memorandum." *See id.* at 47, 53 n.8. Here too,

several "significant contingenc[ies] plague[] this case[,]" militating in favor of giving effect to

E.O. 14,215's Section 8 rather than presuming a general policy will be carried out illegally. *See*

*id.* at 47.

  This Circuit reached a similar conclusion when evaluating an executive order proscribing

the prohibiting or requiring of project labor agreements in federally-funded construction

contracts throughout the government, again giving effect to the order's clause limiting its effect

"to the extent permitted by law." *See Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh*, 295

F.3d 28, 33 (D.C. Cir. 2002) (citing relevant executive order). In *Allbaugh*, the D.C. Circuit

rejected the plaintiffs' argument that "notwithstanding the President's instruction that the

Executive Order be applied only '[t]o the extent permitted by law,' a particular agency may try

to give effect to the Executive Order when to do so is inconsistent with the relevant funding

statute." *Id*. The court held that "if an executive agency . . . may lawfully implement the

Executive Order, then it must do so; if the agency is prohibited, by statute or other law, from

implementing the Executive Order, then the Executive Order itself instructs the agency to follow

the law."[8] *Id*. As with E.O. 14,215 § 7, the executive order in *Allbaugh* was broadly applicable

---

[8]  The D.C. Circuit analogized the effect of executive order language "to the extent permitted by law" with *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952). It explained:

   the question in the earlier case was whether the President had constitutional authority to seize the mills and not, as here, whether he could direct Executive

across the entire federal government, applying to "'any agency issuing grants, providing financial assistance, or entering into cooperative agreements for construction projects.'"  *Id*. at 32 (quoting § 3 of EO 13202).  Thus, the court sensibly gave effect to the order's "extent permitted by law" language, as the Commission urges here with comparable language in E.O. 14,215 Section 8, rather than presuming the Order will be carried out illegally.

And more recently, the Southern District of New York rejected allegations that an executive order improperly regulated the transmission of informational materials, again relying in part on that order's express language "provid[ing] that it 'shall be implemented consistent with applicable law[.]'"  *Open Soc'y Just. Initiative*, 510 F. Supp. 3d at 215 (citing relevant order). The court found that it was speculative that the government "intends to violate that provision in its enforcement of the Executive Order . . . [because] Defendants acknowledge that [International Economic Emergency Powers Act]'s language is "clear" and that the Executive Order 'shall be implemented consistent with applicable law.'"  *Id*. at 216 (internal citation omitted).  Reasoning that "there is no reason to assume that it is [the Office of Foreign Assets Control]'s intention to prohibit conduct specifically exempted under IEEPA," the court invoked the "coexistence" canon support its rationale.  *Id*. at 215 (citing, *e.g.*, *Cf. J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 143-44 (2001) ("[W]hen two statutes are capable of coexistence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective."); *Rattigan v. Holder*, 689 F.3d 764, 770 (D.C. Cir. 2012) (applying the

---

Branch officials in their implementation of statutory authority.  Indeed, had President Truman merely instructed the Secretary of Commerce to secure the Government's access to steel "[t]o the extent permitted by law," *Youngstown* would have been a rather mundane dispute . . . ."

*Allbaugh*, 295 F.3d at 33.

"coexistence" canon to an apparent conflict between a statute and an Executive Order).  So here, where there is simply no reason to assume the government's intent to violate FECA's statutory provisions, the Court should not assume otherwise.

As noted, some courts have found that clauses requiring executive orders to be implemented consistent with applicable law cannot be given effect, where doing so "would override clear and specific language," *City & Cnty. of S.F.,* 897 F.3d at 1239-40, rendering the clause "purely theoretical," *HIAS, Inc. v. Trump*, 985 F.3d 309, 324-25 (4th Cir. 2021).  But here, Section 7 is in no way "clear and specific[,]" with respect to the FEC and cannot be read to "unambiguously command[] action[,]" by the Commission and its employees.  *See City & Cnty. of S.F.*, 897 F.3d at 1239-40.  Nor does it bind the President or Attorney General, who note that the "Executive Order [] does not obligate the President or Attorney General to make *any* legal determinations *at all*."  (Mot. at 11.)  Instead, multiple "significant contingenc[ies] plague[] this case[,]"*Common Cause*, 506 F. Supp. 3d at 47, and in the face of such uncertainty this Court should give effect to the provisions of E.O. 14,215 providing that it will be implemented in accordance with applicable law and the agency's statutory authority.

## CONCLUSION

Plaintiffs lack standing and their action is not ripe.  Even had plaintiffs established standing and ripeness, the Court lacks subject matter jurisdiction over Count I, and plaintiffs do not meet the standard for a declaratory judgment.  Plaintiffs further fail to state a claim for relief as to Counts I and II.  For the foregoing reasons, the Court should grant the FEC's motion and dismiss plaintiffs' Complaint.

Respectfully submitted,

Lisa J. Stevenson (D.C. Bar No. 457628)
Acting General Counsel
lstevenson@fec.gov

James D. McGinley (D.C. Bar No. 1017536)
Associate General Counsel
jmcginley@fec.gov

March 21, 2025

/s/   Christopher H. Bell
Christopher H. Bell (D.C. Bar No. 1643526)
Acting Assistant General Counsel
chbell@fec.gov

Sophia H. Golvach (D.C. Bar No. 1656365)
Attorney
sgolvach@fec.gov

FEDERAL ELECTION COMMISSION
1050 First Street, NE
Washington, DC 20463
(202) 694-1650