# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEMOCRATIC NATIONAL COMMITTEE, <br><br> DSCC, <br><br> *and* <br><br> DCCC, <br><br>          Plaintiffs, <br><br>      v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, <br><br> PAMELA BONDI, in her official capacity as U.S. Attorney General, <br><br> FEDERAL ELECTION COMMISSION, <br><br> And <br><br> JAMES E. TRAINOR III, SHANA M. BROUSSARD, ALLEN DICKERSON, and DARA LINDENBAUM, in their official capacities as Commissioners of the Federal Election Commission, <br><br>          Defendants. | Civil Action No. 25-587 (AHA) |

**MEMORANDUM OF DEFENDANTS DONALD J. TRUMP AND PAMELA BONDI IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

BACKGROUND ................................................................................................4

I.  Legal Background ................................................................................4

II.  Factual and Procedural Background................................................................5

LEGAL STANDARDS ................................................................................................8

ARGUMENT ................................................................................................8

I.  The Court Lacks Subject-Matter Jurisdiction Over This Case ...........................................8

  A.  Plaintiffs Lack Standing ................................................................................9

  B.  Plaintiffs' Declaratory Judgment Claim Does Not Present an Actual Ripe Controversy ................................................................................15

II.  Plaintiffs Are Unlikely to Succeed on the Merits...........................................................17

  A.  Plaintiffs Are Unlikely to Succeed Because They Lack Standing........................17

  B.  Plaintiffs Are Unlikely to Succeed on Count I ....................................................17

  C.  Plaintiffs Are Unlikely to Succeed on Count II....................................................19

III.  Plaintiffs Have Failed to Establish Imminent Irreparable Harm as Necessary for a Preliminary Injunction ................................................................................22

IV.  The Balance of the Equities and Public Interest Weigh Against Injunctive Relief..........24

V.  Plaintiffs Improperly Ask this Court to Enjoin the President ..........................................25

VI.  The Court Should Not Certify any Questions and Should Reject Count II on the Merits, But If the Court Certifies any Questions, it Must Not Award Permanent Injunctive Relief Before Doing So ................................................................................25

VII.  If the Court Awards a Preliminary Injunction, It Should Require a Bond........................26

CONCLUSION................................................................................................26

# TABLE OF AUTHORITIES

## CASES

\* *Aetna Life Ins. Co. v. Haworth,*
300 U.S. 227 (1937) ...................................................................................... 3, 9, 15, 16

*Allen v. Wright,*
468 U.S. 737 (1984) ....................................................................................................14

*Am. Fed'n of Gov't Emps., AFL-CIO v. Reagan,*
870 F.2d 723 (D.C. Cir. 1989) ....................................................................................12

*Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv.,*
64 F.4th 1354 (D.C. Cir. 2023) ...................................................................................22

*Arpaio v. Obama,*
797 F.3d 11 (D.C. Cir. 2015) ...................................................................................9, 10

*Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp.,*
564 F.3d 462 (D.C. Cir. 2009) ......................................................................................9

*Attias v. CareFirst, Inc.,*
865 F.3d 620 (D.C. Cir. 2017) ......................................................................................9

*Brown v. Dist. of Columbia,*
888 F. Supp. 2d 28 (D.D.C. 2012) ..............................................................................23

\* *Cal. Medical Ass'n v. FEC,*
453 U.S. 182 (1981) .......................................................................................... 9, 18, 19

*Campaign Legal Ctr. v. 45Committee, Inc.,*
118 F.4th 378 (D.C. Cir. 2024) ...................................................................................21

*Center for Democracy & Technology v. Trump,*
507 F. Supp. 3d 213 (D.D.C. 2020) ............................................................................13

\* *Chaplaincy of Full Gospel Churches v. England,*
454 F.3d 290 (D.C. Cir. 2006) .......................................................................... 8, 22, 23, 24

\* *Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) .......................................................................................... 9, 10, 13, 14

*Collins v. Yellen,*
594 U.S. 220 (2021) ......................................................................................................2

*DSE, Inc. v. United States,*
169 F.3d 21 (D.C. Cir. 1999) .......................................................................................26

*eBay Inc. v. MercExchange, L.L.C.,*
547 U.S. 388 (2006) ....................................................................................22

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity,*
878 F.3d 371 (D.C. Cir. 2017)......................................................................17

*FEC v. Cent. Long Island Tax Reform Immediately Comm.,*
616 F.2d 45 (2d Cir. 1980) ...........................................................................18

*Fed. Express Corp. v. Air Line Pilots Ass'n,*
67 F.3d 961 (D.C. Cir. 1995)........................................................................15

*Food & Water Watch, Inc. v. Vilsack,*
808 F.3d 905 (D.C. Cir. 2015)........................................................................8

*Franklin* v. *Massachusetts,*
505 U.S. 788 (1992) ......................................................................................25

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
561 U.S. 477 (2010) ........................................................................................2

*Goland v. United States,*
903 F.2d 1247 (9th Cir. 1990) ......................................................................15

*Greater New Orleans Fair Hous. Action Ctr. v. HUD,*
639 F.3d 1078 (D.C. Cir. 2011)....................................................................17

*Hanson v. Dist. of Columbia,*
120 F.4th 223 (D.C. Cir. 2024)......................................................................8

*Hemp Indus. Ass'n v. DEA,*
36 F.4th 278 (D.C. Cir. 2022)................................................................15, 17

*Indus. Energy Consumers of Am. v. FERC,*
125 F.4th 1156 (D.C. Cir. 2025)...................................................................13

*Libertarian Nat'l Comm. v. FEC,*
228 F. Supp. 3d 19 (D.D.C. 2017)................................................................15

*Libertarian Nat'l Comm., Inc. v. FEC,*
930 F. Supp. 2d 154 (D.D.C. 2013),
*aff'd* No. 13-5094, 2014 WL 590973 (D.C. Cir. Feb. 7, 2014) ...............18

*Lodge 1858, Am. Fed'n of Gov't Emps. v. Webb,*
580 F.2d 496 (D.C. Cir. 1978)........................................................................5

* *Lujan v. Defs. of Wildlife,*
504 U.S. 552 (1992) ..........................................................................9, 11, 14

*Mississippi v. Johnson,*
   71 U.S. (4 Wall.) 475 (1866) ................................................................................25

*Morgan Drexen, Inc. v. CFPB,*
   785 F.3d 684 (D.C. Cir. 2015) ..............................................................................10

*Nat'l Ass'n of Home Builders v. EPA,*
   667 F.3d 6 (D.C. Cir. 2011) ....................................................................................9

*Nat'l Republican Senatorial Comm. v. FEC,*
   712 F. Supp. 3d 1017 (S.D. Ohio 2024) ..............................................................15

*Nken v. Holder,*
   556 U.S. 418 (2009) ................................................................................................8

*Platte River Whooping Crane Critical Habitat Maint. Tr. v. FERC,*
   962 F.2d 27 (D.C. Cir. 1992) ................................................................................12

*Schonberg v. FEC,*
   72 F. Supp. 2d 20 (D.D.C. 2011) .........................................................................18

*Seila Law LLC v. CFPB,*
   591 U.S. 197 (2020) ...........................................................................................1, 2

*Sierra Club v. U.S. Army Corps of Eng'rs,*
   990 F. Supp. 2d 9 (D.D.C. 2013) .........................................................................23

*Susan B. Anthony List v. Driehaus,*
   573 U.S. 149 (2014) ..............................................................................................10

*Sykes v. FEC,*
   335 F. Supp. 2d 84 ................................................................................................18

*Texas v. United States,*
   523 U.S. 296 (1998) ..............................................................................................17

\* *United Presbyterian Church in the U.S.A. v. Reagan,*
   738 F.2d 1375 (D.C. Cir. 1984) ......................................................................12, 13

*United States v. Chem. Found.,*
   272 U.S. 1 (1926) .............................................................................................11, 12

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,*
   454 U.S. 464 (1982) .........................................................................................24-25

*Wagner v. FEC,*
   717 F.3d 1007 (D.C. Cir. 2013) ......................................................................15, 16

*Whitmore v. Arkansas*,
459 U.S. 149 (1990) ...................................................................................12

*Whitmore v. FEC*,
68 F.3d 1212 (9th Cir. 1995) .....................................................................18

*Wildlife v. Perciasepe*,
714 F.3d 1317 (D.C. Cir. 2013) ...........................................................12, 13

*Winter v. NRDC*,
555 U.S. 7 (2008) ..........................................................................................8

*Wis. Gas Co. v. FERC*,
758 F.2d 669 (D.C. Cir. 1985) ..................................................................23

**STATUTES**

2 U.S.C. § 437h ...............................................................................................4

5 U.S.C. § 704 ...............................................................................................24

5 U.S.C. § 2105 ...............................................................................................5

8 U.S.C. § 1226a(a) ......................................................................................21

28 U.S.C. § 2201 .............................................................................................6

* 52 U.S.C. § 30106 ...............................................................................*passim*

* 52 U.S.C. § 30107 ...................................................................... 4, 7, 19, 20, 21

52 U.S.C. § 30108 ..........................................................................................4

52 U.S.C. § 30109 ...................................................................................20, 24

* 52 U.S.C. § 30110 ...............................................................................*passim*

52 U.S.C. § 30111 ........................................................................................20

**UNITED STATES CONSTITUTION**

U.S. Const. art. II, § 1 ...............................................................................1, 24

U.S. Const. art. II, § 3 ...............................................................................1, 24

**ADMINISTRATIVE AND EXECUTIVE MATERIALS**

* *Ensuring Accountability for All Agencies*, Executive Order 14,215,
90 Fed. Reg. 10447 (Feb. 18, 2025) ...................................................*passim*

iv

**RULES**

Federal Rule of Civil Procedure 65(c) ......................................................................26

Federal Rules of Civil Procedure 12 ..........................................................................7

**OTHER AUTHORITIES**

Charles Allen Wright & Arthur R. Miller,
    11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.)............................................................8

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
    11A Fed. Prac. & Proc. § 2948.1 (2d ed. 2013) ....................................................23

## INTRODUCTION

In this lawsuit, Plaintiffs request an advisory opinion that federal courts lack jurisdiction to provide. Plaintiffs do not allege that President Trump, the Attorney General, or the Federal Election Commission have taken *any* specific action that harms them. To wit, they do not and cannot claim that President Trump or the Attorney General have directed the Federal Election Commission to change its interpretation of law or adopt a certain outcome in any enforcement matter or advisory opinion request, because such action has not happened and may never happen. Instead, they claim that the President *could* at some point in the future take such action that *might* adversely impact Plaintiffs' organizations. This is not sufficient to establish Article III standing or an actual ripe controversy necessary to support a declaratory judgment claim. Moreover, Plaintiffs fail to satisfy any of the requirements for a preliminary injunction. They are unlikely to succeed on the merits; they have failed to show any injury, let alone an imminent irreparable injury; and the balance of the equities and public interest weigh against their requested injunction. Accordingly, the Court should dismiss this lawsuit for lack of subject-matter jurisdiction and should deny Plaintiffs' Motion for Preliminary Injunction.

On February 18, 2025, President Trump issued Executive Order 14,215, *Ensuring Accountability for All Agencies*, 90 Fed. Reg. 10447 (Feb. 18, 2025) ("Executive Order" or "E.O. 14,215"). Like the Supreme Court, the Executive Order explained that "[t]he Constitution vests all executive power in the President and charges him with faithfully executing the laws." E.O. 14,215 § 1; *compare with Seila Law LLC v. CFPB*, 591 U.S. 197, 203 (2020) ("Under our Constitution, the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" (quoting U.S. Const. art. II, § 1, cl. 1; *id.* § 3)). Like the Supreme Court, the Executive Order explained that the Constitution "provides for subordinate

officers to assist the President in his executive duties," and that "these executive branch officials remain subject to the President's ongoing supervision and control." E.O. 14,215 § 1; *compare with Seila Law*, 591 U.S. at 203-04 ("Because no single person could fulfill that responsibility alone, the Framers expected that the President would rely on subordinate officers for assistance."), *and Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 483 (2010) ("Since 1789, the Constitution has been understood to empower the President to keep [Executive] officers accountable.").

In accordance with those well-settled principles, the Executive Order provided that "[t]he President and the Attorney General, subject to the President's supervision and control, shall provide authoritative interpretations of law for the executive branch." E.O. 14,215, § 7; *compare with Collins v. Yellen*, 594 U.S. 220, 254 (2021) (noting that "interpreting a law enacted by Congress to implement the legislative mandate is the very essence of 'execution' of the law" (citation omitted)). Yet Plaintiffs—the organizations comprising the National Democratic Party—decry the Executive Order as an "unprecedented assertion of presidential power." Compl. ¶ 9, ECF No. 1. In Plaintiffs' view, the Executive Order calls into question the constitutionality of the Federal Election Commission (FEC, or Commission), as established by the Federal Election Campaign Act (FECA). Accordingly, Plaintiffs ask in the Complaint for a declaratory judgment that the FECA is constitutional, and for a permanent injunction against all Defendants (including the President himself) prohibiting them from applying the Executive Order to the Commission. And they now seek a similar preliminary injunction against all Defendants, including the President.

Cases and controversies are made of sterner stuff, and there is none to be found here. *None* of the parties before the Court has asserted that the FECA is unconstitutional, yet Plaintiffs ask the Court to opine on that statute's constitutionality. And the Executive Order has had *no* effect on the

operation of the Commission.  Nonetheless, Plaintiffs request this Court to enjoin Defendants from applying the Executive Order to the Commission.  In other words, they are asking the Court to enjoin Defendants from doing what they have never done—and have given no indication that they would do.  To do so would be to issue a textbook advisory opinion, which is beyond the power of any federal court.  Plaintiffs have failed to establish a concrete and imminent injury necessary to establish standing, and they likewise fail to present the type of "definite and concrete" controversy, "touching the legal relations of parties having adverse legal interests," as necessary to support jurisdiction for a declaratory judgment claim. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937).

For those reasons and others, Plaintiffs also fail to establish entitlement to a preliminary injunction.  Beyond the lack of standing and the failure to present a live controversy regarding "the constitutionality of" the FECA as necessary for certification to the D.C. Circuit under 52 U.S.C. § 30110, Plaintiffs are unlikely to succeed on the merits of their claim that the Executive Order violates the FECA because there is no conflict between the two.  None of the provisions of the FECA cited by Plaintiffs conflicts with the Executive Order or requires the FEC to disregard the legal views of the President or Attorney General.  Because Plaintiffs' claimed harm rests on speculation about future events, they fail to present the imminent irreparable harm required for a preliminary injunction.  Even their speculative future harm, potential future adverse actions by the FEC, would not be irreparable because the Plaintiffs could obtain judicial review of any such actions.  Finally, the balance of equities and public interest weigh decidedly against the Court enjoining the President and Attorney General from opining on legal issues based on Plaintiffs' mere speculation about potential events that have not yet and may not come to pass.

## BACKGROUND

### I.    Legal Background

In 1974, Congress amended the Federal Election Campaign Act to establish the Federal Election Commission.  The Commission is composed of six members appointed by the President with the advice and consent of the Senate.  52 U.S.C. § 30106(a)(1).  No more than three members "may be affiliated with the same political party."  *Id.*  In general, the Commission is directed by statute to "administer, seek to obtain compliance with, and formulate policy with respect to" the FECA, and has "exclusive jurisdiction with respect to the civil enforcement" of that Act.  *Id.* § 30106(b)(1).

The Commission is also empowered "to render advisory opinions."  *Id.* § 30107(a)(7).  The FECA permits individuals to submit "a complete written request concerning the application of th[e] Act . . . with respect to a specific transaction or activity by the person," and the Commission is required to respond in sixty days or less.  *Id.* § 30108(a).  Such advisory opinions "may be relied upon by . . . any person involved in the specific transaction or activity with respect to which [the] advisory opinion [was] rendered," so as to avoid sanctions under the FECA.  *Id.* § 30108(c)(1)(A).

Finally, the FECA provides that

> [t]he Commission, the national committee of any political party, or any individual eligible to vote in any election for the office of President may institute such actions in the appropriate district court of the United States, including actions for declaratory judgment, as may be appropriate to construe the constitutionality of any provision of [the] Act.

*Id.* § 30110.[1]  This provision further requires the district court to "certify all questions of constitutionality of [the FECA] to the United States court of appeals for the circuit involved, which shall hear the matter sitting en banc."  *Id.*

---

[1] This provision was formerly codified at 2 U.S.C. § 437h.  As such, some of the cases discussing this provision refer to § 437h.

## II.    Factual and Procedural Background

On February 18, 2025, President Trump issued Executive Order 14,215, *Ensuring Accountability for All Agencies*.  That order explained that "[t]he Constitution vests all executive power in the President and charges him with faithfully executing the laws."  E.O. 14,215 § 1.  And because "it would be impossible for the President to single-handedly perform all the executive business of the Federal Government," the order further explained that the Constitution "provides for subordinate officers to assist the President in his executive duties."  *Id.*

As relevant to this case, the order provides that "[t]he President and the Attorney General's opinions on questions of law are controlling on all employees in the conduct of their official duties."  *Id.* § 7.  "Employee" is defined to have "the meaning given that term in" 5 U.S.C. § 2105.  *Id.* § 2.  Under § 2105, to be an employee an individual must be "subject to the supervision of" either "the President," a "Member[,] or Members of Congress, or the Congress," a "member of a uniformed service," another employee, "the head of a Government controlled corporation," or an adjutant general.  5 U.S.C. § 2105(a)(1), (3); *see also Lodge 1858, Am. Fed'n of Gov't Emps. v. Webb*, 580 F.2d 496, 504 (D.C. Cir. 1978).

Plaintiffs the Democratic National Committee (DNC), the Democratic Senatorial Campaign Committee (DSCC), and the Democratic Congressional Campaign Committee (DCCC) share the mission of electing Democratic candidates to public office.  *See* Compl. ¶¶ 13-15.  Collectively, Plaintiffs constitute the National Democratic Party, and as such they frequently "raise and spend money and interact with candidates and other political actors."  *Id.* ¶ 16.

As they do so, Plaintiffs allege that they "interact with the Commission on a regular basis."  *Id.* ¶ 46.  For one, they are commonly the "subjects of . . . complaints made with the Commission."  *Id.* ¶ 47.  In particular, Plaintiffs point to a currently pending complaint, which alleges that the

DSCC ran ads that improperly contributed to and coordinated with a local candidate's campaign. *Id.* ¶ 54. Plaintiffs also allege that they frequently seek advisory opinions from the Commission to obtain the Commission's blessing on a specific contemplated transaction or activity. *Id.* ¶ 48.

On February 28, Plaintiffs filed a complaint raising two Counts. They bring Count I under the Declaratory Judgment Act, 28 U.S.C. § 2201, and under the FECA, 52 U.S.C. § 30110, and seek a declaratory judgment declaring that the FECA is constitutional. Compl. ¶¶ 61-73. In their view, E.O. 14,215 calls the FECA's constitutionality into question because it would "prohibit[] the Commissioners . . . from 'advanc[ing] any interpretation of the law . . . that contravenes the President or the Attorney General's opinion on a matter of law.'" *Id.* ¶ 66 (second alteration in original) (quoting E.O. 14,215 § 7). Thus, Plaintiffs assert, their current suit is "appropriate to construe the constitutionality" of the FECA. *Id.* ¶ 62 (quoting 52 U.S.C. § 30110). Furthermore, in Count II, Plaintiffs seek equitable relief on largely the same theory. According to Plaintiffs, the Executive Order violates the FECA by "prohibit[ing] the Commissioners from exercising independent legal judgment in carrying out their statutory duties." *Id.* ¶ 77. Plaintiffs therefore ask this Court to "enjoin Defendants from applying [E.O. 14,215] to the Commission or the Commissioners." *Id.* ¶ 79.

On March 11, Plaintiffs filed a Motion for Preliminary Injunction. Plaintiffs' Mot. for Prelim. Inj., ECF No. 12 ("PI Mot." or "PI Motion"); *see also* Plaintiffs' Mem. in Supp. of Mot. for Prelim. Inj. ECF No. 12-1 ("PI Mem." or "Memorandum"); [Proposed] Prelim. Inj. Order, ECF No. 12-5 ("Proposed Order"). Plaintiffs ask the Court to enjoin President Trump and Attorney General Bondi from applying Section 7 of the Executive Order to the FEC and its Commissioners, agents, and employees, "or from otherwise ordering the [FEC] or the FEC Commissioners to follow the President or Attorney General's views on legal questions rather than the Commissioners'

independent judgment of what the law requires." Proposed Order at 1-2. Plaintiffs also seek to enjoin the FEC and its Commissioners "from following" Section 7 of the Executive Order "or otherwise substituting the President or Attorney General's views on legal questions for the Commissioners' independent judgment of what the law requires." *Id.* at 2.

The Court held a scheduling teleconference on March 12, 2025. Minute Entry (Mar. 12, 2025). The next day, the parties submitted a Joint Meet and Confer Statement regarding scheduling issues. ECF No. 16 ("Meet & Confer Statement"). The Court then entered an order setting a briefing schedule on the PI Motion, and directing the parties to "address the following topics" in their briefing:

> (1) any relevant jurisdictional issues or other constraints on the Court's authority; (2) Plaintiffs' entitlement to a preliminary injunction; (3) whether and to what extent certification under 52 U.S.C. § 30110 is appropriate, including as to the question Plaintiffs propose in the meet-and-confer statement[2] or otherwise; (4) whether the case raises questions that are not appropriate for certification that are for this Court to resolve on the merits and, if so, what those questions are.

Minute Order (Mar. 13, 2025).[3]

Defendants have also filed motions to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Mot. to Dismiss the Complaint, ECF No. 17 (motion of Defendants Trump and Bondi); FEC Defs.' Mot. to Dismiss, ECF No. 26 (motion of FEC Defendants). Those motions remain pending.

---

[2] Plaintiffs asked this Court to "decide whether to certify to the *en banc* D.C. Circuit the question whether the Federal Election Commission's independent statutory authority to administer, interpret, and civilly enforce the Federal Election Campaign Act ('FECA'), 52 U.S.C. §§ 30106-07, is consistent with the President's executive power under Article II of the U.S. Constitution." Meet & Confer Statement at 1.

[3] Defendants Trump and Bondi address the Court's first question in Part I of the Argument, the Court's second question in Parts II-V of the Argument, the Court's third question in Part II.B of the Argument, and the Court's fourth question in Part VI of the Argument. In addition, the Conclusion summarizes the answers to the Court's questions.

## LEGAL STANDARDS

Plaintiffs seek a preliminary injunction—"an extraordinary remedy never awarded as of right." *Winter v. NRDC*, 555 U.S. 7, 24 (2008).  To obtain such extraordinary relief, a plaintiff "must show (1) 'he is likely to succeed on the merits,' (2) 'he is likely to suffer irreparable harm in the absence of preliminary relief,' (3) 'the balance of equities tips in his favor,' and (4) issuing 'an injunction is in the public interest.'"  *Hanson v. Dist. of Columbia*, 120 F.4th 223, 231 (D.C. Cir. 2024) (quoting *Winter*, 555 U.S. at 20).  When "the Government is the opposing party," the assessment of "harm to the opposing party" and "the public interest" merge.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Plaintiffs must do more than merely show the possibility of prevailing on the merits, but rather must show "a substantial likelihood of success on the merits."  *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015).  Plaintiffs also must establish irreparable harm, as failure do so is "grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief."  *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006); *accord* Charles Allen Wright & Arthur R. Miller, 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.) ("Only when the threatened harm would impair the court's ability to grant an effective remedy is there really a need for preliminary relief.").

## ARGUMENT

## I.   The Court Lacks Subject-Matter Jurisdiction Over This Case

The Court lacks subject-matter jurisdiction over this case for two related reasons.  First, Plaintiffs lack standing to sue.  E.O. 14,215 has not been applied to the Commission's legal interpretations of the FECA, nor is there any indication that the President or the Attorney General will issue any such interpretation.  Their claimed harm depends on a series of speculative contingencies, but a "theory of standing, which relies on a highly attenuated chain of possibilities,

does not satisfy the requirement that threatened injury must be certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). Second, for similar reasons, Count I of the Complaint does not present an actual ripe controversy. For a court to have jurisdiction to issue a declaratory judgment, there "must be" a "definite and concrete" controversy, "touching the legal relations of parties having adverse legal interests." *Aetna Life Ins. Co.*, 300 U.S at 240. "It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* at 241. Plaintiffs' speculative concern about actions and legal positions that Defendants might take in the future does not qualify.

### A.    Plaintiffs Lack Standing

"Standing is a prerequisite to the existence of a 'Case[]' or 'Controvers[y],' which is itself a precondition to the exercise of federal judicial power." *Attias v. CareFirst, Inc.*, 865 F.3d 620, 625 (D.C. Cir. 2017) (alterations in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 552, 560 (1992)). "The irreducible constitutional minimum of standing contains three elements: (1) injury-in-fact, (2) causation, and (3) redressability." *Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 464 (D.C. Cir. 2009) (citation omitted). "Thus, to establish standing, a litigant must demonstrate a personal injury fairly traceable to the opposing party's allegedly unlawful conduct and likely to be redressed by the requested relief." *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 11 (D.C. Cir. 2011) (alterations and citation omitted).

"[A] showing of standing is an essential and unchanging predicate to any exercise of [federal court] jurisdiction." *Id.* (citation omitted). That includes actions for "prospective declaratory and injunctive relief." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015); *see also Cal. Medical Ass'n v. FEC*, 453 U.S. 182, 192 n.14 (1981) ("A party seeking to invoke [§ 30110]

must have standing to raise the constitutional claim."). Because Plaintiffs seek "forward-looking relief," they "must show [they are] suffering an ongoing injury or face an immediate threat of injury." *Morgan Drexen, Inc. v. CFPB*, 785 F.3d 684, 689 (D.C. Cir. 2015) (citation omitted). To claim standing based on "[a]n allegation of future injury," a plaintiff must show that "the threatened injury is 'certainly impending,' or there is a '"substantial risk" that the harm will occur.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper*, 568 U.S. at 409, 414 n.5).

In this case, Plaintiffs seek a declaratory judgment that the FECA is constitutional, and an injunction to prevent Defendants from applying the Executive Order to the FEC. There is no corresponding "certainly impending" injury faced by Plaintiffs. *Arpaio*, 797 F.3d at 19 (quoting *Clapper*, 568 U.S. at 410). Defendants have not asserted that the FECA is unconstitutional, nor have they taken any action that applies the Executive Order to the FEC, let alone one that affects Plaintiffs. Plaintiffs' purported injury is instead that the President and Attorney General *might* issue an interpretation of law with which the Commissioners *might* disagree, and that the President's or Attorney General's interpretation of law *might* be dispositive in a proceeding to which Plaintiffs are a party. But this "highly attenuated chain of possibilities" cannot support standing. *Clapper*, 568 U.S. at 410.

Indeed, Plaintiffs' declarations in support of their Motion underscore that their claimed harm rests on speculation. For example, DNC's Deputy Executive Director worries that future FEC actions will be "subject to uncertain standards." Decl. of Liberty Schneider ¶ 13, ECF No. 12-2 ("Schneider Decl."). She states that at an unspecified time, the DNC may decide to engage in unspecified "innovative fundraising and communications strategies with a new perspective," involving a "new or different approach." *Id.* ¶ 14. That assertion alone underscores Plaintiffs' lack of standing, because "[s]uch 'some day' intentions—without any description of concrete

plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that [Supreme Court] cases require." *Lujan*, 504 U.S. at 564. But the chain of speculation does not stop there. Even if the DNC takes a "new or different approach" at some undetermined time, she further speculates that this action "could result in an FEC complaint against the DNC" by some unspecified party. Schneider Decl. ¶ 14. She then speculates that if such a complaint materializes, "President Trump and Attorney General Bondi will interfere with the FEC's decisionmaking" in an unspecified manner "to thwart the DNC's efforts" to campaign. *Id.* She further opines that "[i]f President Trump and Attorney General Bondi . . . unilaterally decide that FECA requires restrictions" on the DNC's "Headquarters, Recount, and Convention accounts," then "DNC staff will need to reorganize the DNC's budget." *Id.* ¶ 15. But neither she nor the other declarants offer any evidence that President Trump and Attorney General Bondi are contemplating that action or any other action adverse to the Plaintiffs.[4]

Plaintiffs' theory of harm is all the more speculative because it presupposes that government officials will act in a manner inconsistent with the longstanding presumption of regularity. "The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States v. Chem. Found.*, 272 U.S. 1, 14-15 (1926). This "familiar

---

[4] The other declarations similarly rest on speculation. *See* Decl. of Lillie Snyder Boss ¶ 14, ECF No. 12-3 ("Boss Decl.") ("DSCC now fears that President Trump and Attorney General Bondi . . . will force the FEC to find that DSCC violated FECA"); *id.* ¶ 21 (speculation that if DSCC adopts a "new or different approach" to "fundraising and communications," that may "result in an FEC complaint against DSCC," and that Defendants Trump and Bondi may "dictate the outcome" in an unspecified manner); *id.* ¶ 22 (speculation that Defendants Trump and Bondi may "unilaterally decide that FECA requires restrictions" on "national party committees' building and legal accounts"); Decl. of Erik Ruselowski ¶ 16, ECF No. 12-4 ("Ruselowski Decl.") (speculation that if DCCC adopts a "new or different approach" to "fundraising and communications," that may "result in an FEC complaint against DCCC," and that Defendants Trump and Bondi may "ensure an adverse ruling to thwart DCCC's efforts" to campaign).

presumption of regularity . . . has been recognized since the early days of the Republic." *Am. Fed'n of Gov't Emps., AFL-CIO v. Reagan*, 870 F.2d 723, 727 (D.C. Cir. 1989); *see also id.* at 727 n.33 (collecting cases).  The presumption applies to actions of the President and executive officers. *See*, *e.g.*, *id.* at 728 (applying presumption to the President); *Chem. Found.*, 272 U.S. at 14 (applying presumption to a counselor for the Department of State).  Yet Plaintiffs' claimed harm rests on the "expect[ation]" that, under the President's and Attorney General's influence, the FEC will issue "official actions" that "will not just be unfavorable toward Democrats, but will be punitive."  PI Mem. 19.  Against the presumption of regularity, they posit that "[i]t is all but certain that President Trump and Attorney General Bondi will interpret or enforce FECA—or require the Commission to do so—in a manner that favors Republicans and harms Democrats."  *Id.* at 21. They further raise the specter of "political retribution," Schneider Decl. ¶ 13, legal positions taken "for the partisan purpose of disadvantaging Democratic campaigns and Democratic candidates," Boss Decl. ¶ 18, and the FEC being "weaponized against" Plaintiffs, Ruselowski Decl. ¶ 15.  Yet Plaintiffs put forward no evidence, let alone the required "clear evidence," *Chem. Found.*, 272 U.S. at 14, to overcome the presumption of regularity.

Courts have repeatedly held that claimed harm based on potential agency actions that have not yet occurred and may never occur is insufficient for Article III standing.  "Article III standing requires more than the possibility of potentially adverse regulation."  *Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1324-25 (D.C. Cir. 2013); *see also Platte River Whooping Crane Critical Habitat Maint. Tr. v. FERC*, 962 F.2d 27, 35 (D.C. Cir. 1992) ("Allegations of injury based on predictions regarding future legal proceedings are, however, 'too speculative to invoke the jurisdiction of an Art[icle] III Court.'" (alteration in original) (quoting *Whitmore v. Arkansas*, 459 U.S. 149, 157 (1990)).  For example, in *United Presbyterian Church in the U.S.A. v. Reagan*, 738

12

F.2d 1375 (D.C. Cir. 1984) (Scalia, J.), the D.C. Circuit rejected standing based on a claim that an executive order could lead to agencies taking future adverse actions against them. *Id.* at 1378-81. Likewise, in *Center for Democracy & Technology v. Trump*, 507 F. Supp. 3d 213 (D.D.C. 2020), *vacated as moot sub nom. Center for Democracy & Technology v. Biden*, No. 21-5062, 2021 WL 11659822 (D.C. Cir. Aug. 9, 2021),[5] the court found that the potential that an agency would promulgate adverse regulations in implementing an executive order was insufficient for standing, explaining: "To be sure, the government might issue regulations that CDT does not like. But it is just as possible that it will not. 'Article III standing requires more than *the possibility* of potentially adverse regulation.'" *Id.* at 223 (quoting *Perciasepe*, 714 F.3d at 1324-25). Plaintiffs' claim for standing runs afoul of this well-established case law.

Plaintiffs attempt to escape this conclusion with their bare assertion that "[t]he inability to rely on the independent legal judgment of the FEC's Commissioners inevitably harms Plaintiffs." Compl. ¶ 59. They claim that their "ability to defend [themselves] against the pending complaint . . . will be substantially impaired if the President is able to dictate [how] the Commission resolve[s] disputed questions of law." *Id.*; *see also* PI Mem. 19 (Executive Order "instill[s] [Plaintiffs] with fear that their political opponents will take adverse actions against them through the FEC"). But—again—standing cannot be "predicated on 'guesswork as to how independent decisionmakers will exercise their judgment.'" *Indus. Energy Consumers of Am. v. FERC*, 125 F.4th 1156, 1163 (D.C. Cir. 2025) (quoting *Clapper*, 568 U.S. at 410). And here, Plaintiffs will only face any injury at all if the President or Attorney General independently reaches a legal interpretation that differs from the Commissioners' independent legal interpretations, and

_____

[5] The D.C. Circuit dismissed the appeal and vacated the judgment as moot because the President rescinded the executive order at issue during the pendency of the appeal.

even then *only* if that legal issue is determinative of Plaintiffs' rights. Standing requires plaintiffs to do more than hypothesize scenarios in which they might someday somehow be affected by a currently benign action.

Perhaps to avoid the obvious problem that the President and Attorney General have not issued any interpretation of the FECA to date (let alone one that conflicts with Plaintiffs' views on a matter affecting Plaintiffs), Plaintiffs also suggest that the mere existence of the Executive Order will "chill[] Plaintiffs' core election-related activities," PI Mem. 19, by affecting their "calculus as to whether to request" advisory opinions. Compl. ¶ 59. That cursory allegation does not help them either. Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416. Perhaps Plaintiffs intend to change their litigation strategy because they think, someday, the President or Attorney General might interpret the FECA differently than the Commissioners in a way that concerns their interests. But that change (and any accompanying harm) would be self-inflicted; it cannot be traced to an Executive Order which does not obligate the President or Attorney General to make *any* legal determinations *at all*.

At bottom, Plaintiffs' suit is clearly designed to challenge the constitutionality of the Executive Order, which has yet to be implemented. But the Executive Order regulates how *federal employees* engage in legal interpretation, not Plaintiffs. Where, as here, "the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Lujan*, 504 U.S. at 562 (quoting *Allen v. Wright*, 468 U.S. 737, 758 (1984)). The Executive Order has never been applied to Plaintiffs, and it has never been applied to federal employees who would in turn decide upon Plaintiffs' cases. Nor is there any concrete indication that the Executive Order will be applied in that way. Plaintiffs

cannot point to any injury, let alone an injury traceable to Defendants. This Court therefore lacks subject-matter jurisdiction over this case.

**B.  Plaintiffs' Declaratory Judgment Claim Does Not Present an Actual Ripe Controversy**

For similar reasons that Plaintiffs lack standing, their declaratory judgment claim (Count I) does not present an actual ripe controversy, as necessary for federal jurisdiction.  "The requirement of a case or controversy is no less strict when a party is seeking a declaratory judgment than for any other relief." *Fed. Express Corp. v. Air Line Pilots Ass'n*, 67 F.3d 961, 963 (D.C. Cir. 1995); *accord Hemp Indus. Ass'n v. DEA*, 36 F.4th 278, 290 (D.C. Cir. 2022).  "In order to meet this threshold requirement, there must be 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Fed. Express Corp.*, 67 F.3d at 963-64 (quoting *Aetna Life Ins. Co.*, 300 U.S. at 241).  "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 964.

As Plaintiffs acknowledge, "claims under Section 30110 have historically been brought to argue that provisions of FECA were *unconstitutional*." PI Mem. 16; *see also*, *e.g.*, *Wagner v. FEC*, 717 F.3d 1007, 1008 (D.C. Cir. 2013) (First Amendment challenge to restrictions on contributions from government contractors); *Goland v. United States*, 903 F.2d 1247, 1252 (9th Cir. 1990) (First Amendment challenge to reporting requirements); *Libertarian Nat'l Comm. v. FEC*, 228 F. Supp. 3d 19, 22 (D.D.C. 2017) (First Amendment challenge to contribution limits); *Nat'l Republican Senatorial Comm. v. FEC*, 712 F. Supp. 3d 1017, 1029 (S.D. Ohio 2024) (First Amendment challenge to limits on coordinated party expenditures).  In those cases, the immediacy required by

Article III is often apparent because the FECA prohibits the plaintiff from doing something he or she wishes to do.  *See*, *e.g.*, *Wagner*, 717 F.3d at 1010 n.1 (the court's "constitutional jurisdiction [was] clear" because the plaintiffs "declare[d] that they would make political contributions but for section 441c [the FECA's contributions limit]").  And the requirement of a question "touching the legal relations of parties having adverse legal interests," *Aetna Life Ins. Co.*, 300 U.S. at 240-41, is satisfied because the parties have opposing views about the FECA's constitutionality: the plaintiff challenges a provision of FECA as unconstitutional, and the government defends the statute's constitutionality.

Plaintiffs' claim seeking a declaration that the FECA *is constitutional* presents neither the immediacy nor the adversity required by Article III.  As explained above, Plaintiffs point to no issue on which Defendants have taken a legal position against their interests, but they merely speculate that this might occur in the future. *See supra*, pp. 10-12.  Moreover, Plaintiffs ask this Court to certify to the en banc D.C. Circuit "to construe the constitutionality of" the FECA, 52 U.S.C. § 30110, but they point to no disagreement between the parties on the FECA's constitutionality.  Plaintiffs seek a declaration "that FECA is constitutional."  PI Mem. 16.  Such a claim would present a live controversy with "parties having adverse legal interests," *Aetna Life Ins. Co.*, 300 U.S. at 240-41, only if there were a party on the other side arguing that the FECA were unconstitutional.  But no Defendant is arguing that FECA is unconstitutional.  To be sure, Plaintiffs attempt to put those words in Defendants' mouths, arguing that "the Executive Order is grounded in the assertion" that certain provisions of FECA "are unconstitutional."  Compl. ¶ 44. But Defendants' position is that the Executive Order does not conflict with the FECA at all.  *See infra*, pp. 19-22; *see also* FEC Defs.' Mem. of Points and Authorities in Supp. of Their Mot. to Dismiss, ECF No. 26-1, at 23-31.  The supposed controversy thus rests on speculation that in the

future, Defendants will apply the Executive Order in a way that conflicts with the FECA and will justify such actions based on a theory that the FECA is unconstitutional. But as with any claim, a declaratory judgment claim "is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted).

A plaintiff seeking a declaratory judgment "cannot simply rest on some abstract desire to know his rights or status under a statute, but rather needs to connect the requested declaration to some actual or imminent injury." *Hemp Indus. Ass'n*, 36 F.4th at 290 (citations omitted). Plaintiffs fail to do so here.

## II.     Plaintiffs Are Unlikely to Succeed on the Merits

### A.      Plaintiffs Are Unlikely to Succeed Because They Lack Standing

"A plaintiff unlikely to have standing is *ipso facto* unlikely to succeed." *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 375 n.2 (D.C. Cir. 2017). Therefore, a preliminary injunction motion should be denied where the plaintiff "has not shown a substantial likelihood of standing." *Id.* at 375. As shown above, Plaintiffs not only are unlikely to have standing, but they lack standing. *See supra*, pp. 9-15. Therefore, they are unlikely to succeed, and "there is no need to consider the remaining factors." *Elec. Priv. Info. Ctr.*, 878 F.3d at 375 n.2 (quoting *Greater New Orleans Fair Hous. Action Ctr. v. HUD*, 639 F.3d 1078, 1088 (D.C. Cir. 2011)).

### B.      Plaintiffs Are Unlikely to Succeed on Count I

Plaintiffs are unlikely to succeed on Count I, a declaratory judgment claim asking the Court to certify questions regarding the constitutionality of the FECA to the en banc D.C. Circuit pursuant to 52 U.S.C. § 30110, and issue a declaratory judgment regarding such questions. *See* Compl. ¶¶ 61-73. This claim will not succeed because, as explained above, there is no live

17

controversy regarding the constitutionality of the FECA, *see supra*, pp. 15-17, and therefore the Court should not certify any questions to the D.C. Circuit.

It is well established that where a plaintiff lacks standing or the district court otherwise lacks jurisdiction over a § 30110 claim, then the case should not be certified and the district court should instead dismiss the claim.  "The unusual procedures embodied in [§ 30110] are, at the very least, circumscribed by the constitutional limitations on the jurisdiction of the federal courts.  A party seeking to invoke [§ 30110] must have standing to raise the constitutional claim." *Cal. Med. Ass'n v. FEC*, 453 U.S. 182, 192 n.14 (1981).  Similarly, if a § 30110 claim did "not present a 'case' or 'controversy' ripe for adjudication within the meaning of Art. II, Sec. 2, of the Constitution, . . . it would be necessary to dismiss the claim." *FEC v. Cent. Long Island Tax Reform Immediately Comm.*, 616 F.2d 45, 51 (2d Cir. 1980).  "[N]o such certification [to the court of appeals] should be made if the plaintiff lacks standing," and the district court should instead "dismiss the complaint." *Sykes v. FEC*, 335 F. Supp. 2d 84, 94 (quoting *Whitmore v. FEC*, 68 F.3d 1212, 1214 (9th Cir. 1995)); *accord Schonberg v. FEC*, 72 F. Supp. 2d 20, 24-25 & n.4 (D.D.C. 2011) (dismissing claim and explaining, "[b]ecause Schonberg lacks standing, his constitutional FECA claims will not be certified to the court of appeals sitting en banc").  Moreover, § 30110 cannot be used to ask a court of appeals to opine on hypothetical applications of the FECA.  *See Cal. Med.*, 453 U.S. at 197 n.17 ("We need not consider this hypothetical application of the act."); *Libertarian Nat'l Comm., Inc. v. FEC*, 930 F. Supp. 2d 154, 166 (D.D.C. 2013) ("the Supreme Court has repeatedly cautioned that, in campaign finance cases in particular, it may not be appropriate to decide an as-applied challenge [to the FECA] based on facts not before the court"), *aff'd* No. 13-5094, 2014 WL 590973 (D.C. Cir. Feb. 7, 2014).

Plaintiffs also fail to present any question that would qualify for certification to the D.C. Circuit under § 30110. Plaintiffs have asserted that the Court should certify "the question whether the Federal Election Commission's independent statutory authority to administer, interpret, and civilly enforce the Federal Election Campaign Act ('FECA'), 52 U.S.C. §§ 30106-07, is consistent with the President's executive power under Article II of the U.S. Constitution." Meet & Confer Statement at 1. However, as explained above, no party is asserting that these provisions or any other provisions of FECA are unconstitutional. *See supra*, pp. 10-12. Plaintiffs instead speculate that in the future, the President or Attorney General may direct the FEC to take unspecified, hypothetical actions under the FECA and justify those actions on the basis that certain provisions of the FECA are unconstitutional. But that is precisely the kind of "hypothetical application of the act" that is not appropriate for certification. *Cal. Med.*, 453 U.S. at 197 n.17.

### C.    Plaintiffs Are Unlikely to Succeed on Count II

Plaintiffs are unlikely to succeed on Count II of their Complaint, which requests permanent injunctive relief for alleged violations of the FECA. *See* Compl. ¶¶ 74-79. The basis for Plaintiffs' request for equitable relief in Count II is that the Executive Order violates the FECA. According to Plaintiffs, the Executive Order's command that the President's "opinions on questions of law are controlling on all employees," E.O. 14,215 § 7, in the Executive Branch "violates FECA because it prohibits the Commissioners from exercising independent legal judgment." Compl. ¶ 77. Thus, Plaintiffs argue, this Court must "enjoin Defendants from applying [the Executive Order] to the Commission or the Commissioners." *Id.* ¶ 79.

But there is simply no contradiction between the Executive Order and the FECA. There is no provision in the FECA which prohibits the President or Attorney General from promulgating authoritative legal interpretations. Plaintiffs first point to provisions that grant the FEC "exclusive jurisdiction with respect to the civil enforcement of" the FECA, 52 U.S.C. § 30106(b)(1), and

provide that apart from the ability of a party to seek judicial review of the FEC's decision to dismiss an administrative complaint, the FEC's "power . . . to initiate civil actions . . . shall be the exclusive civil remedy for the enforcement of the provisions of [the FECA]," *id.* § 30107(e).  *See* PI Mem. 10.[6]  Plaintiffs also point to provisions granting the FEC authority to "formulate policy with respect to" the FECA, 52 U.S.C. § 30106(b)(1), make, amend, or repeal rules to carry out the FECA, *id.* §§ 30107(a)(8), 30111(a)(8), and investigate possible violations of the FECA, *id.* § 30109(a)(1)-(2), requiring a majority vote of four Commissioners to take certain actions, *see id.* §§ 30106(c), 30107(a)(6)-(9), 30109(a), empowering the Commission to appoint staff including a General Counsel, *id.* § 30106(f), and granting the Commission limited litigation authority, *id.*  *See* PI Mem. 10-11.  None of these provisions, however, addresses what relevance the President's or Attorney General's legal views should play in the FEC's exercise of its authority.

Absent any express conflict, Plaintiffs argue for an implicit conflict by arguing that it is "inconceivable" that Congress would have prevented Commissioners from "exercis[ing] . . . judgment" and that provisions granting powers to the FEC "would be a pure nullity" if the President or Attorney General could issue controlling legal opinions.  *Id.*  These arguments mischaracterize the Executive Order, which by no means deprives the Commission of a role in administering the election laws or divests it of its statutory authorities.  The Executive Order does not bind the President or Attorney General to stake a position on any or every legal issue that will appear before the Commission.  Furthermore, the Executive Order says nothing to affect the Commission's factfinding authorities—such as the Commission's power to require "the

---

[6] Plaintiffs generally cite 52 U.S.C. §§ 30106-07 as vesting with the FEC "'exclusive jurisdiction' to administer, interpret, and civilly enforce FECA," PI Mem. 10, but they cite no provisions in those sections referring to "exclusive jurisdiction" over "administ[ration]" or "interpret[ation]" of the FECA.  *Id.*

attendance and testimony of witnesses and the production of all documentary evidence relating to the execution of its duties." 52 U.S.C. § 30107(a)(3).

*Second*, and more to the point, none of the provisions Plaintiffs mine from the FECA precludes a role of the President or Attorney General in administering the election laws. That the Commission has "exclusive jurisdiction with respect to the civil enforcement" of the FECA is not challenged at all by the Executive Order. 52 U.S.C. § 30106(b)(1). The FECA's exclusive jurisdiction provision "serve[s] only to specify who can bring a civil action and when," *Campaign Legal Ctr. v. 45Committee, Inc.*, 118 F.4th 378, 387 (D.C. Cir. 2024) (citation omitted); regardless of any potential future Presidential positions on law, it remains the Commission who will bring any civil enforcement action under the FECA.

Plaintiffs also make much of the FECA's nondelegation clause, which provides that "[a] member of the Commission may not delegate to any person his or her vote or any decisionmaking authority or duty vested in the Commission by the provisions of this Act." 52 U.S.C. § 30106(c); PI Mem. 10; Compl. ¶ 27. But the Commission would not delegate its authority if it followed the legal position of the President or Attorney General. For instance, 8 U.S.C. § 1226a(a)(3) provides the Attorney General the authority to certify certain aliens as suspected terrorists and to then take such aliens into custody. The statute specifies that the Attorney General "may delegate [this] authority . . . only to the Deputy Attorney General," who "may not delegate such authority." 8 U.S.C. § 1226a(a)(4). Yet no one divines from those words a rule that the President must have no say in those matters.

In brief, there is no tension between the FECA and the Executive Order.[7]  Therefore, even apart from the Court's lack of jurisdiction, Plaintiffs are unlikely to succeed in their claim in Count II, that the Executive Order violates FECA.  Beyond that failure on the merits, Plaintiffs also are unlikely to succeed in satisfying the test for a permanent injunction.  The test for a permanent injunction is similar to the test for a preliminary injunction, requiring a plaintiff to demonstrate, in addition to success on the merits: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Anatol Zukerman & Charles Krause Reporting, LLC v. U.S. Postal Serv.*, 64 F.4th 1354, 1364 (D.C. Cir. 2023) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).  For the same reasons that Plaintiffs fail to demonstrate entitlement to a preliminary injunction, they are not likely to succeed in demonstrating entitlement to a permanent injunction.

## III.    Plaintiffs Have Failed to Establish Imminent Irreparable Harm as Necessary for a Preliminary Injunction

Plaintiffs have failed to establish that a preliminary injunction is necessary to prevent irreparable harm, which is alone grounds to deny their motion for preliminary injunction.  *See Chaplaincy*, 454 F.3d at 297 ("A movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief."):

> [The D.C. Circuit] has set a high standard for irreparable injury.  First, the injury "must be both certain and great; it must be actual and not theoretical."  The moving party must show "[t]he injury complained of is of such *imminence* that there is a 'clear and present' need for

---

[7] Because Plaintiffs fail to show that the Executive Order conflicts with the FECA, the Court need not and should not address Plaintiffs' arguments that if there were such a conflict, FECA would be constitutional.  PI Mem. 11-16.

equitable relief to prevent irreparable harm."   Second, the injury must be beyond remediation.

*Id.* (quoting *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam)) (citations omitted).  "[I]t is well established that 'perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered.'"  *Sierra Club v. U.S. Army Corps of Eng'rs*, 990 F. Supp. 2d 9, 38 (D.D.C. 2013) (quoting 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 2948.1 (2d ed. 2013)).

Plaintiffs fail to satisfy their burden, for two reasons.  First, largely for the same reasons that they have not shown an imminent injury in fact, *see supra*, pp. 9-15, they have not shown that they will face a "certain and great," "actual and not theoretical" injury "of such *imminence* that there is a 'clear and present' need for equitable relief."  *Chaplaincy*, 454 F.3d at 297.  As explained above, Plaintiffs' claimed injury rests on speculation about actions they may take in the future, complaints that unspecified parties may file with the FEC, and how Defendants may react to such developments.  *See supra*, pp. 10-13; PI Mem. 19-22.  If anything, the requirement for imminent irreparable harm is even more onerous than the requirement for Article III injury in fact, requiring the movant to "provide proof that the harm has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to occur in the near future."  *Brown v. Dist. of Columbia*, 888 F. Supp. 2d 28, 32 (D.D.C. 2012) (quoting *Wis. Gas Co.*, 758 F.2d at 674 (D.C. Cir. 1985)).  Plaintiffs have failed to do so.  Instead, they offer "[b]are allegations" of what they speculate "is likely to occur," which "are of no value" in supporting a motion for preliminary injunction.  *Wis. Gas Co.*, 758 F.2d at 674.

Second, even if the speculative harm feared by Plaintiff were to come to pass, it would not be "beyond remediation."  *Chaplaincy*, 454 F.3d at 297.  Plaintiffs fear that Defendants "will take

adverse actions against them through the FEC."  PI Mem. 19.  If that occurs, Plaintiffs could seek

judicial review of any such action.  The FECA has special judicial review provisions applicable to

certain categories of actions.  *See* 52 U.S.C. § 30109(a)(4)(C)(iii), (a)(8)(A).  Final agency actions

of the FEC are otherwise reviewable in district court under the Administrative Procedure Act's

general judicial review provision.  *See* 5 U.S.C. § 704.  Where a plaintiff fears a future adverse

administrative action that would be subject to further review, such claimed harm "is redressable"

and does not qualify as irreparable harm.  *Chaplaincy*, 454 F.3d at 298.

## IV.  The Balance of the Equities and Public Interest Weigh Against Injunctive Relief

The balance of the equities and public interest weigh decidedly against injunctive relief.

Plaintiffs request an injunction that would restrain the President from overseeing the Executive

Branch and would restrain both the President and his chosen Attorney General (whom the Senate

confirmed) from opining on legal issues.  *See* Proposed Order at 1-2.  Such an order would harm

the public interest, given the American people's decision to elect President Trump, and the

Framers' decision to vest all of "[t]he executive Power" in the President and entrust him with the

sole constitutional responsibility to "take Care that the Laws be faithfully executed."  U.S. Const.

art. II, § 1, cl. 1; *id.* § 3.  On the other side of the balance, Plaintiffs' interest is slight.  They merely

seek to prevent harm based on speculation about a series of future contingencies.  *See supra*, pp.

10-13.

Furthermore, the public interest is not served when courts reach out to address weighty

questions of constitutional law based on hypothetical conflicts that have not materialized and may

never materialize.  That is why the Constitution requires legal questions, even constitutional

questions, to "be resolved, not in the rarified atmosphere of a debating society, but in a concrete

factual context conducive to a realistic appreciation of the consequences of judicial action."  *Valley*

*Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982).

## V.    Plaintiffs Improperly Ask this Court to Enjoin the President

The Court should not award any injunctive relief for the reasons stated above.  However, Plaintiffs' requested injunction is especially improper in that they ask this Court to enjoin the President.  The Supreme Court recognized long ago that a court "has no jurisdiction of a bill to enjoin the President in the performance of his official duties." *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1866); *see Franklin* v. *Massachusetts*, 505 U.S. 788, 826-28 (1992) (Scalia, J., concurring in part and concurring in the judgment).  The injunction requested by Plaintiffs violates this principle, asking the Court to order that "Defendant[] Trump . . . [is] preliminarily enjoined" from applying the Executive Order to the FEC or issuing certain orders to the FEC or its Commissioners.  Proposed Order at 1-2.  This aspect of Plaintiffs' requested injunction plainly exceeds the authority of a federal court.

## VI.    The Court Should Not Certify any Questions and Should Reject Count II on the Merits, But If the Court Certifies any Questions, it Must Not Award Permanent Injunctive Relief Before Doing So

The Court asked the parties to address "whether the case raises questions that are not appropriate for certification that are for this Court to resolve on the merits and, if so, what those questions are."  Minute Order (Mar. 13, 2025).  As explained above, there is no question appropriate for certification to the D.C. Circuit.  *See supra*, pp. 15-17.  The Court should hold that it lacks subject-matter jurisdiction over this entire case, *see supra*, pp. 8-17, and if it reaches the merits of Count II (which seeks permanent injunctive relief), should reject that claim, *see supra*, pp. 19-22.  If, however, the Court certifies any questions to the D.C. Circuit, in no event should the Court award Plaintiffs permanent injunctive relief before the D.C. Circuit acts on any certified

questions, given that any actions or rulings from the D.C. Circuit on certification would be law of the case and binding on this Court.[8]

## VII.    If the Court Awards a Preliminary Injunction, It Should Require a Bond

The Court should order security with any preliminary injunction.  Under Federal Rule of Civil Procedure 65(c), the Court may issue a preliminary injunction "only if the movant gives security" for "costs and damages sustained" by Defendants if they are later found to "have been wrongfully enjoined."  Fed. R. Civ. P. 65(c).  In the event the Court issues an injunction here, the Court should require Plaintiffs to post an appropriate bond commensurate with the scope of any injunction.  *See DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999) (stating that Rule 65(c) places "broad discretion in the district court to determine the appropriate amount of an injunction bond").

## CONCLUSION

This Court lacks subject-matter jurisdiction over this case and should accordingly dismiss it.  The Court should deny Plaintiffs' Motion for Preliminary Injunction.  The Court should not certify any questions to the D.C. Circuit.  The Court should reject Plaintiffs' claims, either for lack of subject-matter jurisdiction or on the merits.  If the Court certifies any questions to the D.C. Circuit, the Court should not award permanent injunctive relief before the D.C. Circuit acts on any certified questions.

---

[8] Plaintiffs appear to agree that if this Court certifies questions to the D.C. Circuit, it should not award permanent injunctive relief before the D.C. Circuit acts.  *See* Meet & Confer Statement at 1 (expressing Plaintiffs' position that "if and only if the Court denies such certification," the Court should "decide whether to permanently enjoin Defendants").

Dated:  March 25, 2025                    Respectfully Submitted,


                                          YAAKOV M. ROTH
                                          Acting Assistant Attorney General
                                          Civil Division

                                          CHRISTOPHER R. HALL
                                          Assistant Director, Federal Programs Branch

                                          */s/ Jeremy S.B. Newman*
                                          JEREMY S.B. NEWMAN
                                          Trial Attorney
                                          United States Department of Justice
                                          Civil Division, Federal Programs Branch
                                          1100 L Street, N.W.
                                          Washington, DC 20005
                                          Tel: (202) 532-3114
                                          Fax: (202) 616-8470
                                          Email: jeremy.s.newman@usdoj.gov

                                          *Attorneys for Defendants Donald J. Trump
                                          and Pamela Bondi*