# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DEMOCRATIC NATIONAL COMMITTEE, *et al.*, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 25-cv-587 |
| v. | ) ) | |
| DONALD J. TRUMP, *et al.*, | ) ) | OPPOSITION TO MOTION |
| Defendants. | ) ) | |

## FEDERAL ELECTION COMMISSION DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Lisa J. Stevenson (D.C. Bar No. 457628)
Acting General Counsel
lstevenson@fec.gov

James D. McGinley (D.C. Bar No. 1017536)
Associate General Counsel
jmcginley@fec.gov

Christopher H. Bell (D.C. Bar No. 1643526)
Acting Assistant General Counsel
chbell@fec.gov

Sophia H. Golvach (D.C. Bar No. 1656365)
Blake L. Weiman (D.C. Bar No. 1725645)
Michael Contino (D.C. Bar No. 1782269)
Attorneys
sgolvach@fec.gov
bweiman@fec.gov
mcontino@fec.gov

FEDERAL ELECTION COMMISSION
1050 First Street, NE
Washington, DC 20463
(202) 694-1650

March 25, 2025

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

I.    FACTUAL AND PROCEDURAL BACKGROUND...................................................4

    A.    The Federal Election Commission.....................................................4

    B.    Executive Order 14,215 ....................................................................7

    C.    Plaintiffs' Complaint........................................................................8

    D.    Plaintiffs' Motion for Preliminary
         Injunction and this Court's Order ....................................................10

ARGUMENT ........................................................................................................12

I.    LEGAL STANDARDS .........................................................................................12

    A.    Standing ...........................................................................................12

    B.    Ripeness ...........................................................................................13

    C.    Injunctive Relief...............................................................................14

II.   PLAINTIFFS LACK STANDING BECAUSE THEIR
     ALLEGED INJURIES ARE SPECULATIVE AND
     INSUFFICIENTLY IMMINENT ..........................................................................14

    A.    Plaintiffs' Injuries are Speculative and Not Imminent ...................16

    B.    There is No Reason to Assume the Executive Order's
         General Statement of Policy Will Be Carried Out Unlawfully......................21

III.  PLAINTIFFS ARE NOT ENTITLED TO PRELIMINARY
      INJUNCTIVE RELIEF.........................................................................................24

    A.    Plaintiffs Are Unlikely to Succeed on the Merits ...........................24

    B.    Plaintiffs Fail to Demonstrate Irreparable Harm ............................26

    C.    The Relief That Plaintiffs Request Would Harm
         the Government and Undercut the Public Interest...........................28

IV. THE COURT SHOULD NOT CERTIFY PLAINTIFFS'
PROPOSED CONSTITUTIONAL QUESTION TO THE
COURT OF APPEALS.................................................................................29

  A. Plaintiffs' Claims Are Outside the Scope of
   52 U.S.C. § 30110..........................................................................30

  B. Certification Would Be Premature..................................................33

   1. Certification of Constitutional Questions Per
    Section 30110 Is Not Automatic and Reserves an
    Important Role for the District Court.................................33

   2. Certifying Now Will Prejudice Defendants........................35

CONCLUSION.........................................................................................................39

## TABLE OF AUTHORITIES

*Cases*                                                                 Page(s)

*Abbott Lab'ys v. Gardner*, 387 U.S. 136 (1967).................................................... 14, 20

*Am. Petroleum Inst. v. EPA*, 683 F.3d 382 (D.C. Cir. 2012)................................... 13

*Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531 (1987)..................................... 29

*Arpaio v. Obama*, 797 F.3d 11 (D.C. Cir. 2015) .................................................... 12

*AstraZeneca Pharms. LP v. Food & Drug Admin.*,
    850 F. Supp. 2d 230 (D.D.C. 2012)................................................................ 25, 26

*Beberman v. Blinken*, 61 F.4th 978 (D.C. Cir. 2023) ............................................... 32

*Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28 (D.C. Cir. 2002) .......... 21, 23

*Bread PAC v. FEC*, 455 U.S. 577 (1982) ................................................... 30, 33, 39

*Bread PAC v. FEC*, 635 F.2d 621 (7th Cir. 1980)................................................... 39

*Bruesewitz v. Wyeth LLC*, 562 U.S. 223 (2011) .................................................... 23

*Buckley v. Valeo*, 424 U.S. 1 (1976) .................................................................. 34

*Buckley v. Valeo*, 519 F.2d 817 (D.C. Cir. 1975) .................................................. 34

*Buckley v. Valeo*, 387 F. Supp. 135 (D.D.C. 1975) ............................................... 39

*California Med. Ass'n v. FEC*, 453 U.S. 182 (1981) ...................................... 33, 34, 37, 38

*California Med. Ass'n v. FEC*, 641 F.2d 619, 632 (9th Cir. 1980) ............................. 30

*Califano v. Sanders*, 430 U.S. 99 (1977) ............................................................ 14

*California v. Trump*, 613 F. Supp. 3d 231 (D.D.C. 2020)..................................... 15, 17

*Cao v. FEC*, 688 F. Supp.2d 498 (E.D. La. 2010)................................................. 38

*Carey v. FEC*, 791 F. Supp. 2d 121 (D.D.C. 2011)............................................... 28

*Chaplaincy of Full Gospel Churches v. England*,
    454 F.3d 290 (D.C. Cir. 2006)..................................................................... 27, 28

*Church v. Biden*, 573 F. Supp. 3d 118 (D.D.C. 2021) .................................... 13, 14, 15, 20, 25, 27

*City and County of S.F. v. Trump*, 897 F.3d 1225 (9th Cir. 2018) ................................. 15, 21, 22

*Clapper v. Amnesty Int'l, USA*, 568 U.S. 398 (2013) ................................. 17, 18, 19, 25

*Clark v. Valeo*, 559 F.2d 642 (D.C. Cir. 1977) ........................................................... 33

*Common Cause v. Trump*, 506 F. Supp. 3d 39 (D.D.C. 2020) ................................. 21, 23

*Davis v. Billington*, 76 F. Supp. 3d 59 (D.D.C. 2014) ..................................................... 26

*DCCC v. FEC*, No. 24-CV-2935 (RDM), 2024 WL 4650907 (D.D.C. Nov. 1, 2024) ............... 25

*Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317 (D.C. Cir. 2013) ................................. 18

*Dellums v. Bush*, 752 F. Supp. 1141 (D.D.C. 1990) ...................................................... 14, 19

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371 (D.C. Cir. 2017) ........................................ 24, 25, 26

*El Paso Nat. Gas Co. v. FERC*, 50 F.3d 23 (D.C. Cir. 1995) ....................................... 15

*FEC v. Colo. Republican Campaign Comm.*, 533 U.S. 431 (2001) ........................... 38

*FEC v. NRA Pol. Victory Fund*, 513 U.S. 88 (1994) ....................................................... 5

*Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs*, 873 F. Supp. 2d 363 (D.D.C. 2012) ........................................................... 19

*Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905 (D.C. Cir. 2015) ........................... 13, 19, 25

*Food & Water Watch, Inc. v. Vilsack*, 79 F. Supp. 3d 174 (D.D.C. 2015) ........................... 13

*Gifford v. Congress*, 452 F. Supp. 802 (E.D. Cal. 1978) ........................................ 34, 37

*Gifford v. Tiernan*, 670 F.2d 882 (9th Cir. 1982) ...................................................... 34, 38

*Goland v. United States*, 903 F.2d 1247 (9th Cir. 1990) ........................................... 34

*Greater New Orleans Fair Hous. Action Ctr. v. U.S. Dep't of Hous. & Urb. Dev.*, 639 F.3d 1078 (D.C. Cir. 2011) ........................................................... 26

*Holmes v. FEC,* 823 F.3d 69 (D.C. Cir. 2016) ............................................... 32, 34, 36

*Holmes v. FEC*, 99 F. Supp. 3d 123 (D.D.C. 2015) ................................................ 36

*Holmes v. FEC*, No. 14-5281, slip op. (D.C. Cir. Jan. 30, 2015) ........................... 35

*Holmes v. FEC*, No. 14-1243 (RMC), 2014 WL 6190937 (Nov. 17, 2014) ......................... 36, 37

*In re Cao*, 619 F.3d 410 (5th Cir. 2010) ................................................ 34, 35, 37

*Indus. Energy Consumers of Am. v. FERC*, 125 F.4th 1156 (D.C. Cir. 2025) ............................ 17

*Judd v. FEC*, 304 F. App'x 874 (D.C. Cir. 2008) ................................................ 34, 37

*Khachaturian v. FEC*, 980 F.2d 330 (5th Cir. 1992) ................................................ 35, 38, 39

*League of Women Voters of Mo. v. Ashcroft,*
336 F. Supp. 3d 998 (W.D. Mo. 2018) ................................................ 27, 28

*League of Women Voters of U.S. v. Newby*, 838 F.3d 1 (D.D.C. 2016) ................................ 29

*Libertarian Nat'l Comm., Inc. v. FEC*, No. 13-5094,
2014 WL 590973 (D.C. Cir. Feb. 7, 2014) ................................................ 35, 36

*Libertarian Nat. Comm., Inc. v. FEC*, 930 F. Supp. 2d 154 (D.D.C. 2013) ............................ 35

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ................................................ 12, 13, 15, 17

*Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871 (1990) ................................................ 13

*Mariani v. United States*, 212 F.3d 761 (3d Cir. 2000) ............................................ 34

*Martin Tractor Co. v. FEC*, 627 F. 2d 375 (1980) ................................................ 34

*Marx v. Gen. Revenue Corp.,* 568 U.S. 371 (2013) ................................................ 23

*Missouri v. Biden*, 52 F.4th 362 (8th Cir. 2022) ................................................ 21

*Missouri v. Biden*, 558 F. Supp. 3d 754 (E.D. Mo. 2021) ............................................ 21

*Moore v. Charlotte-Mecklenberg Bd. of Educ.*, 402 U.S. 47 (1971) .................................... 33

*Mott v. FEC*, 494 F. Supp. 131 (D.D.C. 1980) ................................................ 32, 35

*Munaf v. Geren*, 553 U.S. 674 (2008) ................................................ 14

*Nat'l Ass'n of Diversity Officers in Higher Ed. v. Trump,*
No. 25-1189 (4th Cir. Mar. 14, 2025) ................................................ 20

*Nat'l Comm. of the Reform Party of the U.S. v. Democratic Nat'l Comm*,
  168 F.3d 360 (9th Cir. 1999) ............................................................... 34, 37

*Nat'l Fair Hous. Alliance v. Carson*, 330 F. Supp. 3d 14 (D.D.C. 2018) ................... 27

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803 (2003) ............................ 20

*Nken v. Holder*, 556 U.S. 418 (2009) ................................................................ 28

*NRSC. v. FEC*, 712 F. Supp. 3d 1017 (S.D. Ohio 2024) ................................ 32, 33, 38

*Obama v. Klayman*, 800 F.3d 559 (D.C. Cir. 2015) ............................................ 25

*Open Soc'y Just. Initiative v. Trump*, 510 F. Supp. 3d 198 (S.D.N.Y. 2021)........................ 18, 23

*POET Biorefining, LLC v. Env't Prot. Agency*,
  970 F.3d 392 (D.C. Cir. 2020)......................................................................... 13

*Pool v. City of Houston*, 87 F.4th 733 (5th Cir. 2023)........................................... 32

*Pub. Citizen, Inc. v. Trump*, 435 F. Supp. 3d 144 (D.D.C. 2019).................... 17, 18, 19

*Pub. Citizen, Inc. v. Trump*, 297 F. Supp. 3d 6 (D.D.C. 2018)................................. 18

*Roshan v. Smith*, 615 F. Supp. 901 (D.D.C. 1985) ......................................... 13, 19

*Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108 (D.D.C. 2015)................ 28

*Sibley v. Alexander*, 916 F. Supp. 2d 58 (D.D.C. 2013) ........................................ 26

*Singh v. Carter*, 185 F. Supp. 3d. 11 (D.D.C. 2016). .......................................... 27

*SpeechNow.org v. FEC,* 599 F.3d 686 (D.C. Cir. 2010) ......................................... 37

*SpeechNow.org v. FEC*,  No. 08-248, 2009 WL 3101036 (D.D.C. Sept. 28, 2009)  ................. .37

*Stand Up for Cal.! v. U.S. Dep't of the Interior*, 919 F. Supp. 2d 51 (D.D.C. 2013) ................. 26

*Strait Shipbrokers Pte. Ltd. v. Blinken*, 560 F. Supp. 3d 81 (D.D.C. 2021) .............................. 28

*Texas v. United States*, 523 U.S. 296 (1998) .................................................... 13

*Trans World Airlines, Inc. v. Nat'l Mediation Bd.*, Nos. 81,0823, 81-0784,1981 WL 2395
  (D.D.C. May 29, 1981)................................................................................. 13

*Trump v. New York*, 592 U.S. 125 (2020) ................................................................. 13

*United States v. Hassanzadeh*, 271 F.3d 574 (4th Cir. 2001) ................................. 23

*United Transp. Union v. I.C.C.*, 891 F.2d 908 (DC. Cir. 1989) .............................. 17

*Univ. of Tex. v. Camenisch*, 451 U.S. 390 (1981) .................................................. 29

*Wagner v. FEC*, 717 F.3d 1007 (D.C. Cir. 2013) .................................................... 36

*Wagner v. FEC*, 793 F.3d 1 (D.C. Cir. 2015) .......................................................... 38

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) ............................................ 29

*Whitmore v. FEC*, 68 F.3d 1212 (9th Cir. 1996) ............................................... 34, 37

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) .................................. 14, 29

*Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43 (D.C. Cir. 1999) ...... 14, 19, 20

**Statutes**

2 U.S.C. § 437h ......................................................................................................... 31

28 U.S.C. § 2201 ......................................................................................................... 9

52 U.S.C. § 30106 ..................................................................................... 4, 11, 22, 39

52 U.S.C. § 30106(b) ................................................................................................ 31

52 U.S.C. § 30106(c) ........................................................................................ 4, 5, 6, 7

52 U.S.C. § 30106(a)(1) .............................................................................................. 5

52 U.S.C. § 30106(b)(1) .......................................................................................... 4. 7

52 U.S.C. § 30106(f)(4) ........................................................................................ 4, 31

52 U.S.C. § 30107 ................................................................................................. 4, 22

52 U.S.C. § 30107(a)(6) ...................................................................................... 4, 5, 31

52 U.S.C. § 30107(a)(7) ......................................................................................... 4, 5

52 U.S.C. § 30107(a)(8) ......................................................................................... 5, 7

52 U.S.C. § 30107(a)(9) .................................................................................... 5, 7

52 U.S.C. § 30108 ............................................................................................. 31

52 U.S.C. § 30108(a) ........................................................................................... 6

52 U.S.C. § 30108(a)(1) ....................................................................................... 6

52 U.S.C. § 30108(a)(2) ....................................................................................... 6

52 U.S.C. § 30108(c) ............................................................................................ 6

52 U.S.C. § 30109 ............................................................................................. 31

52 U.S.C. § 30109(a)(1) .................................................................................... 4, 5

52 U.S.C. § 30109(a)(2) ....................................................................................... 5

52 U.S.C. § 30109(a)(4)(A)(i) .............................................................................. 5

52 U.S.C. § 30109(a)(6)(A) .................................................................................. 5

52 U.S.C. § 30109(a)(8) ....................................................................................... 4

52 U.S.C. § 30109(a)(8)(A) .................................................................................. 5

52 U.S.C. § 30109(a)(8)(C) .................................................................................. 6

52 U.S.C. § 30109(a)(12) ..................................................................................... 9

52 U.S.C. § 30110 ....................................................................................... *passim*

52 U.S.C. § 30111 ............................................................................................. 22

52 U.S.C. § 30111(a)(8) .................................................................................... 4, 7

**Rules and Regulations**

11 C.F.R. § 111.21 ............................................................................................... 9

11 C.F.R. § 111.4 ................................................................................................. 5

11 C.F.R. § 112.1(a)-(b) ....................................................................................... 6

11 C.F.R. § 112.1(b)-(d) ....................................................................................... 6

11 C.F.R. § 200.2(a)(1) ........................................................................................... 6

11 C.F.R. § 200.3 ................................................................................................... 6

**Executive Orders**

Executive Order No. 14,215, *Ensuring Accountability for All Agencies*,
90 Fed. Reg. 10447 (Feb. 18, 2025) .................................................... *passim*

**Miscellaneous**

H.R.12406, H. Rep. No. 94-917, 94th Cong., 2d Sess. (1976), *reprinted in* FEC, Legislative
History of Federal Election Campaign Act Amendments of 1976 (1977) ................................... 22

## INTRODUCTION

The Federal Election Commission and the four Commissioners named in their official capacities, James E. Trainor III, Shana M. Broussard, Allen Dickerson, and Dara Lindenbaum ("FEC" or "Commission"), oppose plaintiff DNC, DSCC, and DCCC's motion for preliminary injunctive relief.  (Pls.' Mot. for Prelim. Inj. (ECF No. 12) (filed Mar. 11, 2025).)  As outlined in the FEC's Memorandum in Support of its Motion to Dismiss, the Court should dismiss plaintiffs' claims in their entirety for lack of subject-matter jurisdiction and failure to state a claim.  (*See generally* FEC Defs.' Mem. of P. and A. in Supp. of Mot. to Dismiss (ECF No. 26-1) (filed Mar. 21, 2025) ("FEC's Mot.").)  Consequently, plaintiffs' request for injunctive relief must be denied.

The arguments in the FEC's Motion and asserted in this opposition also fully resolve the queries set forth in the Court's March 13, 2025 Minute Order (the "Order").  Pursuant to the Order, the Commission addresses the following matters: (1) "any relevant jurisdictional issues or other constraints on the Court's authority"; (2) "Plaintiffs' entitlement to a preliminary injunction"; (3) "whether and to what extent certification under 52 U.S.C. § 30110 is appropriate, including as to the question Plaintiffs propose in the meet-and-confer statement or otherwise"; and (4) "whether the case raises questions that are not appropriate for certification that are for this Court to resolve on the merits and, if so, what those questions are."  (*See* Order.)  As to the first question, plaintiffs present no justiciable case or controversy.  As to the remainder, the answer is a resounding "no."

First, plaintiffs fail to establish standing, and thus the Court lacks jurisdiction to consider plaintiffs' Motion, which obviates the remainder of the Court's inquiries.  Plaintiffs argue that the FEC is at risk of, at some point in the future, being subject to a partisan takeover of the

agency by the President and the Attorney General that is "all but certain" to harm plaintiffs.  (*See* Pls.' Mem. in Supp. of Mot. for Prelim. Inj. (ECF No. 12-1) (filed Mar. 11, 2025), at 21 ("Mot.").)  But these harms, if ever they were to materialize, depend on hypothetical premises and assumptions that the President and the Attorney General will come to a different legal conclusion than the Commission, which they will then impose on the Commission.  (*See id.* at 9.) Not only have these harms not come to pass, there is no evidence that they ever will.  (*See* Defs.' Trump & Bondi's Mem. in Supp. of Mot. to Dismiss the Compl. (ECF No. 17-1) (filed Mar. 14, 2021), at 7 ("Administration Defs.' Mot.") ("E.O. 14,215 has not been applied to the Commission's legal interpretations of the FECA, nor is there any indication that the President or the Attorney General will issue any such interpretation.").)  Plaintiffs' speculation is not sufficient to establish standing with respect to the Motion.

Second, the Court's lack of subject matter jurisdiction suffices to resolve the instant Motion and precludes the need to address any further merits issues for two simple reasons: (1) plaintiffs have no standing, and (2) their causes of action are not ripe.  Success on the merits turns on the ability to get to the merits at all, and here plaintiffs allege only nebulous injuries that cannot establish harm (much less irreparable harm) and therefore do not merit the "extraordinary and drastic remedy" of preliminary injunctive relief.  Plaintiffs' likelihood of success is similarly forestalled by a lack of ripeness because even if plaintiffs could meet the bare constitutional minimum to establish standing, it would be highly premature to judge the legality of a general statement of administration policy, particularly where it is explicitly intended to be carried out lawfully and consistent with existing agency authority.  Because the merits are not justiciable, plaintiffs cannot succeed, and the Court is left with nothing to adjudicate.

Finally, certification to the en banc Court of Appeals is neither appropriate nor necessary. Even assuming the Court's jurisdiction over plaintiffs' hypothetical inquiry, grounded in no currently-existing controversy nor any dispute as to FECA's constitutionality, neither of plaintiffs' two counts seek to "construe the constitutionality of" FECA and thus fall outside of 52 U.S.C. § 30110's narrow bounds. But further assuming a properly pled Section 30110 claim, the Court should nonetheless decline to certify plaintiffs' constitutional inquiry at this time. As the Court's Order implicitly acknowledged, plaintiffs' only apparent attempt to clearly identify the question it seeks to certify to the Court of Appeals is in the parties' March 13 Meet and Confer Statement, which deviates from the standard practice in a 52 U.S.C. § 30110 action where plaintiffs move the Court for certification and the parties have the opportunity for considered briefing on the precise question presented, rather than expedited briefing on an incongruous request for injunctive relief. (*See* Joint Meet and Confer Statement (ECF 16) (filed Mar. 13, 2025) ("JMC Statement").) This is not a mere formality. Despite the abbreviated text of Section 30110 itself, courts have long held that the district court performs a crucial gatekeeping function before authorizing an en banc merits hearing, including determining if there is a non-frivolous and substantial question to certify, conducting fact-finding necessary for the en banc court to answer that precise certified question, and determining the certified question's phrasing and scope. Particularly given the lack of any specific facts establishing a live controversy, there is simply no justification for rushing this process. Should the Court reach the merits of plaintiffs' Count II, which seeks permanent injunctive relief, the Court should reject that claim. Further, should the Court certify any question to the D.C. Circuit, it should not award permanent injunctive relief before the D.C. Circuit can rule on any certified questions. The Court should

allow the D.C. Circuit to rule first because any actions or rulings on certification would be law of the case, and thus binding on this Court.

Because plaintiffs lack standing, fail to establish entitlement to injunctive relief, present causes of action inappropriate for certification, and leave the Court without merits to consider, plaintiffs' Motion should be denied, and its Complaint should be dismissed.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Federal Election Commission

The FEC is a six-member, independent agency of the United States government with "exclusive jurisdiction" to administer, interpret, and civilly enforce FECA. *See generally* 52 U.S.C. §§ 30106, 30107. Congress authorized the Commission to "formulate policy" with respect to FECA, *id.* § 30106(b)(1); to make, amend, and repeal rules and issue advisory opinions, *id.* §§ 30107(a)(7), (8), 30111(a)(8); and to investigate possible violations of the Act, *id.* § 30109(a)(1)-(2). The Commission is further vested with independent litigating authority and has "exclusive jurisdiction with respect to the civil enforcement" of FECA. *Id.* § 30106(b)(1). The Commission may "initiate, . . . defend [in matters regarding FEC administrative complaints] . . . or appeal any civil action in the name of the Commission to enforce the provisions of" FECA when authorized by the affirmative vote of four or more Commissioners. [1] *Id.* § 30107(a)(6); *see id.* § 30106(c). In addition, FECA generally authorizes the FEC to "appear in and defend against any action instituted under this Act[,]" which is not subject to a Commissioner vote. 52 U.S.C. § 30106(f)(4).[2]

---

[1]    *See* 52 U.S.C. § 30109(a)(8).

[2]    The Commission's authority to conduct appeals, 52 U.S.C. § 30107(a)(6), generally does not authorize the Commission to independently conduct discretionary appeals before the

FECA provides that decisions of the Commission "with respect to the exercise of its duties and powers under the provisions of th[e] Act shall be made by a majority vote of the members of the Commission," and that certain specified actions require "the affirmative vote of 4 members of the Commission." 52 U.S.C. § 30106(c) (citing *id.* § 30107(a)(6)-(9)). No member of the Commission may "delegate to any person his or her vote or any decisionmaking authority or duty vested in the Commission" by FECA. *Id.* § 30106(c). Importantly, no more than three Commissioners can represent the same political party. *Id.* § 30106(a)(1).

FECA permits any person to file an administrative complaint with the Commission alleging a violation of the Act. *Id.* § 30109(a)(1); 11 C.F.R. § 111.4. After reviewing the complaint and any respondent responses, if at least four of the FEC's Commissioners vote to find "reason to believe" FECA has been violated, the Commission may investigate the alleged violation. 52 U.S.C. §§ 30106(c), 30109(a)(2). If the Commission proceeds with an investigation, it then must determine whether there is "probable cause" to believe that FECA has been violated, which likewise requires the affirmative vote of at least four Commissioners. 52 U.S.C. §§ 30109(a)(4)(A)(i), 30106(c). FECA authorizes the agency, if four Commissioners agree, to institute a *de novo* civil enforcement action in federal district court if no conciliation agreement is reached. *Id.* § 30109(a)(6)(A). If the Commission dismisses an administrative enforcement matter, FECA provides that a complainant "aggrieved" by the dismissal "may file a petition with the United States District Court for the District of Columbia" to obtain judicial review. *See id.* § 30109(a)(8)(A). The reviewing court may only order the Commission to

---

Supreme Court, *i.e.*, by petition for certiorari. *See FEC v. NRA Pol. Victory Fund*, 513 U.S. 88, 98 (1994).

"conform with" the court's declaration within 30 days, *id.* § 30109(a)(8)(C), and if it does not, the administrative complainant may bring "a civil action to remedy the violation involved." *Id.*

Any person may request an advisory opinion regarding the application of FECA and Commission regulations to a specific transaction or activity by the person. *Id.* § 30108(a)(1); 11 C.F.R. § 112.1(a)-(b). FECA generally provides that the Commission "shall render [an] advisory opinion" within 60 days of receiving a request. 52 U.S.C. § 30108(a); *see* 11 C.F.R. § 112.1(b)-(d). In the event that an advisory opinion is requested by "a candidate, or any authorized committee of such candidate, during the 60-day period before any election for Federal office involving the requesting party," the Commission must treat the request on an expedited basis, and "render a written advisory opinion relating to such request no later than 20 days after the Commission receives a complete written request." 52 U.S.C. § 30108(a)(2). An advisory opinion must garner four affirmative Commissioner votes to issue. *See id.* §§ 30106(c), 30107(a)(8). When the Commission issues an advisory opinion finding the proposed transaction or activity lawful under FECA and its regulations, the opinion acts as a safe harbor against sanctions provided by FECA for any person involved in any specific transaction or activity that is indistinguishable in all material aspects from the transaction or activity addressed in the advisory opinion. 52 U.S.C. § 30108(c).

Pursuant to Commission regulations, "[a]ny interested person may file with the Commission a written petition for the issuance, amendment, or repeal of a rule" implementing FECA. 11 C.F.R. § 200.2(a)(1). The regulations set forth detailed steps guiding how petitions for rulemaking are processed. *See* 11 C.F.R. § 200.3 (discussing, *inter alia*, public notices, public comment and hearings). Once it has considered any comments on a Notice of Availability, Notice of Inquiry, Advance Notice of Proposed Rulemaking, or public hearing, as

well as "any other information relevant to the subject matter of the petition, the Commission will decide whether to initiate a rulemaking." *Id.* § 200.4(a). If the Commission decides not to proceed with a rulemaking, it "publish[es] a Notice of Disposition in the Federal Register and notif[ies] the petitioner." *Id.* § 200.4(b). Each of the various steps the Commission must or may take throughout this process, such as issuing a Notice of Availability, Notice of Inquiry, or Advance Notice of Proposed Rulemaking, or holding a public hearing, in addition to the decision to initiate a formal rulemaking, requires the affirmative votes of at least four FEC Commissioners. *See* 52 U.S.C. §§ 30106(b)(1), (c), 30107(a)(8)-(9), 30111(a)(8). In addition to these formal actions, the Commission organizes its priorities and directs agency resources for regulation matters via affirmative votes directing the drafting and preparation of notices and rules prior to a final vote by the Commissioners.

## B.      Executive Order 14,215

On February 18, 2025, President Trump issued Executive Order 14,215, *Ensuring Accountability for All Agencies*, 90 Fed. Reg. 10447 (Feb. 18, 2025). "Executive Order" or "E.O. 14,215"). The E.O. 14,215 states that "[t]he Constitution vests all executive power in the President and charges him with faithfully executing the laws." E.O. 14,215 § 1. And because "it would be impossible for the President to single-handedly perform all the executive business of the Federal Government," the Executive Order further explains that the Constitution "provides for subordinate officers to assist the President in his executive duties." *Id.*

Under Section 7 (Rules of Conduct Guiding Federal Employees' Interpretation of the Law) of E.O. 14,215, the President and the Attorney General, subject to the supervision of the President, "shall provide authoritative interpretations of the law for the executive branch." Their opinions on "questions of law" are "controlling on all employees in the conduct of their official

duties." *Id.* And "[n]o employee of the executive branch acting in their official capacity may advance an interpretation of the law as a position of the United States that contravenes the President or the Attorney General's opinion on a matter of law, including but not limited to the issuance of regulations, guidance, and positions advanced in litigation, unless authorized to do so by the President or in writing by the Attorney General." *Id.* However, Section 8 (General Provisions) of the Executive Order provides that "[n]othing in this order shall be construed to impair or otherwise affect . . . the authority granted by law to an executive department, agency, or head thereof." *Id*. § 8. Section 8 also provides that the executive "order shall be implemented consistent with applicable law." *Id.*

Other sections of the Executive Order lay out additional topics, including agency regulation review by the Office of Information and Regulatory Affairs ("OIRA"), performance standard reporting and management by the director of the Office of Management and Budget, and agency consultation on policies and priorities with the Executive Office of the President. *Id.* §§ 3-6. The President issued a Fact Sheet contextualizing the Executive Order. *See* Fact Sheet: President Donald J. Trump Reins in Independent Agencies to Restore a Government that Answers to the American People, THE WHITE HOUSE, Feb. 18, 2025, https://www.whitehouse.gov/fact-sheets/2025/02/fact-sheet-president-donald-j-trump-reins-in-independent-agencies-to-restore-a-government-that-answers-to-the-american-people/. However, the Commission is not aware of any guidance provided by the administration concerning implementing the Executive Order.

### C.    Plaintiffs' Complaint

DNC, DSCC, and DCCC are the national campaign committees of the Democratic Party, "dedicated to electing Democratic candidates at the national, state, and local levels," including

the U.S. Senate and the U.S. House of Representatives.  (Pls.' Compl. for Declaratory and Inj. Relief ("Compl.") ¶ 13; *see also id.* ¶¶ 14-15.)  On February 28, 2025, plaintiffs filed their Complaint with this Court asserting that E.O. 14,215 purports to "eliminate FECA's requirement that the executive branch's legal interpretations of FECA's provisions reflect the bipartisan consensus of an expert multimember board and replace that bipartisan consensus with the judgment of a single partisan political figure—the President of the United States."  (*Id.* ¶ 5.) Plaintiffs allege that as "repeat players before the FEC who interact with the Commission on an ongoing basis," *id.* ¶ 55, their "core activities" rely on the premise that "the FEC's decisions will be rendered by a bipartisan Commission that is made up of members of multiple political parties, each exercising independent judgment."  (*Id.* ¶ 57.)  Plaintiffs allege that, as a result of E.O. 14,215, the Commission will take "positions on questions of law for the partisan purpose of disadvantaging Democratic campaigns and Democratic candidates" in fulfilling the FEC's statutory mandates, *see id.* ¶ 57, and that plaintiffs' ability to "rely on the independent legal judgment of the Commission" is hampered.  (*Id.* ¶ 59.)  More specifically, plaintiffs claim that the E.O. has harmed them because their "calculus" on whether to request an advisory opinion from the FEC might be affected, and their ability to file and defend against administrative complaints in the future will be "substantially impaired" because they will be unable to rely on the "independent legal judgment" of the Commissioners.[3]  (*Id.* ¶ 59.)

The Complaint raises two Counts.  Count I alleges a claim under the Declaratory Judgment Act, 28 U.S.C. § 2201, and under the special judicial review provision of FECA, 52 U.S.C. § 30110, which requires a district court to certify questions of constitutionality of FECA

---

[3]     Plaintiffs also reference an allegedly pending matter under review.  (*See* Compl. ¶¶ 51-54.)  The FEC may not discuss open enforcement matters pursuant to statutory confidentiality provisions.  *Cf.* 11 C.F.R. § 111.21; 52 U.S.C. § 30109(a)(12).

to the U.S. Court of Appeals for the D.C. Circuit, sitting en banc.  (*Id.* ¶¶ 61-73.)  Plaintiffs

allege that the E.O. is inconsistent with FECA, and thus calls FECA's constitutionality into

question, because it prohibits the Commission and Commission employees from "advancing any

interpretation of the law" that "contravenes the President or Attorney General's opinion on a

matter of law."  (*Id.* ¶ 76 (quoting E.O. 14,215 § 7).)

Plaintiffs seek equitable relief in Count II, and allege that Section 7 of the E.O. as applied

to the Commission "violates FECA" because it allegedly "prohibits Commissioners from

exercising independent legal judgment and carrying out their statutory duties."  (Compl. ¶ 77.)

Plaintiffs ask this Court to "[d]eclare that the provisions of FECA empowering the

Commissioners to exercise independent legal judgment" do not violate the U.S. Constitution;

declare that Section 7 of E.O. 14,215 is unlawful as applied to the Commission, and to enjoin

defendants from applying Section 7 of the EO to the Commission.  (*Id.* ¶¶ 80-82.)

### D.    Plaintiffs' Motion for Preliminary Injunction and this Court's Order

On March 11, 2025, eleven days after filing their Complaint, plaintiffs filed the instant

Motion.  (*See* Mot.).  Therein, plaintiffs essentially reiterate arguments presented in their

Complaint that E.O. 14,215 impermissibly conflicts with FECA by purporting to strip

Commissioners of their statutory authority, Mot. at 9-11, and argue in favor of the uncontested

proposition that "FECA's vesting of Commissioners with independent authority to interpret the

Act is consistent with the Constitution[.]"  (*Id.* at 11-16.)  Plaintiffs assert that they have a "ripe"

cause of action, *id.* at 16-18, and they will "suffer irreparable harm in the absence of an

injunction," based upon the Executive Order requiring plaintiff officers to "make decisions

about" campaign strategies and adhere to a "new perspective" in light of the Executive Order.

(*Id.* at 19.)  Plaintiffs further "fear that any new or different approach could result in an FEC

complaint against the Committees," which may not "be resolved in an evenhanded manner[.]" (*Id.*)  In support of these alleged harms plaintiffs proffer declarations from officers at each of the Democratic National Committee, DSCC, and DCCC.  (ECF Nos. 12-2, 12-3, 12-4) (collectively "Plaintiffs' Declarations").

Pursuant to this Court's direction, the parties subsequently conferred and on March 13, 2025, filed a Joint Meet and Confer Statement.  (*See* JMC Statement.)  Therein, the parties established a preliminary injunction briefing and hearing schedule, and stated their positions regarding consolidation for a final determination on the merits or consolidation with issues related to the certification of a constitutional question to the Court of Appeals pursuant to 52 U.S.C. § 30110.  Plaintiffs requested that the Court consolidate its decision on plaintiffs' Preliminary Injunction Motion with an order certifying constitutional questions to the en banc D.C. Circuit, while defendants opposed both consolidation and certification.  (*Id.*)  In the JMC Statement plaintiffs appeared to articulate for the first time the constitutional question they sought to certify to the Court of Appeals, namely "whether the Federal Election Commission's independent statutory authority to administer, interpret, and civilly enforce the Federal Election Campaign Act ("FECA"), 52 U.S.C. §§ 30106-07, is consistent with the President's executive power under Article II of the U.S. Constitution[.]"  (*Id.* at 1.)  That same day, the Court issued its Order providing that preliminary injunction briefing should address the following matters: (1) "any relevant jurisdictional issues or other constraints on the Court's authority"; (2) "Plaintiffs' entitlement to a preliminary injunction"; (3) "whether and to what extent certification under 52 U.S.C. § 30110 is appropriate, including as to the question Plaintiffs propose in the meet-and-confer statement or otherwise"; and (4) "whether the case raises questions that are not

appropriate for certification that are for this Court to resolve on the merits and, if so, what those questions are." (*See* Order.)

On March 14, 2025, defendants President Donald J. Trump and Attorney General Pamela Bondi filed a Motion to Dismiss and accompanying Memorandum. (*See generally* Administration Defs.' Mot.) On March 21, 2025, the Commission filed its own Motion to Dismiss and accompanying Memorandum, in which it joined the President and Attorney General's jurisdictional arguments, and provided reasons why the Court should not assume the Executive Order will be implemented illegally with respect to the FEC. (*See* FEC Mot.)

## ARGUMENT

## I.    LEGAL STANDARDS

### A.    Standing

A plaintiff bears the burden of demonstrating that it has properly invoked this Court's subject-matter jurisdiction. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). The Article III standing inquiry comprises three essential elements. First, a plaintiff must show it has "suffered an injury in fact," which the Supreme Court defines as "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up). Second, a plaintiff must show that there is a "causal connection between the injury and the conduct complained of," which requires the injury to be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id*. (cleaned up). And third, plaintiff must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. at 561 (cleaned up).

"Each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Id.*

In the preliminary injunction context, a party "must show a substantial likelihood of standing." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) (internal quotation marks omitted). This is a heightened standard under which the plaintiff's burden to demonstrate standing "'will normally be no less than that required on a motion for summary judgment.'" *Food & Water Watch, Inc. v. Vilsack*, 79 F. Supp. 3d 174, 186 (D.D.C. 2015) (quoting *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 907 n.8 (1990)). As such, to establish standing for a preliminary injunction, a plaintiff cannot "rest on such 'mere allegations,' [as would be appropriate at the pleading stage] but must 'set forth' by affidavit or other evidence 'specific facts,' which ... will be taken to be true." *Lujan,* 504 U.S. at 561 (citation omitted).

### B.  Ripeness

Though related to standing, the prudential ripeness doctrine is distinct. It addresses not "*who* may bring an action" but "*when* such an action may be brought." *Roshan v. Smith*, 615 F. Supp. 901, 904 (D.D.C. 1985).[4] Prudential ripeness "ensures that Article III courts make decisions only when they have to, and then, only once." *Am. Petroleum Inst. v. EPA,* 683 F.3d 382, 387 (D.C. Cir. 2012). To weigh the prudential ripeness of a case, courts consider: (1) the "'fitness of the issues for judicial decision'"; and (2) the "extent to which withholding a decision will cause hardship to the parties.'" *See Church v. Biden*, 573 F. Supp. 3d 118, 135 (D.D.C.

---

[4]    Historically, courts considered both constitutional and prudential ripeness, but the D.C. Circuit has recognized that constitutional ripeness has been, at least in part, "subsumed into the Article III requirement of standing." *POET Biorefining, LLC v. Env't Prot. Agency*, 970 F.3d 392, 403 (D.C. Cir. 2020). For avoidance of doubt, however, plaintiffs also fail to establish Article III ripeness because their claims are "dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 592 U.S. 125, 131 (2020) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

2021) (quoting *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)).  "[T]he ripeness requirement dictates that courts go beyond constitutional minima and take into account prudential concerns which in some cases may mandate dismissal even if there is not a constitutional bar" to the court considering the case. *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 48 (D.C. Cir. 1999).  In the preliminary injunction context, a failure to show that plaintiffs' underlying claims are ripe merits denial of the Motion, even where plaintiffs have standing.  *See Church*, 573 F. Supp. 3d at 136 (denying a preliminary injunction where plaintiffs' claims were not ripe); *cf. Dellums v. Bush*, 752 F. Supp. 1141, 1152 (D.D.C. 1990) (denying a preliminary injunction where plaintiffs had standing but their claims were not ripe under the analysis pertaining to confrontations between Congress and the president).

### C.    Injunctive Relief

"A preliminary injunction is an extraordinary and drastic remedy" that is "never awarded as of right."  *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (internal quotation marks and citations omitted).  A plaintiff seeking a preliminary injunction must establish that (1) "he is likely to succeed on the merits," (2) "he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in his favor," and (4) "an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

## II.    PLAINTIFFS LACK STANDING BECAUSE THEIR ALLEGED INJURIES ARE SPECULATIVE AND INSUFFICIENTLY IMMINENT

As the Commission explained in detail in its Motion to Dismiss, and reiterates in large part below, plaintiffs' Motion and Complaint are remarkable for what they leave out.  (*See generally* FEC' Mot.)  Plaintiffs do not argue that the President or the Attorney General has directed the Commission to implement any particular interpretation of FECA, either as a matter

of policy or with respect to plaintiffs specifically.  (*See generally* Mot.; Compl.)  They do not

contend that, at this point, the Commission has deviated from business as usual.  Instead, they

ground their injuries in hypothetical scenarios based on speculative future actions by the

President and Attorney General, the FEC, and plaintiffs themselves which have not and may

never occur.  *See El Paso Nat. Gas Co. v. FERC*, 50 F.3d 23, 27 (D.C. Cir. 1995) (concluding

that injuries flowing from a "hypothetical premise" do not support standing).  Because plaintiffs'

purported harms are wholly speculative and are not imminent, they do not suffice for this Court

to exercise jurisdiction over either their motion for preliminary injunction or indeed their

Complaint writ large.  *See California v. Trump*, 613 F. Supp. 3d 231, 240 (D.D.C. 2020)

(concluding "'conjectural or hypothetical'" injuries that are neither "'actual [n]or imminent'" are

insufficient for standing (quoting *Lujan*, 504 U.S. at 560)).

      Further, even if plaintiffs had met the irreducible constitutional minimum to establish

standing, the Motion fails for a further reason:  their claims are not ripe.  *See Church*, 573 F.

Supp. 3d at 135; *Trans World Airlines, Inc. v. Nat'l Mediation Bd.*, Nos. 81,0823, 81-0784, 1981

WL 2395, at *9 (D.D.C. May 29, 1981) (denying a preliminary injunction because the plaintiff's

claims were not ripe for review).  In either case, plaintiffs' causes of action are not justiciable,

and the Court must deny the Motion and dismiss the Complaint.

      Lastly, E.O. 14,215 Section 7 does not "unambiguously command action" from the

Commission or provide "clear and specific language" that requires the kind of interference with

FEC decisionmaking that plaintiffs allege.  *Cf. City & Cnty. of S.F. v. Trump*, 897 F.3d 1225,

1239-40 (9th Cir. 2018).  Instead, Section 8 informs the government policy expressed in the

administration's Executive Order by stating that it must be implemented consistent with the

"authority granted by law" to agency heads and "consistent with applicable law" writ large.  E.O.

14,215 § 8(b)(i), (c).  As such, there is simply no basis to assume that the general policy expressed in E.O. 14,215 will be carried out unlawfully.

### A.    Plaintiffs' Injuries are Speculative and Not Imminent

Reprising the allegations in their Complaint, plaintiffs' overarching argument is that their ability "to have their periodic reports and filings reviewed, petition for rulemakings, seek advisory opinions, file or defend against administrative complaints, and engage in litigation will be severely impaired if every legal determination of the agency is resolved under the binding legal interpretations of a political opponent instead of a bipartisan commission of experts." (Mot. at 3.)  More specifically, plaintiffs argue that they:  (1) fear exploring new fundraising approaches "*could* result in an FEC complaint"; (2) now "*expect*" and "*anticipate*" adverse and punitive rulings in administrative proceedings, which in turn chills their speech; (3) must reorganize their budget because the President and Attorney General "*can*" direct the FEC's response to a petition for rulemaking; and (4) must mitigate the "effects" of the Executive Order instead of preparing for the 2026 midterms, for which they claim the first half of 2025 is a "critical time."  (Mot. at 19-23 (emphasis added).)  This long list of harms, plaintiffs claim, puts plaintiffs "at a competitive disadvantage" with its Republican competitors.[5]  (*Id.* at 21.)  But nowhere does plaintiffs' Motion or Complaint point to any action the FEC has taken affecting plaintiffs since E.O. 14,215 was issued, much less do they argue that such a decision was adverse to their interests.  (*See generally* Mot.; Compl.)

Critically, despite plaintiffs' baseless assertion that "[i]t is all but certain" the President or Attorney General, or that the FEC, at their direction, will interpret or enforce FECA in a way that

---

[5]    Plaintiffs do not appear to assert competitor standing.  But even if they did, that argument would fail.  Plaintiffs present no evidence that the Executive Order has placed them or any other party at a particular competitive disadvantage.

harms plaintiffs, *see* Mot. at 21, the President and Attorney General have represented to this Court that the Executive Order "has not been applied to the Commission's legal interpretations of the FECA, nor is there any indication that the President or Attorney General will issue any such interpretation." Administration Defs.' Mot. at 7; *see Indus. Energy Consumers of Am. v. FERC*, 125 F.4th 1156, 1162 (D.C. Cir. 2025) (rejecting standing when "petitioners fail to demonstrate that they will ever suffer any injury" from the Federal Energy Regulatory Commission's grant of an abandonment incentive). Nor indeed *has* the Commission taken *any* action materially affecting plaintiffs since the Executive Order was issued. *See supra* pp. 10 n.4. Instead, their alleged harms are pure supposition and of a type with the quintessential "conjectural or hypothetical" injuries that are insufficient to support standing. *California*, 613 F. Supp. at 240 (quoting *Lujan*, 504 U.S. at 560).

While "[t]he risk of future injury can, at times, support a party's standing to sue," where a party alleges "'only future injuries,'" the party "'confronts a significantly more rigorous burden to establish standing.'" *Pub. Citizen, Inc. v. Trump*, 435 F. Supp. 3d 144, 155 (D.D.C. 2019) (quoting *United Transp. Union v. I.C.C.*, 891 F.2d 908 (DC. Cir. 1989)). Specifically, an asserted future injury must be "certainly impending" or there must be a "substantial risk" that the harm will occur. *Pub. Citizen, Inc*, 435 F. Supp. 3d at 155 (internally quotation marks and citations omitted); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative.") (cleaned up).

Plaintiffs cannot meet that high burden particularly here, where their alleged injuries arise from "predictive assumptions" about future decisions the FEC *may* make, including in response to actions plaintiffs *may* take. *See Pub. Citizen, Inc.*, 435 F. Supp. 3d at 155-156 (internal

quotation marks and citations omitted); *Pub. Citizen, Inc. v. Trump*, 297 F. Supp. 3d 6, 19 (D.D.C. 2018) (rejecting predictions as to how an agency will act in light of an Executive Order as "speculative and conclusory").  It is thus highly speculative to assume, as plaintiffs do, that the FEC will violate the law in implementing the Executive Order.  *See* Mot. at 9 (arguing that the Executive Order "prohibits the Commissioners from exercising independent legal judgment in carrying out their statutory duties and requires them instead to parrot the legal judgments of the President and Attorney General"); *see also* Compl. ¶ 77 (alleging that Commissioners will not exercise independent legal judgment); *Open Soc'y Just. Initiative v. Trump*, 510 F. Supp. 3d 198, 215-16 (S.D.N.Y. 2021).  ("[A]t present, it is no more than speculation that OFAC intends to violate [the International Economic Emergency Powers Act] in its enforcement of the Executive Order.").  It is equally speculative to conclude that the Executive Order will lead the FEC to take adverse actions against plaintiffs.  *See* Mot. at 19-23; *cf. Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1324-25 (D.C. Cir. 2013) ("Article III standing requires more than the possibility of potentially adverse regulation.").

This is so even when, as here, plaintiffs allege that the Executive Order "authorizes" the conduct they fear.  *See Clapper*, 568 U.S. at 412; Mot. at 7 ("Executive Order 14215 purports to preclude the Commissioners and other FEC employees from advancing any legal positions other than those of the President and Attorney General."); Compl. ¶ 43 (same).  In *Clapper v. Amnesty International*, human rights organizations, attorneys, and others alleged that, due to government surveillance authorized by the FISA Amendments Act, there was an "objectively reasonable likelihood" that their communications with their foreign contacts would be intercepted.  *See* 568 U.S.at 407, 410-411.  Even though the statute authorized such targeting, the Supreme Court

18

concluded that, without specific facts demonstrating that their contacts, *specifically*, would be targeted, plaintiffs' injuries were not imminent.  *See id.* at 412.

Plaintiffs' injuries here are even less immediate than those in *Clapper*.  (*See* Mot. at 19-23 (providing for injuries based on hypotheticals and arguing that three months after a new Congress and President are sworn in is a "critical time" for the 2026 midterm election preparations); *see also* Compl. ¶¶ 58 (explaining that the Executive Order "purports to provide" the President with the capability to direct the FEC's legal interpretations but providing neither examples nor a timeline).)  Unlike the FISA Amendments Act, E.O. 14,215 does not authorize or proscribe any *specific* action or legal view for the myriad executive agencies upon which it touches.  *See generally* E.O. 14,215.  Rather, it is a government-wide order embodying a policy without particular emphasis on the FEC.  *See id.*  Because plaintiffs' injuries are not "certainly impending," and they advance no arguments that demonstrate a "substantial risk" of their injuries occurring, *see Pub. Citizen, Inc*, 435 F. Supp. 3d at 155, they fail to show the "substantial likelihood" of standing required to merit preliminary injunctive relief.  *See Food & Water Watch, Inc.*, 808 F.3d at 913 (internal quotation marks omitted).

For the same reasons, plaintiffs' causes of action fail the first prong of the ripeness analysis because the issues they raise are not fit for judicial decision.  *See Roshan*, 615 F. Supp. at 905; *see also Dellums*, 752 F. Supp. at 1152 (denying preliminary injunction where plaintiffs had standing but their claims were not ripe).  Premature review and judgment of the FEC's actions in the way plaintiffs envision "denies the agency an opportunity to . . . apply its expertise" in implementing the Executive Order consistent with FECA.  *See Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs*, 873 F. Supp. 2d 363, 369 (D.D.C. 2012) (quoting *Wyo. Outdoor Council*, 165 F.3d at 50).  If the Court were to intervene now, before the ink has dried

on the Executive Order, it would risk "entangling [itself] in abstract disagreements over administrative policies" rather than "protect[ing] the agenc[y] from judicial interference until an administrative decision has been formalized and its effect felt in a concrete way" by plaintiffs.[6] *See Wyo. Outdoor Council*, 165 F.3d at 50 (quoting *Abbott Lab'ys*, 387 U.S. at 148-49).

Even if plaintiffs had standing and their claims were fit for judicial decision, plaintiffs' causes of action would still not be ripe under the second prong of the ripeness test: withholding a decision causes no hardship to plaintiffs. *Church*, 573 F. Supp. 3d at 135.  Plaintiffs do not allege any harm has yet befallen them—indeed, the Commission has not taken any action materially impacting plaintiffs since the Executive Order was issued—and the Commission is functioning normally.  (*See, e.g.*, Mot. at 19 (arguing that plaintiffs now "*expect*" and "*anticipate*" adverse and punitive rulings in administrative proceedings (emphasis added); Compl. ¶ 59 (stating that "DSCC's ability to defend itself against [a] pending complaint against it *will be* substantially impaired *if* the President is able to dictate that the Commission resolve" controversies against it (emphasis added)).)  Because any impact of the Executive Order "cannot be 'said to be felt immediately . . .  in conducting [plaintiffs'] day-to-day affairs,' and because 'no irremediably adverse consequences flow[] from requiring a later challenge,'" plaintiffs' claims are not ripe.  *See Missouri v. Biden*, 558 F. Supp. 3d 754, 769-70 (E.D. Mo. 2021), *aff'd*, 52 F.4th 362 (8th Cir. 2022) (quoting *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 810 (2003)).

---

[6]     *See* Order, *Nat'l Ass'n of Diversity Officers in Higher Ed. v. Trump*, No. 25-1189 (4th Cir. Mar. 14, 2025) (Rushing, J. concurring) (explaining that a case failing to challenge any particular agency action implementing certain executive orders "highlights serious questions about the ripeness of this lawsuit").

B.    **There is No Reason to Assume the Executive Order's General Statement of Policy Will Be Carried Out Unlawfully**

It is relatively common for Presidential Orders and Memoranda to include language that the directives therein should be implemented consistent with applicable law.  That cannot save the government when it takes concrete action pursuant to a presidential order that itself violates the law.  This is no such case, as plaintiffs effectively admit in their descriptions of merely hypothetical future harm.  *See supra*, pp. 15-20.  When the court is left with only an executive order, however, the proper question is whether the order "unambiguously commands action," or otherwise offers "clear and specific language" such that the order's "savings clause does not and cannot override its meaning."  *City & Cnty. of S.F.*, 897 F.3d at 1239-40.  On the other hand, where "significant contingenc[ies] plague[] this case[,]" such that the challenged executive order, standing alone, cannot be read to inherently facilitate an Article III injury, courts are duty-bound to await a live and justiciable case or controversy that demonstrates impending illegal action before intervening.  *Common Cause v. Trump*, 506 F. Supp. 3d 39, 47 (D.D.C. 2020) (holding action challenging presidential memorandum was not ripe); *see also Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002) (vacating decision finding executive order unlawful where order was "not selfexecuting").  A correct interpretation of the Executive Order reinforces plaintiffs' lack of standing here.

E.O. 14,215 Section 7 (Rules of Conduct Guiding Federal Employees' Interpretation of the Law) provides that the President and the Attorney General, subject to the supervision of the President, "shall provide authoritative interpretations of law for the executive branch[,]" and their opinions on "questions of law" are "controlling on all employees in the conduct of their official duties."  E.O. 14,215 § 7.  This language is self-evidently sweeping and broad, addressing all government employees in all agencies throughout the government in the conduct

of a non-exhaustive list of duties including issuing of regulations, guidance, and litigation, without limit to any particular subject matter.  However, it specifies no agency, office, or individual employee in particular, and it provides no specific instruction for how this policy of establishing a "unified and coherent execution of Federal law" is to be carried out.  *Id.*  It cannot be read to "unambiguously command[] action," or otherwise offer "clear and specific language" in its potential application to the FEC impacting plaintiffs' rights.  *City & Cnty. of S.F.*, 897 F.3d at 1239-40.

Moreover, E.O. 14,215 Section 8 (which plaintiffs fail to mention in their Complaint or Motion) is critical to evaluating the Executive Order's intent and legal effect with regards to the Commission.  First, it provides that "[n]othing in this order"—necessarily including Section 7— "shall be construed to impair or otherwise affect . . . the authority granted by law to an . . . agency, or head thereof."  *See id.* § 8(b)(i).  Second, Section 8 provides that "[t]his order"—necessarily including Section 7—"shall be implemented consistent with applicable law."  *See* E.O. 14,215 § 8(c).  The "law" applicable to the Commission is FECA—and it is FECA that grants authority to the FEC and its Commissioners over federal campaign finance law.  FECA vests the Commission with "exclusive jurisdiction" to administer, interpret, and civilly enforce the Act.  *See* 52 U.S.C. §§ 30106, 30107.  FECA authorizes the Commission to perform a variety of rulemaking and enforcement functions.  *See generally* 52 U.S.C. §§ 30106-09, 30111.  This was by careful design, as Congress crafted FECA to provide the Commission necessary latitude to regulate the "sensitive area that the system of administration and enforcement enacted into law," H.R.12406, H. Rep. No. 94-917, 94th Cong., 2d Sess. at 3 (1976), *reprinted in* FEC, Legislative History of Federal Election Campaign Act Amendments of

1976, at 804 (1977), at the heart of representative government:  political activity and campaigns

for federal office.

A proper reading of the E.O. considers Section 7 *in conjunction with* Section 8, which

limits the former's application to the FEC consistent with FECA.  Under such a reading, "there is

simply no contradiction between the Executive Order and the FECA."  (*See* Administration

Defs.' Mot. at 12.)  In contrast, plaintiffs' approach risks failing to give the Executive Order its

full effect and rendering a portion of it "superfluous."  *See, e.g.*, *United States v. Hassanzadeh*,

271 F.3d 574, 580 (4th Cir. 2001).  As with statutes, the court should favor one interpretation of

an executive order over another where one "interpretation . . . gives effect to every word," *Marx*

*v. General Revenue Corp.*, 568 U.S.371, 385 (2013), and not where a proffered statutory

construction gives meaning to one passage "only at the expense of rendering the

remainder . . .  superfluous."  *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 236 (2011).  As the

Commission explained in its Motion to Dismiss, absent an unambiguous command to action,

courts have determined that clauses requiring presidential directives to be carried out consistent

with applicable law are strong evidence that those directives will be carried out lawfully.  *See*

FEC Mot. at 29-31 (citing *Common Cause*, 506 F. Supp. 3d at 47, 53 n.8  (dismissing plaintiffs'

challenge to an executive order where "[a] significant contingency plagues this case," and it

"cannot ignore these repeated and unambiguous qualifiers imposing lawfulness and feasibility

constraints on implementing the memorandum"); *Bldg. & Constr. Trades Dep't, AFL-CIO*, 295

F.3d at 33 (explaining that "the Executive Order itself instructs the agency to follow the law.");

*Open Soc'y Just. Initiative*, 510 F. Supp. 3d at 215-16 (finding that it was speculative that the

government "intends to violate that provision in its enforcement of the Executive

Order . . . [because] Defendants acknowledge that [International Economic Emergency Powers

Act]'s language is "clear" and that the Executive Order 'shall be implemented consistent with applicable law.'" (internal citation omitted).)

## III.    PLAINTIFFS ARE NOT ENTITLED TO PRELIMINARY INJUNCTIVE RELIEF

Plaintiffs fail to clear the high bar to merit injunctive relief, and their Motion should be dismissed. *First*, plaintiffs are unlikely to succeed on the merits of their claim because they lack standing, and their claims are not ripe for consideration by this Court. *See supra* Part II. When evaluating a preliminary injunction, a court is obliged to examine the likelihood of success not only with respect to a plaintiff's underlying cause of action but also its standing to bring the action. And when a plaintiff's claims are not ripe, that too precludes a likelihood of success on the merits. Without a concrete injury or a judiciable claim, there are simply no merits to address (*see* Order), and plaintiffs' Motion must be denied.

*Second*, plaintiffs cannot demonstrate irreparable harm. Plaintiffs have suffered no injury, and certainly none that is irreparable or imminent. Even assuming plaintiffs have standing, hypothetical harms are themselves insufficient to meet plaintiffs' burden. There is simply no urgent problem for the Court to solve.

*Third*, plaintiffs' requested relief would harm the government and undercut the public interest. The Commission continues to carry out its statutorily mandated duties, and where the status quo remains unchanged, judicial intervention would improperly interfere with government functions.

### A.    Plaintiffs Are Unlikely to Succeed on the Merits

Plaintiffs are unlikely to success on the merits for two related but distinct reasons: (1) they lack standing, and (2) their claims are not ripe. Plaintiffs' lack of standing begins and ends the inquiry into the merits prong of the preliminary injunction analysis. *See Elec. Priv.*

*Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 375 (D.C. Cir. 2017) ("[W]e uphold the denial of a preliminary injunction because [plaintiff] has not shown a substantial likelihood of standing."). "In order to obtain a preliminary injunction, a party must show, among other things, a substantial likelihood of success on the merits." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d at 913 (opinion of Williams, J.) (internal quotation marks and citations omitted). "[T]he 'merits' on which plaintiff must show a likelihood of success encompass not only substantive theories but also establishment of jurisdiction." *Obama v. Klayman*, 800 F.3d 559, 565 (D.C. Cir. 2015) (opinion of Williams, J.)

As set forth in detail *supra* Part II, because plaintiffs' injuries are wholly speculative, there is no live controversy for this Court to adjudicate. *See Clapper*, 568 U.S. at 411-12. Because plaintiffs are unlikely to have standing, they are "*ipso facto* unlikely to succeed." *See Elec. Priv. Info. Ctr.*, 878 F.3d at 375 n.2; *DCCC v. FEC*, No. 24-CV-2935 (RDM), 2024 WL 4650907, at *6 (D.D.C. Nov. 1, 2024) ("[T]o obtain a preliminary injunction, the DCCC bears the burden of demonstrating that it is likely to succeed on the merits, including by demonstrating that it has standing to seek the particular relief at issue."). Their claims are also not ripe. *See AstraZeneca Pharms. LP v. Food & Drug Admin.*, 850 F. Supp. 2d 230, 241-42 (D.D.C. 2012) (denying a preliminary injunction because plaintiffs' claim was not ripe, which rendered plaintiff unlikely to succeed on the merits); *Church*, 573 F. Supp. 3d at 136 ("Because the Court finds that the Federal Employee Plaintiffs have failed to demonstrate a likelihood of success on the justiciability of their claims, it shall not at this time address the likelihood of success on the substantive theories underlying their request for injunctive relief."); *see supra* pp. 19-20. This conclusion also resolves the Court's additional query: because plaintiffs have failed to establish

a live case or controversy, there are no merits questions for this Court to resolve beyond

certification to the Court of Appeals.

Because plaintiffs fail to establish a likelihood of success in the absence of a justiciable

controversy, the Court must dismiss the Motion on these bases alone. *AstraZeneca Pharms. LP*,

850 F. Supp. 2d at 241-42; *Elec. Priv. Info. Ctr.*, 878 F.3d at 375 n.2 (quoting *Greater New*

*Orleans Fair Hous. Action Ctr. v. U.S. Dep't of Hous. & Urb. Dev.*, 639 F.3d 1078, 1088 (D.C.

Cir. 2011) (explaining that "[w]hen a plaintiff has not shown a likelihood to succee[d] on the

merits, 'there is no need to consider the remaining factors'" in evaluating a preliminary

injunction).

### B.    Plaintiffs Fail to Demonstrate Irreparable Harm

Plaintiffs' lack of a judicially cognizable injury dictates the outcome here.[7]  If they

cannot demonstrate harm, they cannot establish that any harm is irreparable. *See Sibley v.*

*Alexander*, 916 F. Supp. 2d 58, 63 (D.D.C. 2013) ("And since Sibley has failed to demonstrate

an injury in fact sufficient to establish standing, he has also failed to demonstrate irreparable

harm warranting a preliminary injunction."); *see also Elec. Priv. Info. Ctr.*, 878 F.3d at 375 n.2.

Plaintiffs' burden here goes beyond the irreducible minimum to invoke the Court's jurisdiction

because of the "extraordinary and drastic remedy" that is a preliminary injunction. *Davis v.*

*Billington*, 76 F. Supp. 3d 59, 64 (D.D.C. 2014) (internal quotations and citation omitted); *see*

*also Stand Up for Cal.! v. U.S. Dep't of the Interior*, 919 F. Supp. 2d 51, 56 n.7 (D.D.C. 2013)

("[T]o show irreparable harm [for purposes of a preliminary injunction], a plaintiff must do more

than merely allege . . . harm sufficient to establish standing.") (quotation marks omitted).  This

---

[7]    Plaintiffs' Declarations attached to and cited in plaintiffs' Motion contain no material information that is not otherwise contained in the text of plaintiffs Motion itself.  The FEC therefore does not address these declarations separately.

relationship between the two standards means that establishing injury-in-fact for purposes of standing is necessary, though not sufficient, for the "higher threshold" of irreparable harm. *See Nat'l Fair Hous. Alliance v. Carson*, 330 F. Supp. 3d 14, 63 (D.D.C. 2018). A plaintiff must further show that his or her injury is "beyond remediation" at a later date, thus requiring immediate relief:

> Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm.

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) (quotation marks omitted) (hereinafter "*CFGC*").

Plaintiffs contend that the uncertainty imposed by E.O. 14,215 has chilled their abilities to engage in interactive communications and solicit funds. (*See* Mot. at 20.) But these allegations do not articulate the requisite certainty for a showing a clear and present need for equitable relief. *See Singh v. Carter*, 185 F. Supp. 3d 11, 21-22 (D.D.C. 2016) ("Indeed, by the plaintiff's own account, the harm is 'uncertain' and he is exposed only to the 'risk' of, or 'potential' harm."); *see also Church*, 573 F. Supp. 3d at 141 ("This temporal uncertainty, combined with the possibility that any given exemption request may be granted outright prevents the Federal Employee Plaintiffs from establishing 'irreparable' constitutional or statutory harm.").

Plaintiffs further assert E.O. 14,215 impairs their ability to conduct election-related activities for the 2026 midterms and 2028 presidential election. (Mot. at 21.) Plaintiffs rely on *League of Women Voters of Missouri v. Ashcroft*, a case where plaintiffs sought a preliminary injunction against a violation of the National Voter Registration Act in the months leading up to the 2018 election. 336 F. Supp. 3d 998, 1002 (W.D. Mo. 2018). Here, in sharp contrast, an

election has just concluded. Even assuming as true that "the first half of 2025 is a critical time for Plaintiffs to implement strategies for the 2026 midterm elections and the 2028 presidential election[,]" Mot. at 21, this assertion lacks context: the period immediately following a presidential election is presumably a less critical period than the time immediately preceding one. *Cf. Ashcroft*, 336 F. Supp. 3d at 1001 (lawsuit filed six months before Election Day); *Carey v. FEC*, 791 F. Supp. 2d 121, 134 (D.D.C. 2011) (averring in June 2011 that the political season for the 2012 presidential election is already underway). And given plaintiffs' mere hypothetical articulation of potential future harm, were it to come to pass, there is nothing to suggest that the Court could not remediate their harm at the conclusion of this litigation, or sooner if plaintiffs can in fact articulate such a need. *CFGC*, 454 F.3d at 297; *see also* 52 U.S.C. § 30109(a)(4)(C)(iii), (a)(8)(A) (FECA's judicial review provisions); 5 U.S.C. § 704 (Administrative Procedure Act judicial review provision).

For the foregoing reasons, plaintiffs do not make a showing of irreparable harm, and the Motion should be denied. *See CFGC*, 454 F.3d at 297; *see also Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 105 F. Supp. 3d 108, 112 (D.D.C. 2015) ("[T]he movant must always show irreparable harm or injury, and if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors.").

### C. The Relief That Plaintiffs Request Would Harm the Government and Undercut the Public Interest

The balance of harms and the public interest also weigh in favor of denying plaintiffs' request for extraordinary injunctive relief when they have alleged hypothetical harm. The third and fourth preliminary injunction factors, harm to the opposing party and weighing the public interest, respectively, "merge when the Government is the opposing party[.]" *See Nken v. Holder*, 556 U.S. 418, 435 (2009). These factors require courts to "balance the competing claims

28

of injury and . . . consider the effect on each party with the granting or withholding of the requested relief," *Strait Shipbrokers Pte. Ltd. v. Blinken*, 560 F. Supp. 3d 81, 99 (D.D.C. 2021) (citing *Winter*, 555 U.S. at 24; quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987)), in addition to paying "particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

Because plaintiffs claim no legally cognizable injury in fact, their interests will be unharmed if injunctive relief is withheld.  Plaintiffs are no doubt correct that "[t]here is generally no public interest in the perpetuation of unlawful agency action[.]"  *See League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.D.C. 2016).  But as all defendants before this Court have attested, there has been no action of the kind plaintiffs fear, much less unlawful action.  (*See generally* FEC Mot.; Administration Defs.' Mot.)  Where there is no more than mere conjecture as to the possibility of future illegal action, maintaining the "relative positions of the parties" is not compelling here and should at worst factor neutrally in the Court's analysis.  *See Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

## IV.    THE COURT SHOULD NOT CERTIFY PLAINTIFFS' PROPOSED CONSTITUTIONAL QUESTION TO THE COURT OF APPEALS

52 U.S.C. § 30110 is a special judicial review procedure providing for expedited review to construe the constitutionality of FECA.  It provides that "[t]he [Federal Election] Commission, the national committee of any political party, or any individual eligible to vote in any election for the office of President may institute such actions in the appropriate district court of the United States, including actions for declaratory judgment, as may be appropriate to construe the constitutionality of any provision of this Act," and that "[t]he district court immediately shall certify all questions of constitutionality of this Act to the United States court of appeals for the

circuit involved, which shall hear the matter sitting en banc." 52 U.S.C. § 30110. However, precedent makes clear that careful review of proposed constitutional questions by the district court is critical to its operation. Although the provision provides an avenue for expeditious resolution of constitutional questions by certifying them to the en banc court of appeals, this Court retains a critical gatekeeping function. *See Bread Pol. Action Comm. v. FEC*, 455 U.S. 577, 580 (1982) (Section 30110 creates "a class of cases that command the immediate attention of . . . the courts of appeals sitting *en banc*, displacing existing caseloads and calling court of appeals judges away from their normal duties for expedited *en banc* sittings . . . ."); *see also California Med. Ass'n v. FEC*, 641 F.2d 619, 632 (9th Cir. 1980) ("if mandatory *en banc* hearings were multiplied, the effect on the calendars of this court as to such matters and as to all other business might be severe and disruptive."). Since *California Medical Association*, district courts considering claims under Section 30110 have consistently adhered to certification prerequisites imposed by the Supreme Court. These checkpoints foreclose certification under the present circumstances.

This Court need not even consider plaintiffs' constitutional question, however, because they do not properly invoke FECA's judicial review provision providing for certification. Because plaintiffs lack standing, *see supra* Part II, the Court is unable to consider Section 30110 certification. Moreover, no party contests that FECA is constitutional, rendering the very question plaintiffs seek to certify no more than a request for an advisory opinion. Accordingly, in addition to certification being premature, plaintiffs' apparent question to be certified suffers from more fundamental defects that require dismissal of this matter entirely.

### A.    Plaintiffs' Claims Are Outside the Scope of 52 U.S.C. § 30110

The Court should deny plaintiffs' request to certify for the simple reason that plaintiffs' claims are outside the scope of the narrow provision of FECA providing for such certification

and expedited review.  Section 30110 provides certain entities, among them the FEC and the national committee of any political party, to "institute such actions in the appropriate district court of the United States, including actions for declaratory judgment, as may be appropriate to construe the constitutionality of *this Act*."  52 U.S.C. § 30110 (emphasis added).  Count I challenges E.O. 14,215, but it does not raise a challenge to FECA.  (*See* Compl. ¶¶ 61-73 ("As a result of Executive Order 14215, plaintiffs have a concrete, ripe dispute with Defendants . . . ."); *see also* Mot. at 16 ("Plaintiffs . . . challenge application of Section 7 of the Executive Order to the FEC under . . . § 30110.")  The legislative history of Section 30110 — at the time, 2 U.S.C. § 437h — further suggests a limited scope for the statute's application.  *See Mott v. FEC*, 494 F. Supp. 131, 134-35 (D.D.C. 1980).  Senator Buckley, who introduced the FECA amendment that became Section 30110 explained the purpose of the amendment was to address "the constitutionality of *this legislation*."  *Id.* at 134 (citing 120 Cong. Rec. 10562) (emphasis added). Congress passed this amendment without debate or exception.  *Id.*

The plain language and legislative history therefore demonstrate that Section 30110 challenges are limited to interpreting the text of *FECA* in light of the *Constitution*.  It is not, as plaintiffs seek here, a vehicle for interpreting an *Executive Order* in light of *FECA*.  Plaintiffs' Count I extensively describes E.O. 14,215, Compl. ¶¶ 66, 68, 70, and the various provisions of FECA it purportedly violates.  (*Id.* ¶¶ 67, 71 (citing 52 U.S.C. §§ 30106(b), (c), (f)(4), 30107(a)(6), (7), 30108, 30109).)  However, plaintiffs' attempt to link this issue to a question of constitutional interpretation is limited to "the Executive Order's implicit assertion that any contrary statutory provisions unconstitutionally abridge the President's executive authority under Article II."  (*Id.* ¶ 69.)  This does not establish a live controversy over the constitutionality of FECA, nor does plaintiffs' bald assertion that they have a "ripe dispute with Defendants

regarding the constitutionality of FECA's provisions vesting the Commissioners with the authority to exercise their independent legal judgment when interpreting the Act." (*Id.* ¶ 65.)  On the contrary, the FEC does not contest the constitutionality of its implementing legislation, nor do the President or Attorney General.  (*See* Administration Defs.' Mot. at 2 ("*None* of the parties before the Court has asserted that FECA is unconstitutional, yet plaintiffs ask the Court to opine on that statute's constitutionality.").)  Indeed, this lack of adversity puts plaintiffs in the position of requesting an impermissible advisory opinion.  *See Pool v. City of Houston*, 87 F.4th 733, 733-34 (5th Cir. 2023); *see also Moore v. Charlotte-Mecklenberg Bd. of Educ.*, 402 U.S. 47, 47-48 (1971)); *Beberman v. Blinken*, 61 F.4th 978, 981 (D.C. Cir. 2023) ("That [cases and controversies] requirement ensures that courts stick to their constitutionally limited role of adjudicating actual and concrete disputes and do not issue free-roving advisory opinions.") (quotation marks omitted).

Whatever the merits of plaintiffs' assertion that E.O. 14,215 violates FECA, which, as established *supra* pp. 21-24, it does not, this is not a dispute over the constitutionality of FECA and therefore not the proper subject of a Section 30110 action.  This Circuit has previously dismissed claims when they fell outside of Section 30110's narrow ambit.  In *Holmes v. FEC* plaintiffs challenged the timing of contributions and candidates' ability to transfer campaign funds, but the court rejected that challenge, noting that "the Act is silent on both subjects."  823 F.3d 69, 75 (D.C. Cir. 2016); *see id.* at 76 (explaining that the dividing line between inappropriate and appropriate Section 30110 challenge is whether the challenge is "a consequence of the Commission's regulations" rather than FECA itself); *see also NRSC v. FEC*, 712 F. Supp. 3d 1017, 1030-32 (S.D. Ohio 2024) (collecting cases and distinguishing between challenges that are "purely regulatory" and those that raise constitutional challenges to the Act).

Here, plaintiffs' Count I is outside the scope of this narrow judicial review provision and must be dismissed.

**B.      Certification Would Be Premature**

**1.      Certification of Constitutional Questions Per Section 30110 Is Not Automatic and Reserves an Important Role for the District Court**

Importantly, Supreme Court precedent makes clear that the careful review of proposed constitutional questions and creation of an adequate factual record by the district court is critical to Section 30110's operation.  Because Section 30110 is subject to these restrictions, it should be construed narrowly, in part because it creates "a class of cases that command the immediate attention of . . . the courts of appeals sitting en banc, displacing existing caseloads and calling court of appeals judges away from their normal duties."  *Bread Pol. Action Comm.*, 455 U.S. at 580.  Courts have made clear that a district court presented with a request to certify under Section 30110 must conduct a multifaceted threshold inquiry prior to any certification.  At the outset, of course, a "party seeking to invoke [Section 30110] must have standing to raise the constitutional claim."  *California Med. Ass'n v. FEC*, 453 U.S. 182, 192 n.14 (1981).  In addition, even if a plaintiff falls within one of the classes of parties specified in the statute and the legal challenge falls within the scope of the provision, the district court should perform three functions.  First, the court must determine whether the constitutional challenges are "frivolous," "insubstantial," or "involve purely hypothetical applications of the statute."  *Id.* (regarding questions "that involve purely hypothetical applications of the statute" (citing *Clark v. Valeo*, 559 F.2d 642 (D.C. Cir. 1977); *Martin Tractor Co. v. FEC*, 627 F.2d 375, 38486, 38890 (D.C. Cir. 1980)); *see also NRSC*, 712 F. Supp. 3d at 1029 (explaining the relationship between the court evaluating standing and determining whether the question is hypothetical).  Second, it must develop a record as necessary to support appellate review for a given question by making

findings of fact. *California Med.*, 453 U.S. at 192 n.14. Only then, after performing these two functions initially, should the district court certify the record and all non-frivolous constitutional questions to the en banc court of appeals. *Id.*; *Mariani v. United States,* 212 F.3d 761, 769 (3d Cir. 2000) (en banc); *Buckley v. Valeo*, 519 F.2d 817, 818 (D.C. Cir. 1975) (en banc) (per curiam), *aff'd in part and rev'd in part on other grounds*, 424 U.S. 1 (1976); *see also* 52 U.S.C. § 30110.

Certification under Section 30110 is neither "automati[c]," *Goland v. United States*, 903 F.2d 1247, 1257 (9th Cir. 1990), nor inevitable, as the Court may dismiss the claims or grant summary judgment to the Commission. *See, e.g.*, *In re Cao*, 619 F.3d 410, 415, 417-20 (5th Cir. 2010) (en banc) (affirming district court's dismissal of certain proposed questions); *Judd v. FEC*, 304 F. App'x 874, 875 (D.C. Cir. 2008) (per curiam) (affirming district court's dismissal because "the constitutional challenge to [FECA] is frivolous"); *Nat'l Comm. of the Reform Party of the U.S. v. Democratic Nat'l Comm.*, 168 F.3d 360, 367 (9th Cir. 1999) (affirming district court's decision denying certification of claims that FECA "unconstitutionally preempts common law remedies . . . because plaintiffs had no common law remedies for FECA to preempt"); *Whitmore v. FEC*, 68 F.3d 1212, 1215 (9th Cir. 1996) (affirming denial of certification for frivolousness where "plaintiffs sought an injunction commanding competing congressional candidates not to accept out-of-state contributions"); *Gifford v. Congress*, 452 F. Supp. 802, 810 (E.D. Cal. 1978) (refusing to certify constitutional questions and dismissing FECA challenge on the "ground that it is frivolous" (cited with approval in *California Med.*, 453 U.S. at 192 n.14), *approved*, *Gifford v. Tiernan*, 670 F.2d 882 (9th Cir. 1982)). Like a single judge who is asked to convene a three-judge court to hear a constitutional challenge, a district court may decline to certify a question

under Section 30110.  *See Holmes*, 823 F.3d at 71; *Goland*, 903 F.2d at 1257; *Mott,* 494 F. Supp. at 134.

This Court's role in Section 30110 certification is far from ministerial.  A district court may certify *only if* it concludes that a live and nonfrivolous constitutional issue is raised.  *See*, *e.g.*, *Cao*, 619 F.3d at 414, 433 & n.32; *Khachaturian v. FEC*, 980 F.2d 330, 331 (5th Cir. 1992) (en banc).  "It is not for this Court to certify to the en banc Court of Appeals an as-applied question laden with hypotheticals about the constitutionality of . . . FECA."  *Libertarian Nat. Comm., Inc. v. FEC*, 930 F. Supp. 2d 154, 167 (D.D.C. 2013) ("*LNC*"), *aff'd*, No. 13-5094, 2014 WL 590973 (D.C. Cir. Feb. 7, 2014).  Indeed, failure to complete the functions mandated by Section 30110 may result in a remand to the district court for the requisite threshold inquiry.  *See, e.g.*, *Holmes v. FEC*, No. 14-5281, slip op. (D.C. Cir. Jan. 30, 2015), *Khachaturian*, 980 F.2d at 331; *Buckley*, 519 F.2d at 818.

## 2.    Certifying Now Will Prejudice Defendants

Here, plaintiffs have not clearly articulated the constitutional question they seek to certify to the Court of Appeals pursuant to Section 30110, and defendants have not had a fair opportunity to respond.  Certification at this stage would break sharply from the established practice of the district courts in prior Section 30110 proceedings and would deny defendants the opportunity to brief important issues for this Court without any corresponding prejudice to plaintiffs if certification were denied.  Indeed, such a rushed certification process may be grounds for reversal.

In general, plaintiffs bringing actions pursuant to Section 30110 have filed motions for certification of a precise constitutional question to the Court of Appeals, and defendants (ordinarily limited to the FEC and individual Commissioners) have had the opportunity to

respond.[8]  This Court should likewise undertake "careful review of the parties' positions, the

facts, and the current state of the law in this area . . . to conclud[e]" whether the "question

presented . . .  merits review."  *LNC*, 930 F. Supp. 2d at 171.  Although Section 30110 only

mentions "questions of constitutionality" and is silent as to moving for certification, the

foregoing makes clear that the provision is not self-executing.

Instantaneous certification under Section 30110 is particularly inappropriate where the

Court must resolve a pending motion for preliminary injunction.  While the procedural posture of

this case may be rare, two instances where the court was confronted with a preliminary

injunction motion in a Section 30110 case are illustrative.  In both instances, the court resolved

the request for injunctive relief conclusively before addressing certification.  In *SpeechNow.org

v. FEC*,, plaintiffs initially filed a motion for a preliminary injunction with their complaint

alleging a constitutional question under what is now set forth in 52 U.S.C. § 30110, and the

district court decided the preliminary injunction motion prior to briefing on the certified

---

[8]    Prior cases are illustrative.  In *Holmes*, the district court quickly, out of an abundance of
caution, certified two questions to the D.C. Circuit, which swiftly remanded the case for the
district court to consider a motion for certification filed by plaintiffs and the FEC's opposition in
light of the factors articulated in *California Medical Ass'n*.  *See Holmes v. FEC*, 99 F. Supp. 3d
123, 125 (D.D.C. 2015), *aff'd in part, rev'd in part and remanded sub nom. Holmes*, 823 F.3d 69;
*Holmes v. FEC*, 823 F.3d at 70; *Holmes v. FEC*, No. 14-1243 (RMC), 2014 WL 6190937, at *1
(D.D.C. Nov. 17, 2014).  The district court thereafter declined to certify and, only then, did the
Circuit review that determination.  *Holmes*, 823 F.3d at 70.  *Wagner* similarly evinces that the
onus falls on plaintiff to move for certification and whether its proposed question merits
certification.  There, plaintiffs moved for certification in the district court, the FEC opposed
arguing certification was premature, and plaintiffs subsequently amended their complaint "for
the purpose of avoiding the certification requirement" of Section 30110.  *Wagner v. FEC*, 717
F.3d 1007, 1009 (D.C. Cir. 2013).  Finally, the district court in *Libertarian National Committee*
considered plaintiff LNC's motion, the FEC's opposition, and undertook a detailed analysis of
the *California Medical Ass'n* factors to decline to certify plaintiffs' proposed question.  *See LNC*,
930 F. Supp. 2d at 156, 161-71 (D.D.C. 2013), *aff'd*, No. 13-5094, 2014 WL 590973 (D.C. Cir.
Feb. 7, 2014) (per curiam) (holding that the "district court properly declined to certify the broad
proposed question of law").

question.  *See SpeechNow.org v. FEC*, No. 08-248, 2009 WL 3101036, at *1 (D.D.C. Sept. 28,

2009).  The plaintiffs ultimately appealed the denial of the preliminary injunction, which was

consolidated by the D.C. Circuit en banc with the certified question.  *See SpeechNow.org v.

FEC*, 599 F.3d 686, 690 (D.C. Cir. 2010) (en banc).  *Holmes v. FEC* presented a similar posture,

where the court first denied the preliminary injunction motion and later denied certification and

granted the FEC's motion for summary judgment.  No. 14-1243 (RMC), 2014 WL 6190937

(Nov. 17, 2014)2014 WL 6190937, at *1.

  Although the Commission does not believe additional briefing on the certification

question is necessary to deny plaintiffs' Motion given the defects articulated above, assuming

there is standing and a non-hypothetical application of the statute being challenged, the inquiry

does not stop there.  District courts regularly consider in detail whether the constitutional

question plaintiffs propose is "frivolous" or "insubstantial" before certifying.  *California Med.

Ass'n*, 453 U.S. at 192 n.14.  Indeed, many courts faced with FECA challenges under Section

30110 have declined to certify considering the FEC's arguments on this score.  *See, e.g., Cao*,

619 F.3d at 415, 417-20 (affirming district court's dismissal of certain proposed questions);

*Judd*, 304 F. App'x at 875 (per curiam) (affirming district court's dismissal because "the

constitutional challenge to [FECA] is frivolous"); *Nat'l Comm. of the Reform Party of the U.S.*,

168 F.3d at 367  (affirming district court's decision denying certification of claims that FECA

"unconstitutionally preempts common law remedies . . . because plaintiffs had no common law

remedies for FECA to preempt"); *Whitmore*, 68 F.3d at 1215 (affirming denial of certification

for frivolousness where "plaintiffs sought an injunction commanding competing congressional

candidates not to accept out-of-state contributions"); *Gifford*, 452 F. Supp. at 810 (refusing to

certify constitutional questions and dismissing FECA challenge on the "ground that it is

frivolous" (cited with approval in *California Med. Ass'n*, 453 U.S. at 192 n.14), *approved*, *Gifford*, 670 F.2d).

While a district court makes only a threshold determination that a certified legal question may proceed, it must make findings to arm the court of appeals with facts necessary to decide the merits of the precise certified legal question.  *See Buckley*, 519 F.2d at 818 (remanding the case with instructions to the district court to "[t]ake whatever may be necessary in the form of evidence over and above submissions that may suitably be handled through judicial notice."); *FEC v. Colo. Republican Campaign Comm.*, 533 U.S. 431, 457-65 (2001) (sustaining FECA provisions based on district court record comprised of legislative facts); *Wagner v. FEC*, 793 F.3d 1, 17-18 (D.C. Cir. 2015) (en banc) (relying on record including legislative facts that "[t]he FEC has assembled" to determine constitutionality of provision).  This Court should not certify any proposed constitutional question without providing an opportunity for the development of a factual record commensurate with any certified question.

District courts should also consider the sufficiency of the question presented and determine the proper phrasing and scope of a question to be certified under Section 30110. Courts facing FECA challenges under Section 30110 have enlisted the parties to help articulate the precise question in dispute.  *See, e.g.*, *LNC*, 930 F. Supp. 2d at 168-69 ("longstanding precedent supports this Court's discretion in crafting and/or amending any questions certified to the Court of Appeals"); *Khachaturian*, 980 F.2d at 332; *Cao v. FEC*, 688 F. Supp.2d 498 (E.D. La. 2010), 688 F.Supp.2d at 542; *NRSC*, 712 F. Supp. 3d at 1029-33 (the district court benefits from the "very valid concerns," the FEC raised with respect to narrowing the proposed question).

But plaintiffs' purported question at present is vague, broad, and far from sufficiently refined to frame the dispute for the Court of Appeals.  Only the JMC Statement, not plaintiffs'

complaint or instant Motion, attempts to pose for the en banc court "whether the Federal Election Commission's independent statutory authority to administer, interpret, and civilly enforce" FECA "is consistent with the President's executive power under Article II of the U.S. Constitution[.]" (*See* JMC Statement at 1.)  The question broadly references two extensive sections of FECA, 52 U.S.C. §§ 30106-07, and does not identify any particular part of Article II that allegedly conflicts with these sections. (*Id.*)  This is precisely the kind of ill-defined question for which there is "ample, uncontested precedent" establishing a district court's duty to engage with "identify[ing] the constitutional issues and refram[ing] the question" for certification, if possible.  *LNC*, 930 F. Supp. 2d at 169 (citing *Buckley v. Valeo,* 387 F. Supp. 135

(D.D.C. 1975)); *Bread Pol. Action Comm. v. FEC,* 635 F.2d 621, 625 n. 4 (7th Cir.1980) (en banc); *Khachaturian*, 980 F.2d at 332; *Cao*, 688 F.Supp.2d at 542).  Indeed, this imprecise framing is likely because plaintiffs allege mere hypothetical harm, not a live dispute that necessarily helps refine the parties' points of disagreement.  *See supra*, Part II.  This Court should follow prior courts' lead in continuing to find that Section 30110 "should be construed narrowly."  *LNC*, 930 F. Supp. 2d at 162 (citing *Bread Pol. Action Comm.*, 455 U.S. at 580).

## CONCLUSION

Plaintiffs' lack of standing precludes any injunctive relief and thus the Court must dismiss plaintiffs' Motion.  Further, plaintiffs' preliminary-injunction arguments are unavailing.  First, because they lack standing and their claims are not ripe, they are unlikely to succeed on the merits.  As such, the Court is left with no merits to resolve.  Second, they fail to show irreparable harm because their allegations of injury are abstract, hypothetical, are not imminent, and they are capable of remediation absent injunctive relief.  Third, the balance of equities and the public interest disfavor granting injunctive relief where, as here, the alleged harms are unmaterialized.

Additionally, plaintiffs' claims are inappropriate for certification under 52 U.S.C. § 30110. For

the foregoing reasons, the Court should deny plaintiffs' motion for a preliminary injunction.


                                              Respectfully submitted,

Lisa J. Stevenson (D.C. Bar No. 457628)       /s/ Christopher H. Bell
Acting General Counsel                        Christopher H. Bell (D.C. Bar No. 1643526)
lstevenson@fec.gov                            Acting Assistant General Counsel
                                              chbell@fec.gov
James D. McGinley (D.C. Bar No. 1017536)
Associate General Counsel                     Sophia H. Golvach (D.C. Bar No. 1656365)
jmcginley@fec.gov                             Blake L. Weiman (D.C. Bar No. 1725165)
                                              Michael D. Contino (D.C. Bar No. 1782269)
                                              Attorneys
March 25, 2025                                 sgolvach@fec.gov
                                              bweiman@fec.gov
                                              mcontino@fec.gov

                                              FEDERAL ELECTION COMMISSION
                                              1050 First Street, NE
                                              Washington, DC 20463
                                              (202) 694-1656