IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEMOCRATIC NATIONAL COMMITTEE, *et al.*, | |
| Plaintiffs, | Civil Action No. 1:25-cv-00587-AHA |
| *v.* | |
| DONALD J. TRUMP, *et al.*, | (EXPEDITED HEARING REQUESTED) |
| Defendants. | |

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

INTRODUCTION ................................................................................................. 1

ARGUMENT ....................................................................................................... 3

I.      The Court has subject-matter jurisdiction. .......................................................... 3

        A.      Plaintiffs have Article III standing. ....................................................... 3

        B.      Plaintiffs' claims are ripe. ................................................................... 10

II.     Plaintiffs should be granted preliminary injunctive relief. ............................... 12

        A.      Plaintiffs are likely to prevail on the merits of their claims. .................................. 13

        B.      Plaintiffs will suffer irreparable harm in the absence of an injunction. ................ 17

        C.      The remaining equitable factors also favor granting preliminary relief. .............. 19

        D.      The Court should not require a bond. ................................................. 21

        E.      The Court should enter a final injunction under Rule 65(a)(2). .......................... 21

III.    Defendants' waiver of any constitutional argument obviates the need for certification to the Court of Appeals under 52 U.S.C. § 30110. ......................................... 22

        CONCLUSION ........................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Axon Enterp., Inc. v. FTC,*
  598 U.S. 175 (2023) ................................................................................................. 11

*\*Backpage.com, LLC v. Dart,*
  807 F.3d 229 (7th Cir. 2015) .................................................................................. 7

*Buckley v. Valeo,*
  424 U.S. 1 (1976) ..................................................................................................... 16

*Buckley v. Valeo,*
  519 F.2d 817 (D.C. Cir. 1975) ............................................................................... 25

*Cal. Med. Ass'n v. FEC,*
  453 U.S. 182 (1981) ................................................................................................. 24

*Carey v. FEC,*
  791 F. Supp. 2d 121 (D.D.C. 2011) ....................................................................... 19

*Chamber of Com. of U.S. v. Reich,*
  57 F.3d 1099 (D.C. Cir. 1995) ............................................................................... 11

*Christian Legal Soc'y v. Walker,*
  453 F.3d 853 (7th Cir. 2006) .................................................................................. 20

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ............................................................................................. 8, 9

*Ctr. for Democracy & Tech. v. Trump,*
  507 F. Supp. 3d 213 (D.D.C. 2020) ....................................................................... 10

*eBay Inc. v. MercExchange, L.L.C.,*
  547 U.S. 388 (2006) ................................................................................................. 22

*Elrod v. Burns,*
  427 U.S. 347 (1976) ................................................................................................. 17

*Emineth v. Jaeger,*
  901 F. Supp. 2d 1138 (D.N.D. 2012) ..................................................................... 18

*\*FDA v. All. for Hippocratic Med.,*
  602 U.S. 367 (2024) ................................................................................................. 5

*FEC v. Cent. L.I. Tax Reform Immediately Comm.*,
  616 F.2d 45 (2d Cir. 1980) ................................................................. 24

*FEC v. DSCC*,
  454 U.S. 27 (1981) .................................................................. 1, 3, 16

*FEC v. NRA Pol. Victory Fund*,
  6 F.3d 821 (D.C. Cir. 1993) ................................................................. 16

*FEC v. NRA Pol. Victory Fund*,
  513 U.S. 88 (1994) ................................................................. 16

*FEC v. Cruz*,
  596 U.S. 289 (2022) ................................................................. 9

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992) ................................................................. 20

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
  561 U.S. 477 (2010) ................................................................. 11

*In re Ga. S.B. 202*,
  No. 1:21-CV-01259-JPB, 2023 WL 5334582 (N.D. Ga. Aug. 18, 2023) ......................... 17

*HIAS, Inc. v. Trump*,
  985 F.3d 309 (4th Cir. 2021) ................................................................. 2, 15

*Holmes v. FEC*,
  823 F.3d 69 (D.C. Cir. 2016) ................................................................. 24

*Klayman v. Jud. Watch, Inc.*,
  802 F. Supp. 2d 137 (D.D.C. 2011) ......................................................... 14, 23

*League of Women Voters of N.C. v. North Carolina*,
  769 F.3d 224 (4th Cir. 2014) ................................................................. 18

*League of Women Voters of U.S. v. Newby*,
  838 F.3d 1 (D.C. Cir. 2016) ......................................................... 12, 19, 20

*Libertarian Nat'l Comm. v. FEC*,
  228 F. Supp. 3d 19 (D.D.C. 2017) ................................................................. 7

*Libertarian Nat'l Comm., Inc. v. FEC*,
  930 F. Supp. 2d 154 (D.D.C. 2013) ................................................................. 25

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................. 5

*McCray v. Biden*,
    574 F. Supp. 3d 1 (D.D.C. 2021) ..................................................................... 20

*Missouri v. Biden*,
    558 F. Supp. 3d 754 (E.D. Mo. 2021)............................................................. 11

*Morris v. Dist. of Columbia*,
    38 F. Supp. 3d 57 (D.D.C. 2014) ..................................................................... 21

*\*Nat'l Rifle Ass'n of Am. v. Vullo*,
    602 U.S. 175 (2024) ............................................................................................. 8

*\*NRSC v. FEC*,
    712 F. Supp. 3d 1017 (S.D. Ohio 2024) .............................................. 7, 24, 25

*Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*,
    461 U.S. 190 (1983) ........................................................................................... 11

*Pub. Citizen v. Trump*,
    435 F. Supp. 3d 144 (D.D.C. 2019) ............................................................... 10

*\*Pursuing Am.'s Greatness v. FEC*,
    831 F.3d 500 (D.C. Cir. 2016) ........................................................................ 17

*R.I.L.-R v. Johnson*,
    80 F. Supp. 3d 164 (D.D.C. 2015) ................................................................. 19

*Save Jobs USA v. Dep't of Homeland Sec.*,
    942 F.3d 504 (D.C. Cir. 2019) ........................................................................ 12

*Shays v. FEC*,
    414 F.3d 76 (D.C. Cir. 2005) .......................................................................... 12

*Smith v. People of the State of Cal.*,
    361 U.S. 147 (1959) ............................................................................................. 8

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ............................................................................................. 8

*Swan v. Clinton*,
    100 F.3d 973 (D.C. Cir. 1996) ........................................................................ 20

*U.S. Air Tour Ass'n v. FAA,*
    298 F.3d 997 (D.C. Cir. 2002) ............................................................... 10

*United Presbyterian Church in the U.S.A. v. Reagan,*
    738 F.2d 1375 (D.C. Cir. 1984) ................................................................ 9

*United States v. Carolene Prods. Co.,*
    304 U.S. 144 (1938) ............................................................................... 12

*\*Wagner v. FEC,*
    717 F.3d 1007 (D.C. Cir. 2013) ................................................................ 7

*\*Wannall v. Honeywell, Inc.,*
    775 F.3d 425 (D.C. Cir. 2014) ................................................... 2, 13, 23

**Constitutional Provisions & Statutes**

U.S. Const. art. II, § 3 ............................................................................... 16

8 U.S.C. § 1226a ................................................................................. 14, 15

52 U.S.C. § 30106 ............................................................................. *passim*

52 U.S.C. § 30107 ...................................................................................... 15

52 U.S.C. § 30109 ...................................................................................... 15

52 U.S.C. § 30110 ............................................................................. *passim*

52 U.S.C. § 30116 ...................................................................................... 25

**Federal Rules**

Fed. R. Civ. P. 65 ......................................................................... 3, 13, 21, 22

**Other Authorities**

Executive Order No. 14,215, *Ensuring Accountability for All Agencies,*
    90 Fed. Reg. 10447 (Feb. 18, 2025), ................................................ *passim*

Executive Order No. 14,230, *Addressing Risks from Perkins Coie LLP,*
    90 Fed. Reg. 11781 (Mar. 11, 2025) ........................................................ 6

Executive Order No. 14,246, *Addressing Risks from Jenner & Block,*
    90 Fed. Reg. 13997 (Mar. 25, 2025) ........................................................ 6

Executive Order, *Addressing Risks from WilmerHale* (Mar. 27, 2025),
     http://whitehouse.gov/presidential-actions/2025/03/addressing-risks-from-wilmerhale/
     (publication forthcoming) ...................................................................................................... 6

Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2954 (3d ed.) .................................................... 21

## INTRODUCTION

Section 7 of Executive Order 14,215 commands the Federal Election Commission, and every other federal agency, to treat "the President and the Attorney General's opinions on questions of law" as "controlling on all employees in the conduct of their official duties," and forbids them from "advanc[ing] an interpretation of the law . . . that contravenes the President and the Attorney General's opinion," unless authorized to do so. Despite opposing relief in this case, *the Commission agrees with Plaintiffs that Section 7 cannot lawfully be applied to the FEC*. FEC Defs.' Opp. to Pls.' Prelim. Inj. Mot. 22–24, ECF No. 31 ("FEC Opp."). The Commission argues that it is exempt from Section 7's broad language, but it is playing the lute while the city burns. The President and Attorney General's separately filed brief *confirms* that Section 7 of the Executive Order applies to the FEC and defends that application, arguing that there "is no provision in the FECA which prohibits the President or Attorney General from promulgating authoritative legal interpretations" and commanding the Commission to follow them. Mem. of Defs. Trump and Bondi in Opp. to Pls.' Prelim. Inj. Mot. 19–20, ECF No. 30 ("Trump Opp.").

The President and Attorney General are wrong about FECA: application of Section 7 to the FEC is contrary to law and must be enjoined. As Plaintiffs have explained, the President has no authority to impose binding legal interpretations on the FEC. Congress crafted the FEC as an independent, "inherently bipartisan" agency to avoid partisan interference with work that is "charged with the dynamics of party politics, often under the pressure of an impending election." *FEC v. DSCC*, 454 U.S. 27, 37 (1981). The Commission has its own lawyers and, unlike most agencies, litigates on its own behalf. 52 U.S.C. § 30106(f). "All decisions of the Commission" under FECA "shall be made by a majority vote of the members of the Commission," and the Commissioners "*may not delegate to any person . . . any decisionmaking authority* or duty vested in the Commission." 52 U.S.C. § 30106(c) (emphasis added). The President's (now admitted)

1

effort to commandeer the Commission's legal decision-making violates these provisions and is "incompatible with the overall statutory scheme governing" the Commission. *HIAS, Inc. v. Trump*, 985 F.3d 309, 325 (4th Cir. 2021) (quoting *Kouambo v. Barr*, 943 F.3d 205, 213 (4th Cir. 2019)); *see also* Amicus Br. of Ellen Weintraub 4–11, ECF No. 35-1 ("Weintraub Br.").

Nearly as notable as the arguments that President Trump and the Attorney General make in their brief are the arguments that they do *not* make. Plaintiffs expected that Defendants would attempt to defend the Executive Order's application to the FEC by arguing that the provisions of FECA that make the FEC independent unconstitutionally interfere with President Trump's authority under Article II of the Constitution. This argument would have been wrong, but it would have been in keeping with the Executive Order's emphasis on President Trump's Article II authority and with President Trump's oft-expressed view that he has almost unfettered presidential powers. But President Trump and the Attorney General make no argument that any provision of FECA is unconstitutional. Trump Opp. 19–22 & n.7. They forgo it apparently as "part of [their] litigation strategy" of opposing certification to the *en banc* D.C. Circuit under 52 U.S.C. § 30110 by arguing that there is no ripe constitutional dispute. *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014). But by failing to make the argument, they have waived it. *Id.* And Defendants' waiver of any constitutional challenge to FECA means this Court need not certify the constitutionality of FECA's independence provisions to the *en banc* D.C. Circuit. Instead, the Court can and should promptly reach the merits and adjudicate this matter to final judgment.

Application of Section 7 of the Executive Order to the Commission is unlawful. And the issuance of the Order is already irreparably injuring Plaintiffs, which gives them standing to sue, makes this dispute ripe, and justifies injunctive relief. The Commission systematically regulates almost everything Plaintiffs do, and the Executive Order deprives Plaintiffs of the procedural

protections that are central to the legislative scheme. There is nothing speculative about the idea that the President might target his political opponents—that fear is precisely why Congress made the FEC independent. *DSCC*, 454 U.S. at 37. And the resulting chilling effect on Plaintiffs' activities is a current, ongoing, and irreparable injury. As Plaintiffs' declarations explain, they cannot conduct business as usual when the leader of the opposing political party has commanded their independent regulators to do what he says, regardless of those regulators' own independent view of the law.

The Court should therefore grant Plaintiffs' motion and enjoin Defendants from applying Section 7 of the Executive Order to the FEC. And in the absence of any concrete objection from Defendants, or any indication of a factual dispute, the Court should make that injunction permanent and enter final judgment under Federal Rule of Civil Procedure 65(a)(2).

## ARGUMENT

## I.    The Court has subject-matter jurisdiction.

In opposing relief, both sets of Defendants primarily challenge the Court's subject-matter jurisdiction. *See* Trump Opp. 8–17, FEC Opp. 14–21. Plaintiffs therefore address those issues first, before turning to the other issues before the Court.

### A.    Plaintiffs have Article III standing.

Plaintiffs have standing because Section 7 of the Executive Order, as applied to the FEC, injures Plaintiffs now. The Order demolishes the guarantee of independent, bipartisan implementation at the core of the Federal Elections Campaign Act ("FECA"), the law that comprehensively regulates almost everything Plaintiffs do. Pls.' Mem. in Supp. of Mot. for Prelim. Inj. 3–6, ECF No. 12-1 ("Mem."); *see also* Weintraub Br. 4–9. By depriving Plaintiffs of many of the benefits of an independent FEC, the Executive Order harms Plaintiffs' core, constitutionally protected activities. With the Order outstanding, Plaintiffs must make strategic decisions knowing

that the legal views of the head of the opposing political party—instead of those of an independent bipartisan commission—will control in enforcing campaign finance laws against them.

The Order therefore places Plaintiffs at an immediate strategic disadvantage that will persist unless and until it is enjoined. *See* Decl. of Liberty Schnieder, ECF No. 12-2 ("Schneider Decl.") ¶¶ 11–18; Decl. of Lillie Snyder Boss, ECF No. 12-3 ("Snyder Boss Decl.") ¶¶ 13–25; Decl. of Eric Ruselowski, ECF No. 12-4 ("Ruselowski Decl.") ¶¶ 13–19. So long as the Order is outstanding, Plaintiffs will seek fewer and different advisory opinions from the FEC because any such opinion could be decided by the President instead of the Commission. Schneider Decl. ¶ 13; Snyder Boss Decl. ¶¶ 18–20; Ruselowski Decl. ¶ 15. They must temper their consideration of innovative fundraising and communications strategies for fear that President Trump will wield his self-appointed power to target such new strategies through his interpretation of FECA. Schneider Decl. ¶¶ 14–15; Snyder Boss Decl. ¶¶ 20–22; Ruselowski Decl. ¶¶ 16–17. They must prepare now to reorganize budgets to reflect the danger of presidential interference with a pending petition regarding the use of national party committees' building and legal accounts. Schneider Decl. ¶ 15; Snyder Boss Decl. ¶ 22; Ruselowski Decl. ¶ 17. All of that is happening now—it is not feared future harm, and there is nothing speculative about it.

Defendants argue—without evidentiary support—that the President and Attorney General have not yet taken further steps to enforce the Order against the FEC. Trump Opp. 2–3, 10; FEC Opp. 14–15. But the Order facially covers the FEC, and nothing in the Order conditions Section 7's commands on further implementing action or limits them to only some parts of the Executive Branch. And despite the Commission's wishful thinking, FEC Opp. 21–24, President Trump affirmatively argues that he is legally entitled to enforce Section 7 against the FEC, Trump Opp. 19–22. He even argues that an injunction against applying the Order to the FEC would prevent

him from "overseeing the Executive Branch." Trump Opp. 24. President Trump's arguments provide no reason to doubt that Section 7 does just what it says, compelling the Commission to follow the President's and the Attorney General's legal positions over their own independent views.

Plaintiffs therefore satisfy each of the elements required to establish Article III standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). They have suffered, and continue to suffer, a concrete and particularized injury that "directly affect[s] and interfere[s] with [their] core . . . activities." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024). The Executive Order initiates a "predictable chain of events leading from th[at] government action to the asserted injury." *Id.* at 385. And Plaintiffs' ongoing injury would be redressed by the requested relief, a declaration that FECA's requirement that the Commissioners exercise independent legal judgment is constitutionally valid, contrary to the Executive Order's proclamations, and an injunction prohibiting Defendants from complying with and enforcing the Order insofar as it conflicts with FECA. *See id.* at 380.

Defendants' contrary arguments do not change this reality. Defendants argue that harm to Plaintiffs is too speculative. But there is nothing speculative about the idea that President Trump will target Plaintiffs, who comprise the national Democratic Party. President Trump has spent years emphasizing his desire for retribution against the Democratic Party: He supported calls to indict Democrats[1]; he called on every Senate Democrat to resign[2]; he said that "Democrats only

---

[1]  @realDonaldTrump, Truth Social (Jun. 10, 2023, 7:29 AM), https://truthsocial.com/@realDonaldTrump/ posts/110519686047275126.

[2]  @realDonaldTrump, Truth Social (Sept. 24, 2023, 4:58 PM), https://truthsocial.com/@realDonaldTrump/posts/111122128507943004.

know how to cheat" in elections[3]; he has called Democrats "dangerous for our country"[4]; and he has taken systematic action to retaliate against law firms associated with the Democratic Party.[5] Moreover, the danger that a President would abuse campaign finance regulation to target his political opponents was precisely why Congress created the FEC as a bipartisan, expert commission that is insulated from direct presidential control. H.R. Rep. No. 94-917, at 3 (1976); *see also* Weintraub Br. 5–7. It is not speculative to think that the Executive Order's decimation of FEC independence will cause exactly the harm—partisan targeting—that the independence was crafted to prevent.[6]

The harm that Plaintiffs fear is no more speculative than in the many cases in which plaintiffs have challenged FECA provisions prohibiting actions the plaintiffs wanted to take, but

---

[3]  @realDonaldTrump, Truth Social (Feb. 26, 2023, 7:21 PM), https://truthsocial.com/@realDonaldTrump/posts/109933841848226131.

[4] *Trump Doubles Down on 'Enemy From Within' Comments About Democrats*, Wall Street Journal (Oct. 6, 2024), https://www.wsj.com/video/trump-doubles-down-on-enemy-from-within-comments-about-democrats/4F8F5B26-7A7C-479A-B662-6603E508FBA6.

[5] *See, e.g.*, Executive Order No. 14,230, *Addressing Risks from Perkins Coie LLP*, 90 Fed. Reg. 11781 (Mar. 11, 2025); Tr. of Mar. 12, 2025 Hr'g at 76:12–:21, *Perkins Coie LLP v. U.S. Dep't of Justice*, No. 1:25-cv-00716, (D.D.C. Mar. 13, 2025), ECF No. 22 (ruling that Executive Order 14,230 "is a means of retaliating against Perkins Coie for representing individual clients who are the President's political opponents whom the President does not like" including for "[t]he firm's political work on behalf of a political opponent of the President"); Executive Order No. 14,246, *Addressing Risks from Jenner & Block*, 90 Fed. Reg. 13997 (Mar. 25, 2025) (taking similar actions against Jenner & Block for, among other reasons, "engag[ing] in obvious partisan representations to achieve political ends"); Order Granting TRO, *Jenner & Block LLP v. U.S. DOJ*, No. 1:25-cv-00916, (D.D.C. Mar. 28, 2025), ECF No. 9 (granting TRO against enforcement); *Addressing Risks from WilmerHale*, (Mar. 27, 2025), http://whitehouse.gov/presidential-actions/2025/03/addressing-risks-from-wilmerhale/ (similar as to WilmerHale); Memorandum Order, *Wilmer Cutler Pickering Hale & Dorr LLP v. Exec. Office of the President*, No. 25-cv-917 (D.D.C. Mar. 28, 2025) (granting TRO against enforcement).

[6] The "presumption of regularity" does not change the analysis. Trump Opp. 11–12. President Trump claims in the Executive Order—and reiterates in his brief, *id.* 19–22—that all Executive Branch employees are lawfully obligated to follow his legal views. There is no legitimate basis to presume that he will exempt the FEC from an Order that undeniably covers it, and that he affirmatively argues may legally be included.

had not yet taken. *See, e.g.*, *Wagner v. FEC*, 717 F.3d 1007, 1008–09 (D.C. Cir. 2013); *Libertarian Nat'l Comm. v. FEC*, 228 F. Supp. 3d 19, 22 (D.D.C. 2017); *NRSC v. FEC*, 712 F. Supp. 3d 1017, 1029 (S.D. Ohio 2024). In those cases, too, the Commission had not yet taken concrete steps to enforce the challenged prohibitions against the plaintiff challenging them and might never have done so. In *NRSC v. FEC*, for example, then-Senator Vance had standing to challenge a restriction that caused his campaign to cooperate less closely with the Republican Party, even though no enforcement action had been taken against him. 712 F. Supp. 3d at 1024. Similarly, in *Wagner*, the plaintiffs were government contractors who "want[ed] to make political contributions for use in federal elections" but had not yet made them, much less faced punishment for doing so. *Wagner*, 717 F.3d at 1008–09; *see also Libertarian Nat'l Comm.*, 228 F. Supp. 3d at 19 ("Because Appellants declare that they would make political contributions but for" the prohibition they challenge, "they have Article III standing.").

The plaintiffs in those cases did not have to wait for an actual enforcement action to be brought against them before they could sue, and there is no reason to treat Plaintiffs' claims in this case any differently. Defendants' unsworn assurance that President Trump has not yet imposed any concrete legal interpretation on the Commission does not and cannot alleviate Plaintiffs' ongoing injuries, because the Executive Order itself inflicts the chilling injury on Plaintiffs by threatening to compel the FEC to follow the President's legal interpretations. "[A] public-official defendant who threatens to employ coercive state power"—which is precisely what Executive Order 14,215 entails—violates Plaintiffs' rights "regardless of whether the threatened punishment comes in the form of the use (or, misuse) of the defendant's direct regulatory or decisionmaking authority over the plaintiff, or in some less-direct form." *Backpage.com, LLC v. Dart*, 807 F.3d 229, 230–31 (7th Cir. 2015) (quoting *Okwedy v. Molinari*, 333 F.3d 339, 344 (2d Cir. 2003) (per

curiam)). And the Supreme Court has long recognized that a plausible threat of government enforcement, especially against an official's political rivals, inflicts a cognizable injury. *See Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 194 (2024) (recognizing that plausible allegations that government official "threatened to wield her power against those refusing to aid her campaign to punish" plaintiff's advocacy stated a claim); *Smith v. People of the State of California*, 361 U.S. 147, 153–54 (1959) (recognizing injury inflicted by "self-censorship, compelled by the State").

Plaintiffs therefore "have alleged a credible threat of [government] enforcement" of an Executive Order that tramples their rights to have campaign finance questions and disputes resolved by the consensus of a bipartisan commission, "amount[ing] to an Article III injury in fact." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161 (2014). The President could impose legal positions on the FEC tomorrow without contradicting a word of his brief, and he could do so in the context of backward-looking enforcement actions penalizing Plaintiffs for things they are doing today. For that reason, the Executive Order forces Plaintiffs "to curtail [their] activities that are . . . subject to uncertain standards" under FECA now, due to the risk that legal determinations in future enforcement actions based on those activities will be controlled by the President under the Executive Order. Schneider Decl. ¶ 13; *accord* Snyder Boss Decl. ¶ 20; Ruselowski Decl. ¶ 15.

Contrary to Defendants' arguments, this case is very different from *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013). *See* Trump Opp. 10, 13–14; FEC Opp. 18–19. The plaintiffs in *Clapper* claimed standing based on a belief "that their communications with their foreign contacts [would] be intercepted . . . at some point in the future." 568 U.S. at 410. In response to that belief, the *Clapper* plaintiffs voluntarily "t[ook] costly and burdensome measures" that they said were necessary "to protect the confidentiality of their international communications." *Id.* at 402. But the Supreme Court held that the fear of interception was too speculative to justify

those measures, because the plaintiffs "could not show that they had been or were likely to be subjected to that policy in any event." *FEC v. Cruz*, 596 U.S. 289, 297 (2022) (citing *Clapper*, 568 U.S. at 402, 416). And their claimed injury relied upon a series of contingencies conditional on the collapse of guardrails against improper surveillance. *Clapper*, 568 U.S. at 402, 410.

Here, in contrast, the harm Plaintiffs fear is the direct result of applying Section 7 to the FEC. And such application is not speculative: the only reason for the President to include the FEC within the scope of Section 7, to defend that inclusion in this Court, and to argue that enjoining Section 7's application to the FEC would unacceptably interfere with the President's Article II authority, Trump Opp. 19–22, 24, is if the President intends to impose binding legal determinations on the Commission. And when he does so, Plaintiffs—national party committees of the political party opposed to the President—are precisely the entities who are most likely to be targeted. Schneider Decl. ¶¶ 10, 18; Snyder Boss Decl. ¶¶ 12, 25; Ruselowski Decl. ¶ 12.

This case is also very different from *United Presbyterian Church in the U.S.A. v. Reagan*, where the D.C. Circuit held that the plaintiffs—congressmen, religious and political organizations, journalists, academics, and politically active individuals—lacked standing to challenge an executive order establishing a framework for governmental and military intelligence-gathering functions. 738 F.2d 1375, 1380–81 (D.C. Cir. 1984). There, "no part of the challenged scheme impose[d] or even relate[d] to any direct governmental constraint upon the plaintiffs," and the corresponding "subjective chill" on their rights could not satisfy Article III's requirements. *Id.* at 1379–80. As the court emphasized, the executive order at issue there did not itself "*direct* intelligence-gathering activities against all persons who could conceivably come within its scope, but merely *authorize[d]* them," and thus the plaintiffs instead could "challenge any illegal surveillance of them when (and if) it occurs." *Id.* at 1380 (emphasis in original). Similarly, *Center*

*for Democracy & Technology v. Trump* involved an executive order that directed agencies to "file *a petition* for rulemaking requesting that the FCC expeditiously *propose* regulations, to *review* Federal spending, to *consider* taking action, to *consider* developing a report, to establish a *working group*, and to develop a *proposal* for Federal legislation." 507 F. Supp. 3d 213, 222 (D.D.C. 2020) (cleaned up and emphases in original). And the same goes for the executive order at issue in *Public Citizen v. Trump*, where the court dismissed plaintiffs' claims for lack of jurisdiction because "there is no telling when" the underlying rulemaking at issue would conclude and if, "as a result . . . even in the absence of the Executive Order, the rule would be in place in time to benefit" the plaintiffs' members. 435 F. Supp. 3d 144, 155 (D.D.C. 2019).

Unlike the executive orders in those cases, Executive Order 14,215 itself *requires* the FEC, its Commissioners, and their employees to abide by any and all legal opinions of the President and Attorney General. The Order commands adherence to President Trump's "authoritative interpretations of law," provides that President Trump's "opinions on questions of law are controlling on all employees in the conduct of their official duties," and prevents any FEC employee from "advanc[ing] an interpretation of law as the position of the United States that contravenes the President or the Attorney General's opinion on a matter of law." Exec. Order No. 14215 ("E.O. 14,215") § 7, 90 Fed. Reg. 10447, 10448 (Feb. 18, 2025). In so doing, the Executive Order empowers the President and Attorney General to personally dictate how Plaintiffs are regulated by campaign finance laws, and thereby inflicts concrete injuries that confer standing.

### B.    Plaintiffs' claims are ripe.

For the same reasons that Executive Order 14,215 inflicts current and ongoing harm on Plaintiffs, it presents a ripe dispute fit for judicial resolution. And there is no prudential reason to wait. The lawfulness of applying the Executive Order to the FEC is a "purely legal issue," which reduces any ripeness concerns. *U.S. Air Tour Ass'n v. FAA*, 298 F.3d 997, 1014 (D.C. Cir. 2002).

And the Commission will *never* have the opportunity to "apply its expertise" in implementing the Executive Order, FEC Opp. 19, because the Executive Order compels the Commissioners to parrot President Trump's legal positions and prohibits them from advancing contrary positions of their own. Moreover, withholding adjudication until the Commission takes enforcement action against Plaintiffs would severely and irreparably harm Plaintiffs, because their constitutionally protected political activities are already being affected and chilled by President Trump's assertion of absolute authority over the Commission's legal positions. *See supra* Section I.A.

The ripeness cases the Commission cites are distinguishable. Unlike *Missouri v. Biden*, 558 F. Supp. 3d 754, 770 (E.D. Mo. 2021), this case does not involve fears about not-yet-issued regulations that will govern future conduct, but rather fears of enforcement actions based on the day-to-day decisions that Plaintiffs have no choice but to make *now*. Courts routinely hold that disputes are ripe under similar circumstances. *See, e.g.*, *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 201–02 (1983) (holding dispute ripe where the plaintiffs needed to make decisions about constructing nuclear plants that would be affected by the challenged law and to "require the industry to proceed without knowing whether the moratorium is valid would impose a palpable and considerable hardship on the[m]"); *Chamber of Com. of U.S. v. Reich*, 57 F.3d 1099, 1101 (D.C. Cir. 1995) (explaining that the "choice[] between taking immediate action to their detriment and risking substantial future penalties for non-compliance[] presents a paradigm case of 'hardship'" favoring immediate review). And that is all the more so where, as here, Plaintiffs' argument is that any subsequent proceeding would be rendered unlawful by the very claim of presidential authority that they challenge. *See Axon Enterp., Inc. v. FTC*, 598 U.S. 175, 191 (2023) (holding plaintiffs need not await adverse agency decision where they challenged "an illegitimate decisionmaker"); *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,

561 U.S. 477, 490–91 (2010) (holding plaintiffs need not "bet the farm" to incur an injury before challenging agency structure, nor must they await agency adjudication of a dispute about the agency's powers).

The injury that Executive Order 14,215 inflicts on Plaintiffs crashes headlong into the very foundation of our constitutional order: protection against government suppression of speech, competition, and opposition. *Cf. United States v. Carolene Prods. Co.*, 304 U.S. 144, 153 n.4 (1938) (recognizing heightened need for judicial intervention where ordinary political processes are restricted, including by "interference[] with political organizations"); *Save Jobs USA v. Dep't of Homeland Sec.*, 942 F.3d 504, 508–09 (D.C. Cir. 2019) ("when regulations illegally structure a competitive environment—whether an agency proceeding, a market, or a reelection race—parties defending concrete interests in that environment suffer legal harm under Article III"); *Shays v. FEC*, 414 F.3d 76, 86 (D.C. Cir. 2005) (finding injury-in-fact where government action "fundamentally alter[s] the environment in which rival parties defend their concrete interests (e.g., their interest in . . . winning []election[s])"). Plaintiffs' election-related activities are now regulated by the head of their rival political party, in direct contravention of Congress's decision to insulate that regulation from the President. This direct injury both confers standing and presents a ripe issue fit for adjudication now.

## II.    Plaintiffs should be granted preliminary injunctive relief.

Plaintiffs are entitled to a preliminary injunction because they are likely to succeed on the merits of their claims, they will suffer irreparable harm in the absence of an injunction, the balance of equities points in their favor, and an injunction is in the public interest. *See* Mem. 9–23; *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016). Moreover, because Defendants do not raise any concrete reason for delay—and because President Trump's waiver of any constitutional challenge to FECA eliminates any need for certification under 52 U.S.C. § 30110,

*see infra* Part III—the Court should consolidate the preliminary injunction motion with final judgment on the merits under Rule 65(a)(2).

> ### A.      Plaintiffs are likely to prevail on the merits of their claims.

Plaintiffs are likely to succeed on the merits because application of Section 7 of the Executive Order to the FEC violates FECA's constitutionally valid provisions requiring the Commissioners to exercise their independent judgment in enforcing FECA. Many of Defendants' contrary arguments focus on justiciability and are addressed in Part I, *supra*. President Trump also contends that this case is not appropriate for certification under 52 U.S.C. § 30110, *see* Trump Opp. 17–19, an issue that Plaintiffs address in Part III, *infra*.

Aside from standing and ripeness, the Commission makes no merits argument. FEC Opp. 24–26. To the contrary, *the Commission agrees with Plaintiffs that Section 7 of the Executive Order cannot lawfully be applied to the FEC. Id.* at 21–24. The Commission therefore asks the Court to read Section 8 of the Executive Order as exempting the FEC from Section 7. *Id.* That would be fine with Plaintiffs—any road to preserving the FEC's independence is a good one—if only the President who signed the Order agreed. But President Trump argues precisely the opposite: He says that FECA does *not* insulate the FEC from presidential control. Trump Opp. 19–22.

In defending the Executive Order, President Trump puts all his eggs in the statutory construction basket. He expressly declines to address the constitutional questions that would necessarily follow if—as Plaintiffs and the Commission both argue—FECA does insulate the Commission from presidential control. Trump Opp. 22 n.7. By acknowledging and declining to make those constitutional arguments, President Trump has waived any argument that the Constitution justifies the Executive Order's application to the FEC even if FECA would otherwise prohibit it. *See, e.g., Wannall*, 775 F.3d at 428 ("[I]f a party files an opposition to a motion and

therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded. . . . Such a concession 'acts as waiver[.]'"); *Klayman v. Jud. Watch, Inc.*, 802 F. Supp. 2d 137, 148 (D.D.C. 2011) (similar). A finding of waiver is particularly warranted here, where President Trump's choice to forgo making a fallback constitutional argument comes as "part of his litigation strategy" of opposing certification under 52 U.S.C. § 30110 by pointing to the absence of a constitutional dispute. *Wannall*, 775 F.3d at 428. Making the "contingent argument" that FECA's independence provisions are unconstitutional would have "undermin[ed] his preferred position" against certification. *Id.* at 428–29. President Trump is therefore bound by his decision not to attack FECA's constitutionality; he should not be permitted to raise those arguments later. *See id.*

President Trump's statutory argument that FECA does not entitle the Commission to apply its own legal judgment—rather than following his controlling legal interpretations, as the Executive Order commands—is wrong. President Trump argues that no provision of FECA expressly addresses "what relevance the President's or Attorney General's legal views should play in the FEC's exercise of its authority." Trump Opp. 20. But while FECA does not comprehensively address that issue, it does foreclose the Executive Order's approach of requiring Commissioners to defer completely to the President's and Attorney General's legal views. In particular, FECA expressly bars Commissioners from "delegat[ing] to any person . . . any decisionmaking authority or duty vested in the Commission." 52 U.S.C. § 30106(c). A Commissioner who follows the Executive Order and makes decisions based on the President or Attorney General's legal position instead of reaching his own conclusions does precisely what that provision prohibits. President Trump's analogy (at Trump Opp. 21) to an immigration law provision, 8 U.S.C. § 1226a(a)(3), does not suggest anything different. That statute requires the "Attorney General" to make a

particular determination and authorizes delegation "only to the Deputy Attorney General." *Id.* President Trump assumes the President could make the determination instead, but he cites no authority supporting that assumption, and the statute's plain text precludes it, just as FECA's plain text precludes application of Section 7 of the Executive Order to the Commission.

In any event, executive orders are unlawful and properly enjoined not only if they directly contradict an express statutory provision, but also if they are "incompatible with the overall statutory scheme governing" a particular issue. *HIAS, Inc.*, 985 F.3d at 325 (quoting *Kouambo*, 943 F.3d at 213) (affirming injunction against executive order that was inconsistent with the statutory scheme governing refugee settlement, even though it did not contradict any one provision). That is the case here. As Plaintiffs showed, Mem. 4–6, 9–11, *as the FEC's own brief reinforces*, FEC Opp. 22–24, and as Commissioner Weintraub's amicus brief confirms, Weintraub Br. 4–11, FECA's purpose and structure are deeply inconsistent with the President's claimed power to control the Commission's legal decision-making. Take, for example, FECA's requirements that the FEC be led by six Commissioners, with no more than three affiliated with the same political party, and with the agreement of four Commissioners required for any substantive action. *See* 52 U.S.C. §§ 30106, 30107, 30109. The Executive Order is impossible to square with those requirements. Many of the substantive actions within the FEC's purview require legal interpretation—from making rules to initiating court actions to issuing advisory opinions. *See id.* §§ 30106(c), 30107(a)(6)–(9), 30109(a). And it would make no sense to require a legal interpretation to be supported by four different Commissioners if the President can command all six to adopt it, and prohibit them from articulating any inconsistent view. Nor would it make sense to condition all FEC action on the consent of at least one Commissioner who is not affiliated with the President's political party if all Commissioners are equally bound by the President's legal

positions. Courts have recognized time and again that the FEC is the quintessential independent agency. *See, e.g.*, *FEC v. NRA Pol. Victory Fund*, 513 U.S. 88, 94 (1994); *DSCC*, 454 U.S. at 37; *Buckley v. Valeo*, 424 U.S. 1, 141 (1976); *FEC v. NRA Pol. Victory Fund*, 6 F.3d 821, 826 (D.C. Cir. 1993). Such independence is inherently incompatible with the Executive Order's command that Commissioners substitute the President's legal judgment for their own.

That does not mean, as President Trump puts it, that "FECA precludes a role of the President or Attorney General in administering the election laws." Trump Opp. 21. Plaintiffs have never asserted that "the President must have no say" in campaign finance regulation. *Contra id.* The President (and only the President, *see NRA Pol. Victory Fund*, 6 F.3d at 827) may choose the Commissioners who comprise the FEC's leadership, subject to the Senate's advice and consent, *see* 52 U.S.C. § 30106(a)(1). The President may, through the Solicitor General, choose whether and how to represent the FEC in certain Supreme Court matters. *See NRA Pol. Victory Fund*, 513 U.S. at 96. And the President may share with the public and with Congress his views on statutory ambiguities or opportunities for reform as part of the regular political process. *See, e.g.*, U.S. Const. art. II, § 3. What the President may not do is to overrule the Commissioners' independent legal judgment and command them to follow his interpretations instead, as the Executive Order does. To do so is to usurp decision-making functions that FECA assigns to the Commissioners alone, an assignment that is "essential to effective and impartial administration of the entire substantive framework of [FECA]." *Buckley*, 424 U.S. at 141.

The fact that the Executive Order does not *entirely* obliterate the Commission's authority because it does not also seek to requisition for the President and Attorney General the Commission's factfinding function does not resolve matters. Trump Opp. 20. The attack on the Commissioners' independent legal judgment remains. And that independent legal judgment is

16

extraordinarily important: many matters in front of the FEC are predominantly or entirely legal. In the FEC complaint pending against DSCC, for example, the underlying facts are largely undisputed, so the legal interpretation of the relevant FECA provisions will be dispositive. *See* Compl. ¶¶ 7, 51–54, ECF No. 1. By seizing for himself the authority to issue that interpretation, President Trump has divested Commissioners of core statutory duties. That the President and Attorney General need not weigh in on every issue before the Commission does not help either. Trump Opp. 20. Even occasional enforcement of the unlawful Executive Order against the FEC will harm Plaintiffs, and the threat of such enforcement is injuring them already. *See supra* Part I. The President makes clear that he intends to apply Section 7 to the FEC at least sometimes— otherwise, enjoining that application would not harm him. *See* Trump Opp. 24.

Plaintiffs are therefore likely to succeed in demonstrating that application of Section 7 of the Executive Order to the FEC violates FECA. And aside from the justiciability issues addressed in Part I, *supra*, Defendants make no other argument against Plaintiffs' likelihood of succeeding on the merits of Count II, which seeks permanent injunctive relief. *See* Trump Opp. 19–22; FEC Opp. 24–26.

**B.    Plaintiffs will suffer irreparable harm in the absence of an injunction.**

Plaintiffs also meet the irreparable harm requirement. Since President Trump signed the Executive Order on February 18, Plaintiffs have suffered, and continue to suffer, irreparable harm each and every day. "The timeliness of political speech is particularly important." *Elrod v. Burns*, 427 U.S. 347, 374 n.29 (1976). And the "loss of First Amendment 'freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) (quoting *Mills v. Dist. of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009)). Election-related opportunities by their nature are irreplaceable, and "[s]uch mobilization opportunities cannot be remedied once lost." *In re Georgia Senate Bill 202*, No. 1:21-

CV-01259-JPB, 2023 WL 5334582, at *11 (N.D. Ga. Aug. 18, 2023) (quoting *Ga. Coal. for People's Agenda, Inc. v. Kemp*, 347 F. Supp. 3d 1251, 1268 (N.D. Ga. 2018)). Each election, and by extension each election cycle, is unique. *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014) ("once the election occurs, there can be no do-over and no redress"); *Emineth v. Jaeger*, 901 F. Supp. 2d 1138, 1142 (D.N.D. 2012) ("Elections are, by nature, time sensitive and finite. While there will be other elections, no future election will be *this* election.").

Every day that the Executive Order remains in effect is another day of the 2026 election cycle in which Plaintiffs are forced to restrict their own activities due to the Executive Order's elimination of the bipartisan independence that FECA guarantees, all while their Republican counterparts continue to operate without the risk of adverse enforcement of FECA at the hands of a Republican president who has declared himself the ultimate legal arbiter of disputes before the Commission. Schneider Decl. ¶¶ 15, 17; Snyder Boss Decl. ¶¶ 22, 24; Ruselowski Decl. ¶¶ 17, 19. There is no available remedy, financial or injunctive, that could make up for Plaintiffs' resulting lost opportunities. Schneider Decl. ¶¶ 14–17; Snyder Boss Decl. ¶¶ 21–24; Ruselowski Decl. ¶¶ 16–19. Until the Executive Order is enjoined, Plaintiffs will continue to endure these injuries, month after month, increasingly damaging to their efforts as the 2026 election approaches with each passing month. Contrary to Defendants' arguments, FEC Opp. 27–28; Trump Opp. 23, these injuries are not speculative—they are happening now.

Both sets of Defendants also assert that any harm could be remedied through FECA's special judicial review provisions and judicial review under the Administrative Procedure Act. FEC Opp. 28; Trump Opp. 23–24. But after-the-fact judicial review of particular FEC decisions

cannot remedy the ongoing and continuing harms caused by the effect of the Executive Order on Plaintiffs' tactical and strategic choices. *See supra* Part I (discussing evidence of ongoing harm).

Plaintiffs' activities are focused on the future—the 2026 and 2028 elections—and it is their efforts related to those elections that are being irreparably harmed by the Executive Order. Schneider Decl. ¶ 16; Snyder Boss Decl. ¶ 23; Ruselowski Decl. ¶ 18. The FEC's argument that it is early in the 2026 election cycle makes no difference. FEC Opp. 27–28. Although the election is still more than a year away, "[t]he race is on right now. Whichever candidates Plaintiffs wish to support and issues they wish to espouse must be freed immediately from the chill of possible FEC enforcement." *Carey v. FEC*, 791 F. Supp. 2d 121, 133 (D.D.C. 2011). The ongoing "interference with First Amendment rights constitutes irreparable harm" justifying an injunction. *Id.* at 134.

### C.    The remaining equitable factors also favor granting preliminary relief.

Finally, preliminary injunctive relief is warranted because the balance of the equities and the public interest weigh in Plaintiffs' favor. "[T]he Government cannot suffer harm from an injunction that merely ends an unlawful practice." *R.I.L.-R v. Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015) (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)). "To the contrary, there is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" *League of Women Voters of U.S.*, 838 F.3d at 12 (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)). Plaintiffs' high likelihood of success on the merits, *see supra* Section II.A; Mem. 9–18, is therefore "a strong indicator that a preliminary injunction would serve the public interest" by preventing the enforcement of an executive order that violates federal law. *League of Women Voters of U.S.*, 838 F.3d at 12. An injunction will also serve the public interest by preserving fair competition in the political process and by restraining the Executive Order's inevitable chilling effect on Plaintiffs' First Amendment

freedoms. *See* Mem. 22–23; *see also Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) ("injunctions protecting First Amendment freedoms are always in the public interest").

Defendants do not dispute any of these points. *See* FEC Opp. 28–29; Trump Opp. 24–25. Instead, Defendants rely on their arguments, addressed above, that Plaintiffs lack standing or ongoing injuries. *See* FEC Opp. 28–29; Trump Opp. 24–25; *supra* Part I. President Trump also argues that an injunction would harm the public interest by "restrain[ing] the President from overseeing the Executive Branch" in violation of Article II. Trump Opp. 24. But this argument assumes that Article II entitles President Trump to control the FEC's legal positions—exactly the constitutional argument that President Trump expressly declines to make, that he asks the Court not to reach, and that he contends no party is making. *See* Trump Opp. 19, 22 n.7. Every injunction of executive action limits the President's authority over the Executive Branch, but there is no public or equitable interest in lawless executive action. *League of Women Voters of U.S.*, 838 F.3d at 12. And the preliminary injunction Plaintiffs seek would not prevent President Trump or Attorney General Bondi from "opining" on any issue, but only from "*ordering* the Federal Election Commission or the FEC Commissioners to follow the President or Attorney General's views on legal questions." [Proposed] Preliminary Inj. Order 1–2, ECF No. 12-5 (emphasis added).[7]

---

[7] President Trump is also wrong to argue that the Court lacks authority to enjoin him in the performance of his official duties. Trump Opp. 25. Contrary to his assertion, *Franklin v. Massachusetts*, 505 U.S. 788 (1992), "did not absolutely slam the door shut on presidential injunctions." *McCray v. Biden*, 574 F. Supp. 3d 1, 9 (D.D.C. 2021). Rather, *Franklin* "explicitly left open the question of whether a court may enjoin the President to perform a ministerial duty." *Swan v. Clinton*, 100 F.3d 973, 978 (D.C. Cir. 1996). The D.C. Circuit has also recognized that, although the courts are reluctant to enjoin the President due to "risks" posed to the "constitutional separation of powers" by an injunction against a coequal branch, there is a tension between such risks and "the bedrock principle that our system of government is founded on the rule of law." *Id.* Thus, in addition to the open question of whether a court may enjoin the President to perform a

**D.    The Court should not require a bond.**

If the Court grants a preliminary injunction, it should not require Plaintiffs to post a bond. A bond is not appropriate because Defendants will not sustain any monetary "costs and damages" if they are wrongfully enjoined. *See* Mem. 9 n.12 (quoting Fed. R. Civ. P. 65(c)). Courts "may dispense with security altogether if the grant of an injunction carries no risk of monetary loss to the defendant." Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2954 (3d ed.) (collecting cases). Such is the case here, where Defendants will face "no monetary injury from the injunction." *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, --- F.Supp.3d ----, 2025 WL 597959, at *19 (D.D.C. Feb. 25, 2025) (declining to require security). The FEC does not ask that the Court require a bond. *See generally* FEC Opp. And President Trump identifies no monetary harm that an injunction would impose. Trump Opp. 26. In any event, the Court can avoid the bond issue by entering a final injunction under Rule 65(a)(2).

**E.    The Court should enter a final injunction under Rule 65(a)(2).**

For the reasons just given, Plaintiffs are entitled to a preliminary injunction against application of Section 7 to the FEC. But as the Court suggested at the March 12 scheduling conference, the Court should consolidate this motion with final judgment under Rule 65(a)(2) and enter a permanent injunction instead. There are no factual disputes for the Court to resolve—only Plaintiffs have offered evidence, and the merits of Plaintiffs' claims present a pure question of law. *See Morris v. Dist. of Columbia*, 38 F. Supp. 3d 57, 63 (D.D.C. 2014) (noting that consolidation

---

ministerial duty, the D.C. Circuit "appeared to leave open the possibility that a suit to enjoin the President might be available as a last resort." *McCray*, 574 F. Supp. 3d at 9 (emphasis removed).

Here, however, the Court can forgo enjoining the President because Plaintiffs' injury "can be redressed by injunctive relief against subordinate officials," *Swan*, 100 F.3d at 979—namely, Defendants Bondi, the FEC, and Commissioners Trainor, Broussard, Dickerson, and Lindenbaum. *See* [Proposed] Preliminary Inj. Order 1–2.

21

under Rule 65(a)(2) is "particularly appropriate" where "the relevant facts are undisputed" (quoting *Kickapoo Trad'l Tribe of Tex. v. Chacon*, 46 F. Supp. 2d 644, 648–49 (W.D. Tex. 1999)). Nowhere do Defendants argue that any discovery or further factual development is needed for their defenses. And permanent injunctive relief is appropriate because "remedies available at law, such as monetary damages, are inadequate to compensate for" Plaintiffs' injury. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). President Trump does not contend that Plaintiffs' injuries are compensable at law, Trump Opp. 22, arguing only that that the Court should not award permanent injunctive relief before any questions certified to the *en banc* D.C. Circuit under 52 U.S.C. § 30110 have been answered, *id.* at 25–26. But as explained in the next section, President Trump's waiver of any constitutional challenge to FECA means that no certification is needed. The Court therefore can and should enter permanent injunctive relief now.

## III.    Defendants' waiver of any constitutional argument obviates the need for certification to the Court of Appeals under 52 U.S.C. § 30110.

When Plaintiffs filed this action, they expected that certification to the *en banc* D.C. Circuit would be necessary to resolve President Trump's anticipated argument that FECA's demand that Commissioners exercise their independent legal judgment in administering the Act unconstitutionally abridges the President's Article II authority. *See* 52 U.S.C. § 30110. Although the argument would have been meritless, Plaintiffs had good reason to expect it: the Executive Order expressly grounds its unprecedented assertion of presidential authority to control independent agencies like the FEC in the argument that the "Constitution vests all executive power in the President" and therefore renders all "executive branch officials . . . subject to the President's ongoing supervision and control." E.O. 14,215 § 1. And were President Trump making that constitutional argument, certification would be appropriate to resolve it—52 U.S.C. § 30110

requires certification of "all questions of constitutionality of FECA," not only of constitutional challenges *by plaintiffs*. *See* Mem. 16–18.

To Plaintiffs' surprise, however, there is no question to certify, because President Trump has waived any defense of the Executive Order based on a constitutional challenge to FECA. Plaintiffs' Complaint and preliminary injunction motion made clear Plaintiffs' position that applying Section 7 of the Executive Order to the FEC would violate multiple provisions of FECA. Compl. ¶¶ 66–67, 75–77; Mem. 9–11. In response, President Trump relies exclusively on the argument that, as a matter of statutory construction, FECA does not make the Commissioners independent of presidential control. Trump Opp. 19–22 & n.7. He does not argue in the alternative that Article II gives him the power to control the FEC's legal positions even if FECA would otherwise make the Commissioners independent of his control. *See id.* To the contrary—he affirmatively argues that "no party is asserting that these provisions or any other provisions of FECA are unconstitutional." Trump Opp. 19. And the FEC makes no such argument either, arguing only that Section 7 of the Order does not apply to the FEC at all. FEC Opp. 22–24.

President Trump's choice to rely exclusively on his statutory argument has consequences. President Trump was obviously aware of the constitutional argument—Plaintiffs' motion directly addresses it—and he chose not to make it. A party who fails to make an argument in opposition to a motion concedes it, and is not permitted to assert it later at a more advantageous time. *See supra* Section II.A; *Wannall*, 775 F.3d at 428; *Klayman*, 802 F. Supp. 2d at 148. The Court should therefore take it as conceded that FECA is constitutional even if—as Plaintiffs and the FEC say— it bars the President from commanding Commissioners to adopt his legal positions as their own. That concession leaves no live constitutional dispute and therefore obviates the need for certification under § 30110.

If for any reason the Court does not intend to hold President Trump to his concession, however, then the constitutional question remains a live one, and the Court should certify the following question to the *en banc* D.C. Circuit: "whether the Federal Election Commission's independent statutory authority to administer, interpret, and civilly enforce the Federal Election Campaign Act ("FECA"), 52 U.S.C. §§ 30106–07, is consistent with the President's executive power under Article II of the U.S. Constitution." Joint Meet and Confer Statement, ECF No. 16 at 1. As Plaintiffs explained in their Motion, each of the requirements for certification is satisfied here. Mem. 16–18.

Contrary to the FEC's argument, FEC Opp. 31, the question to be certified involves FECA's constitutionality, even though it emerges in the context of a dispute over the lawfulness of the Executive Order. Unlike in the cases the FEC cites, Plaintiffs are not arguing that regulations are unconstitutional. *Holmes v. FEC*, 823 F.3d 69, 75 (D.C. Cir. 2016); *see NRSC*, 712 F. Supp. at 1030–32. Rather, the constitutional question is whether the FECA provisions making the FEC independent of presidential control—which the Executive Order violates—are themselves constitutionally valid. And the presence of a prior question of statutory interpretation is no barrier to certification, because courts hearing claims under § 30110 are free to "first constru[e] the statutes under constitutional attack to determine whether they apply." *FEC v. Cent. L.I. Tax Reform Immediately Comm.*, 616 F.2d 45, 51 (2d Cir. 1980) (en banc) (per curiam).

The FEC also argues that certification is improper if a constitutional question is frivolous and that it should follow preparation of an adequate factual record. FEC Mem. 37–39. But the FEC makes no actual argument that the constitutional question raised in this case is frivolous or that any additional factual record is needed to resolve it. *Id.*; *see Cal. Med. Ass'n v. FEC*, 453 U.S. 182, 192 n.14 (1981) (stating that "immediate adjudication of constitutional claims through a [Section

30110] proceeding . . . would be improper in cases where the resolution of such questions required a fully developed factual record"). The question Plaintiffs seek to certify is a pure issue of law, and the FEC has failed to identify any issue for which factfinding is "necessary" or "required" to allow the *en banc* D.C. Circuit to decide it. *Buckley v. Valeo*, 519 F.2d 817, 818 (D.C. Cir. 1975). Similarly, the FEC suggests that Plaintiffs' proposed question is too vague and undefined to be certified, FEC Opp. 39, but courts have often certified questions regarding whether provisions spread across lengthy sections of FECA conflict with broad constitutional terms. *See, e.g.*, *NRSC*, 712 F. Supp. 3d at 1040 (certifying question of whether "the limits on coordinated party expenditures in § 315 of the Federal Election Campaign Act of 1971, as amended, 52 U.S.C. § 30116, violate the First Amendment" on their face or as applied). That Commissioners' independent legal judgment is inherent in multiple provisions of FECA is not a reason to deny certification—if anything, it illustrates the sweeping overbreadth of the Executive Order and the necessity for relief. If the Court thinks the question is too broad, it should narrow it—not deny certification. *Libertarian Nat'l Comm., Inc. v. FEC*, 930 F. Supp. 2d 154, 169 (D.D.C. 2013) (holding that a district court "has the power, and apparently the duty, to identify the constitutional issues and to reframe the question as necessary so that any proper non-frivolous question is certified to the *en banc* Court of Appeals").

## CONCLUSION

For the foregoing reasons, the Court should consolidate Plaintiffs' motion for a preliminary injunction with a decision on the merits and permanently enjoin Defendants Bondi, the FEC, and the Commissioners from applying Section 7 of Executive Order 14,215 to the Federal Elections Commission.

Dated: April 1, 2025

Respectfully submitted,

*/s/ Marc E. Elias*

**ELIAS LAW GROUP LLP**
Marc E. Elias (DC 442007)
David R. Fox (DC 1015031)
Jacob D. Shelly (DC 90010127)
Robert Golan-Vilella (DC 1724616)
Omeed Alerasool (DC 90006578)
Julie Zuckerbrod (DC 1781133)
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4652

*Counsel for Plaintiffs Democratic National Committee, DSCC, and DCCC*