IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEMOCRATIC NATIONAL COMMITTEE,
*et al.*,

                    Plaintiffs,

        *v.*

DONALD J. TRUMP, *et al.*,

                    Defendants.

Civil Action No. 1:25-cv-00587-AHA

**PLAINTIFFS' CONSOLIDATED MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

BACKGROUND .................................................................................................................. 3

I.      Federal Election Campaign Act .......................................................................... 3

II.     Executive Order 14,215 ....................................................................................... 4

III.    Procedural Background ......................................................................................... 5

LEGAL STANDARD ......................................................................................................... 6

ARGUMENT ....................................................................................................................... 7

I.      Plaintiffs' claims are justiciable. ......................................................................... 7

     A.     Plaintiffs have standing. ........................................................................... 7

     B.     Plaintiffs' claims are ripe. ....................................................................... 14

II.     Both counts of the Complaint state claims for relief. ...................................... 16

     A.     Count I would state a claim if the President and Attorney General had not waived their constitutional arguments. ............................................ 16

     B.     Count II states a claim for equitable relief. ............................................ 19

          1.    Contrary to the President and Attorney General's arguments, FECA protects the FEC's independence. ....................................... 19

          2.    The FEC's arguments do not support dismissal of Count II. .......... 23

CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Axon Enterp., Inc. v. FTC,*
598 U.S. 175 (2023) ............................................................................................. 15

*\*Backpage.com, LLC v. Dart,*
807 F.3d 229 (7th Cir. 2015) ............................................................................... 10

*Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh,*
295 F.3d 28 (D.C. Cir. 2002) ............................................................................... 24

*Buckley v. Valeo,*
424 U.S. 1 (1976) ........................................................................................... 21, 22

*Carey v. FEC,*
791 F. Supp. 2d 121 (D.D.C. 2011) ..................................................................... 11

*Chamber of Com. of U.S. v. Reich,*
57 F.3d 1099 (D.C. Cir. 1995) ............................................................................. 15

*Citizens United v. FEC,*
558 U.S. 310 (2010) ............................................................................................. 11

*\*City & Cnty. of S.F. v. Trump,*
897 F.3d 1225 (9th Cir. 2018) ....................................................................... 23, 24

*Clapper v. Amnesty Int'l USA,*
568 U.S. 398 (2013) ............................................................................................. 12

*Comm'n of Cal. v. FERC,*
236 F.3d 708 (D.C. Cir. 2001) ............................................................................. 18

*Common Cause v. Trump,*
506 F. Supp. 3d 39 (D.D.C. 2020) ....................................................................... 24

*Covey Run, LLC v. Washington Cap., LLC,*
245 F. Supp. 3d 9 (D.D.C. 2017) ........................................................................... 6

*Ctr. for Democracy & Tech. v. Trump,*
507 F. Supp. 3d 213 (D.D.C. 2020) ..................................................................... 13

*Cueto v. ICE*,
    584 F. Supp. 2d 147 (D.D.C. 2008) ................................................................. 18

*FEC v. Cent. L.I. Tax Reform Immediately Comm.*,
    616 F.2d 45 (2d Cir. 1980) ............................................................................. 19

*FEC v. Cruz*,
    596 U.S. 289 (2022) ....................................................................................... 12

*FEC v. DSCC*,
    454 U.S. 27 (1981) ......................................................................................... 21

*\*FEC v. NRA Pol. Victory Fund*,
    6 F.3d 821 (D.C. Cir. 1993) ..................................................................... 3, 21

*FEC v. NRA Pol. Victory Fund*,
    513 U.S. 88 (1994) ................................................................................... 21, 22

*Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs*,
    873 F. Supp. 2d 363 (D.D.C. 2012) ............................................................... 14

*\*Food & Drug Admin. v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) ......................................................................................... 9

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010) ....................................................................................... 15

*Harris v. Bessent*,
    --- F. Supp. 3d ---, 2025 WL 679303 (D.D.C. Mar. 4, 2025) ............................. 17

*\*HIAS, Inc. v. Trump*,
    985 F.3d 309 (4th Cir. 2021) ......................................................................... 20

*Janay v. Blinken*,
    743 F. Supp. 3d 96 (D.D.C. 2024) ........................................................... 6, 7, 8

*Jordan v. Fed. Bureau of Prisons*,
    No. 21-5217, 2024 WL 2932371 (D.C. Cir. June 11, 2024) ............................. 18

*\*Libertarian Nat'l Comm. v. FEC*,
    228 F. Supp. 3d 19 (D.D.C. 2017) ............................................................. 9, 10

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ....................................................................................... 6, 9

*Lutter v. JNESO,*
    86 F.4th 111 (3d Cir. 2023) ................................................................ 18

*Meyer v. Grant,*
    486 U.S. 414 (1988) ........................................................................... 11

*Missouri v. Biden,*
    558 F. Supp. 3d 754 (E.D. Mo. 2021) ................................................. 14

*Nat'l Black Police Ass'n v. Dist. of Columbia,*
    108 F.3d 346 (D.C. Cir. 1997) ............................................................ 18

*\*Nat'l Rifle Ass'n of Am. v. Vullo,*
    602 U.S. 175 (2024) ........................................................................... 10

*\*NRSC v. FEC,*
    712 F. Supp. 3d 1017 (S.D. Ohio 2024) ......................................... 9, 10

*Open Soc'y Just. Initiative v. Trump,*
    510 F. Supp. 3d 198 (S.D.N.Y. 2021) ................................................ 24

*Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n,*
    461 U.S. 190 (1983) ........................................................................... 14

*PFLAG, Inc. v. Trump,*
    --- F. Supp. 3d ---, 2025 WL 510050 (D. Md. Feb. 14, 2025) ........... 24

*Pub. Citizen v. Trump,*
    435 F. Supp. 3d 144 (D.D.C. 2019) .................................................... 13

*Save Jobs USA v. Dep't of Homeland Sec.,*
    942 F.3d 504 (D.C. Cir. 2019) ............................................................ 15

*Shays v. FEC,*
    414 F.3d 76 (D.C. Cir. 2005) .............................................................. 15

*Smith v. People of the State of Cal.,*
    361 U.S. 147 (1959) ........................................................................... 11

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ........................................................................... 11

*U.S. Air Tour Ass'n v. FAA,*
    298 F.3d 997 (D.C. Cir. 2002) ............................................................ 14

*United Presbyterian Church in the U.S.A. v. Reagan,*
    738 F.2d 1375 (D.C. Cir. 1984) ................................................................ 12, 13

*United States v. Carolene Prods. Co.,*
    304 U.S. 144 (1938) ................................................................................. 15

\*Wagner v. FEC,
    717 F.3d 1007 (D.C. Cir. 2013) ................................................................ 9, 10

\*Wannall v. Honeywell, Inc.,
    775 F.3d 425 (D.C. Cir. 2014) .......................................................... 2, 17, 18

**Constitutional Provisions & Statutes**

U.S. Const. art. II, § 3 ................................................................................... 22

8 U.S.C. § 1226a ........................................................................................... 20

26 U.S.C. § 9010(d) ...................................................................................... 4

26 U.S.C. § 9040(d) ...................................................................................... 4

52 U.S.C. § 30106 ................................................................................ *passim*

52 U.S.C. § 30107 ................................................................................ 3, 21, 23

52 U.S.C. § 30109 ........................................................................................ 21

52 U.S.C. § 30110 ................................................................................ *passim*

Bipartisan Campaign Reform Act of 2002, Pub. L. No. 107-155, 116 Stat. 81 (2002)................ 19

**Federal Rules**

Fed. R. Civ. P. 12 ........................................................................................ 6

**Other Authorities**

Exec. Order No. 14,215, *Ensuring Accountability for All Agencies,*
    90 Fed. Reg. 10447, 10448 (Feb. 18, 2025) .......................................... 1, 4, 5, 13

H.R. Rep. No. 94-917 (1976) ..................................................................... 3

## INTRODUCTION

More than 50 years ago, Congress designed the Federal Election Commission as an independent, bipartisan body to ensure that campaign finance rules could not be abused by partisan actors for partisan ends. Plaintiffs—the Democratic Party's national party committees—have relied on that independent, bipartisan structure for decades. Executive Order 14,215 obliterates that structure and, with it, Plaintiffs' ability to conduct their heavily regulated missions with the knowledge that they are overseen by a neutral regulator.

The Commission's motion to dismiss agrees with Plaintiffs that the Order cannot lawfully be applied to the FEC and argues that it should therefore be read to exempt the Commission. FEC Defs.' Mem. in Supp. of Mot. to Dismiss 23–31, ECF No. 26-1 ("FEC Mem."). But the President and Attorney General plow ahead, insisting that they are entitled to impose authoritative legal interpretations on the Commission. Trump & Bondi Mem. in Supp. of Mot. to Dismiss 12, ECF No. 17-1 ("Trump Mem."). And while both motions challenge standing, it does not require any guesswork to conclude that Plaintiffs—who form, collectively, the national Democratic Party— are presently injured by an Executive Order that requires the FEC, its Commissioners, and all its employees to abide by the legal opinions of the leader of the Republican Party. Plaintiffs are comprehensively regulated by the FEC, and being forced to operate in such an environment, with the attendant chill that the Executive Order places on Plaintiffs across their activities, is itself a concrete and ongoing injury under Article III.

President Trump and the Attorney General are wrong to argue that the Federal Election Campaign Act ("FECA") allows them to order the FEC to adopt particular legal interpretations. Commissioners cannot simultaneously comply with the Executive Order's directive that "no employee of the executive branch" may advance a legal interpretation that contravenes the President's opinion, Exec. Order No. 14,215 ("E.O. 14,215") § 7, *Ensuring Accountability for All*

1

*Agencies,* 90 Fed. Reg. 10447, 10448 (Feb. 18, 2025), and with FECA's mandate that Commissioners "may not delegate to any person his or her vote or any decisionmaking authority or duty vested in the Commission." 52 U.S.C. § 30106(c). FECA's entire purpose and structure—from bipartisanship and majority-vote requirements, to the authority for the FEC to litigate with its own lawyers and more—are inconsistent with the presidential control that the Executive Order imposes. President Trump's argument that he could have violated FECA even further, such as by revoking the FEC's factfinding functions as well, hardly helps matters. Count II of the Complaint therefore states a claim.

Count I is more complicated. It was premised on Plaintiffs' expectation that the President and Attorney General would defend the Executive Order by arguing, at least in the alternative, that any restriction on the President's authority to control the FEC is unconstitutional. But the President and Attorney General have waived any such argument, choosing to assert only a statutory construction defense of the Executive Order so that they may oppose certification to the *en banc* D.C. Circuit under 52 U.S.C. § 30110 on the ground that "[*n*]*one* of the parties before the Court has asserted that the FECA is unconstitutional." Trump Mem. 2; Trump & Bondi Mem. in Opp. to Pls.' Prelim. Inj. Mot. 19–22 & n.7, ECF No. 30; *see also Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014) ("[I]f a party files an opposition to a motion and therein addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded. . . . Such a concession 'acts as waiver[.]'" (quoting *Geller v. Randi*, 40 F.3d 1300, 1304 (D.C. Cir. 1994)). As long as the Court enforces that waiver, Plaintiffs agree that there is no live constitutional question for decision under Count I. If, however, the President and Attorney General will be allowed to argue in the alternative that FECA's protections of FEC independence are unconstitutional, then Count I states a claim for a declaratory judgment on that question, too.

# BACKGROUND

## I.    Federal Election Campaign Act

When Congress amended FECA after Watergate to strengthen federal campaign finance restrictions, it entrusted the administration and enforcement of those rules to the FEC, a newly created independent agency with a multi-member, bipartisan structure designed to insulate campaign finance regulation from elected officials' partisan control. *See generally* 52 U.S.C. §§ 30106, 30107. As the House Report accompanying the 1974 FECA amendments explained, Congress viewed it as "essential in this sensitive area [of campaign regulation] that the system of administration and enforcement enacted into law does not provide room for partisan misuse." H.R. Rep. No. 94-917, at 3 (1976).

By law today, the Commission is composed of six members appointed by the President, by and with the advice and consent of the Senate, no more than three of whom may be affiliated with the same political party. 52 U.S.C. § 30106(a)(1).[1] Commissioners must be chosen "on the basis of their experience, integrity, impartiality, and good judgment"; they may not be "elected or appointed officers or employees in the executive, legislative, or judicial branch of the Federal Government"; and they may not engage "in any other business, vocation, or employment." *Id.* § 30106(a)(3). Commissioners serve staggered six-year terms, and they choose from among their members a chairman and vice chairman who are not affiliated with the same political party. *Id.* § 30106(a)(2), (5). And to ensure that the FEC's decisions will reflect bipartisan consensus, FECA requires affirmative votes from at least four Commissioners to: (1) make, amend, or repeal rules, (2) approve enforcement actions, (3) initiate or defend the Commission in certain court actions,

---

[1] Legislative officers no longer serve as ex officio members of the Commission. *See FEC v. NRA Pol. Victory Fund*, 6 F.3d 821, 827 (D.C. Cir. 1993).

(4) issue advisory opinions, (5) develop forms, (6) conduct hearings and investigations, and (7) refer cases of apparent criminal conduct to law enforcement. *Id.* §§ 30106(c), 30107(a)(6)–(9), 30109(a).

Multiple provisions of FECA confirm that Commissioners must exercise independent judgment in carrying out their duties under the Act. FECA expressly provides that Commissioners "may not delegate to any person his or her vote or any decisionmaking authority or duty vested in the Commission by" FECA. *Id.* § 30106(c). The Commission appoints its own Staff Director and General Counsel, and each Commissioner is required to consider the views of the FEC's General Counsel before voting on whether there is probable cause to believe a person has violated FECA. *Id.* § 30109(a)(3). The Commission also has independent litigation authority: it "is authorized to appear in and defend against any action instituted under [the] Act" by employing or appointing its own counsel. *Id.* § 30106(f). Congress even authorized the Commission to "appeal from, and to petition the Supreme Court for certiorari to review," certain adverse judgments, 26 U.S.C. §§ 9010(d), 9040(d), a decision that the Department of Justice's Office of the Solicitor General would ordinarily control.

## II.    Executive Order 14,215

On February 18, 2025, President Trump issued Executive Order 14,215. Asserting that "[t]he Constitution vests all executive power in the President," the Executive Order criticizes "independent regulatory agencies" that "currently exercise substantial executive authority without sufficient accountability to the President." E.O. 14,215 § 1. Executive Order 14,215 insists that "these regulatory agencies have been permitted to promulgate significant regulations without review by the President" and that such "practices undermine . . . accountability[,] . . . prevent a unified and coherent execution of Federal law," and necessitate that their officers be "controlled" by the President. *Id.* The Executive Order declares that "it shall be the policy of the executive

4

branch to ensure Presidential supervision and control of the entire executive branch," including

independent agencies. *Id.*

 To accomplish this, Section 7 of the Executive Order proclaims:

> The President and the Attorney General's opinions on questions of law are controlling on all employees in the conduct of their official duties. No employee of the executive branch acting in their official capacity may advance an interpretation of the law as the position of the United States that contravenes the President or the Attorney General's opinion on a matter of law, including but not limited to the issuance of regulations, guidance, and positions advanced in litigation, unless authorized to do so by the President or in writing by the Attorney General.

*Id.* § 7. As applied to the FEC, this section of Executive Order 14,215 thus purports to preclude

the Commissioners and other FEC employees from advancing any legal positions contrary to those

of the President and Attorney General, on the ground that Article II requires the President to control

legal interpretations for the entire executive branch.

## III. Procedural Background

 Plaintiffs filed their Complaint on February 28, 2025. *See* Compl., ECF No. 1. Shortly

thereafter, Plaintiffs moved for a preliminary injunction, *see* ECF No. 12; that motion is now fully

briefed, *see* ECF No. 38. President Trump and Attorney General Bondi filed a motion to dismiss

on March 14, 2025. *See generally* Trump Mem. The FEC and the Commissioners filed a separate

motion to dismiss on March 21, 2025. *See generally* FEC Mem.

 Both motions seek dismissal for lack of standing and for failure to state a claim, and they

make similar arguments that Plaintiffs' claims are premature. But the similarity is only skin deep.

The two motions reflect a fundamental disagreement between President Trump and the FEC over

the extent to which the President is entitled to control the FEC. President Trump and the Attorney

General argue that the Executive Order is consistent with FECA because the President is entitled

to compel the Commission to follow his legal interpretations. Trump Mem. 12. The Commission,

in contrast, argues that compelling the Commission to follow the President's legal interpretations

would be so contrary to FECA that the Court should assume that the Executive Order claims no such power. FEC Mem. 23–31.

In compliance with the Court's March 27 Minute Order, this Memorandum in Opposition responds to both motions to dismiss.

## LEGAL STANDARD

A motion to dismiss for lack of standing may raise a facial or factual challenge. *Janay v. Blinken*, 743 F. Supp. 3d 96, 103 (D.D.C. 2024). Both motions are supported by no evidence, making them facial challenges, which "ask[] whether the complaint alleges facts sufficient to establish the court's jurisdiction." *Id.* "To survive a facial challenge to standing, the plaintiff must plausibly allege the 'three elements' that comprise the 'irreducible constitutional minimum of standing: injury in fact, causality, and redressability.'" *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "In this posture, the Court must accept the factual allegations of the complaint as true but must also assess the 'plausibility' of the plaintiff's standing allegations in light of the relevant context and the Court's 'judicial experience and common sense.'" *Id.* (quoting *Humane Soc'y v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015)) (citations omitted).

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), in contrast, 'tests the legal sufficiency of a complaint.'" *Id.* at 104 (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)). The "complaint must contain sufficient factual allegations that, if accepted as true, 'state a claim to relief that is plausible on its face.'" *Covey Run, LLC v. Washington Cap., LLC*, 245 F. Supp. 3d 9, 14 (D.D.C. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). But it "need not include 'detailed factual allegations,' and a plaintiff may survive a Rule 12(b)(6) motion even if 'recovery is very remote and unlikely,' so long as the facts alleged in the complaint are 'enough to raise a right to relief above the speculative level.'" *Janay*, 743 F. Supp. 3d at 104 (quoting *Twombly*, 550 U.S. at 555–56). "The Court may consider only the facts

6

contained within the four corners of the complaint, along with any documents attached to or incorporated into the complaint, matters of which the court may take judicial notice, and matters of public record." *Id.* (cleaned up).

## ARGUMENT

**I.    Plaintiffs' claims are justiciable.**

### A.    Plaintiffs have standing.

Plaintiffs have standing to challenge application of Section 7 of the Executive Order to the FEC because it injures Plaintiffs now.[2] Section 7 demolishes the guarantee of independent, bipartisan implementation at the core of FECA, the law that comprehensively regulates almost everything Plaintiffs do. Compl. ¶ 16; *see also* Amicus Br. of Ellen Weintraub 4–9, ECF No. 35-1 ("Weintraub Br."). By depriving Plaintiffs of many of the benefits of an independent FEC, the Executive Order harms Plaintiffs' core, constitutionally protected activities. With the Order outstanding, Plaintiffs must make strategic decisions knowing that the legal views of the leader of the opposing political party—instead of those of an independent bipartisan commission—will control in enforcing campaign finance laws against them.

The Order therefore places Plaintiffs at an immediate strategic disadvantage that will persist unless and until it is enjoined. Plaintiffs' mission-critical election activities are, and will continue to be, directly regulated by the FEC, even as the Executive Order seeks to transform the Commission into an extension of the White House Counsel's Office. Compl. ¶¶ 16, 46–50, 55–60. And as Plaintiffs have alleged, their "ability to conform their conduct to FECA—and to make

---

[2] Defendants' justiciability arguments in their motions to dismiss largely mirror their justiciability arguments in opposition to Plaintiffs' preliminary injunction motion, so the discussion in this section closely resembles the corresponding discussion in Plaintiffs' preliminary injunction reply, ECF No. 38, except that the discussion here focuses on the allegations in the Complaint instead of on the evidence offered with the preliminary injunction motion.

strategic decisions about whether, when, and how to request the Commission's interpretation of ambiguous statutory or regulatory provisions—require certainty that the Commission will not be controlled by the head of the opposing political party, with an incentive to construe legal provisions to disadvantage Democratic candidates and campaigns." *Id.* ¶ 16. In this way, Plaintiffs' "core activities rely on the fundamental premise that the FEC's decisions will be rendered by a bipartisan Commission" exercising independent judgment. *Id.* ¶ 57.

By negating the premise of independent FEC decisionmaking, the Order changes and impairs Plaintiffs' calculus in deciding, "for instance, whether or not to file a complaint with the Commission, what advertisements to air, or what strategy to recommend to campaigns regarding how to operate while also complying with the Commission's regulations." *Id.* It leaves Plaintiffs "chilled from seeking legal guidance from the FEC as long as it appears that the guidance will reflect the singular strategic aims of" President Trump, the leader of the Republican Party. *Id.* ¶ 70. It deprives DSCC of its right to fair proceedings before Commissioners exercising their independent judgment in a complaint currently pending against it, now that the President has claimed the authority to order the Commissioners to adopt his own construction of FECA. *Id.* ¶¶ 54, 59, 70. And it leaves Plaintiffs—repeat players before the FEC—unable to operate with the same reliance on bipartisan civil enforcement of FECA that has long framed their election-related efforts. *Id.* ¶¶ 46–50, 58–60.

Defendants argue—without evidentiary support—that the President and Attorney General have not yet taken further steps to enforce the Order against the FEC. *See* Trump Mem. 10–11; FEC Mem. 15. But that unsupported assertion of fact provides no valid basis for dismissal. *See Janay*, 743 F. Supp. 3d at 104. The Order facially covers the FEC, and nothing in the Order conditions Section 7's commands on other implementing acts or limits them to only some parts of

the Executive Branch. And despite the Commission's wishful thinking, FEC Mem. 24–27, President Trump and the Attorney General affirmatively argue that they are legally entitled to enforce Section 7 against the FEC, Trump Mem. 12–13. These arguments leave no room to doubt that Section 7 does just what it says, compelling the Commission to follow the President's and the Attorney General's legal positions over their own independent views.

Plaintiffs therefore satisfy each of the elements required to establish Article III standing. *See Lujan*, 504 U.S. at 560–61. They have suffered, and continue to suffer, a concrete and particularized injury that "directly affect[s] and interfere[s] with [their] core . . . activities." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024). The Executive Order initiates a "predictable chain of events leading from th[at] government action to the asserted injury." *Id.* at 385. And Plaintiffs' ongoing injury would be redressed by the requested relief, a declaration that FECA's requirement that the Commissioners exercise independent legal judgment is constitutionally valid, contrary to the Executive Order's proclamations, and an injunction prohibiting Defendants from complying with and enforcing the Order insofar as it conflicts with FECA. *See id.* at 380.

Defendants argue that Plaintiffs lack standing because the FEC has not yet taken any specific adverse actions against Plaintiffs as a result of the Executive Order. Trump Mem. 8–10; FEC Mem. 14–18. But the President and Attorney General acknowledge, as they must, that regulated parties have standing to challenge FECA's *prohibitions* as unconstitutional where the plaintiff wishes to engage in prohibited activities. Trump Mem. 8 (citing *Wagner v. FEC*, 717 F.3d 1007, 1008 (D.C. Cir. 2013), *Libertarian Nat'l Comm. v. FEC*, 228 F. Supp. 3d 19, 22 (D.D.C. 2017), and *NRSC v. FEC*, 712 F. Supp. 3d 1017, 1029 (S.D. Ohio 2024)). And that is so even though in those cases, too, the Commission had not yet taken concrete steps to enforce the

challenged prohibitions against the plaintiffs challenging them and might never have done so. In *NRSC v. FEC*, for example, then-Senator Vance had standing to challenge a restriction that caused his campaign to cooperate less closely with the Republican Party, even though no enforcement action had been taken against him. 712 F. Supp. 3d at 1024. Similarly, in *Wagner*, the plaintiffs were government contractors who "want[ed] to make political contributions for use in federal elections" but had not yet made them, much less faced punishment for doing so. *Wagner*, 717 F.3d at 1008–09; *see also Libertarian Nat'l Comm.*, 228 F. Supp. 3d at 19 ("Because Appellants declare that they would make political contributions but for" the prohibition they challenge, "they have Article III standing.").

The plaintiffs in those cases did not have to wait for an actual enforcement action to be brought against them before they could sue, and there is no reason to treat Plaintiffs' claims in this case any differently. Defendants' unsworn assurance that the President has not yet imposed any particular legal interpretation on the Commission does not and cannot alleviate Plaintiffs' ongoing injuries, because the Executive Order itself inflicts the chilling injury on Plaintiffs by threatening to compel the FEC to follow the President's legal interpretations. "[A] public-official defendant who threatens to employ coercive state power"—which is precisely what Executive Order 14,215 entails—violates Plaintiffs' rights "regardless of whether the threatened punishment comes in the form of the use (or, misuse) of the defendant's direct regulatory or decisionmaking authority over the plaintiff, or in some less-direct form." *Backpage.com, LLC v. Dart*, 807 F.3d 229, 230–31 (7th Cir. 2015) (quoting *Okwedy v. Molinari*, 333 F.3d 339, 344 (2d Cir. 2003) (per curiam)). And the Supreme Court has long recognized that a plausible threat of government enforcement, especially against an official's political rivals, inflicts a cognizable injury. *See Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 194 (2024) (recognizing that plausible allegations that government official

10

"threatened to wield her power against those refusing to aid her campaign to punish" plaintiff's advocacy stated a claim); *Smith v. People of the State of Cal.*, 361 U.S. 147, 153–54 (1959) (recognizing injury inflicted by "self-censorship, compelled by the State").

Plaintiffs therefore "have alleged a credible threat of [government] enforcement" of an Executive Order that tramples their rights to have campaign finance questions and disputes resolved by the consensus of a bipartisan commission, "amount[ing] to an Article III injury in fact." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161 (2014). The President could impose legal positions on the FEC tomorrow without contradicting a word of his brief, and he could do so in the context of backward-looking enforcement actions penalizing Plaintiffs for things they are doing today. While the Order remains outstanding, Plaintiffs must conduct their affairs in the knowledge that the Commission's legal interpretations will be "controlled by the head of the opposing political party, with an incentive to construe legal provisions to disadvantage Democratic candidates and campaigns." Compl. ¶ 16.

The resulting reasonable fear of retaliation has undermined Plaintiffs' ability to engage in "interactive communication[s] concerning political change." *Meyer v. Grant*, 486 U.S. 414, 421–22 (1988). And curtailing these communications puts Plaintiffs' ability to successfully solicit funds at risk, further threatening their core political speech. *Carey v. FEC*, 791 F. Supp. 2d 121, 133 (D.D.C. 2011). Stifling such speech "runs contrary to the entire history of First Amendment jurisprudence in this country." *Id.* at 132–33; *cf. Citizens United v. FEC*, 558 U.S. 310, 324 (2010) ("The First Amendment does not permit laws that force speakers to retain a campaign finance attorney, conduct demographic marketing research, or seek declaratory rulings before discussing the most salient political issues of our day.").

Contrary to Defendants' arguments, this case is very different from *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013). *Contra* Trump Mem. 9–11; FEC Mem. 17–18. The plaintiffs in *Clapper* claimed standing based on their belief "that their communications with their foreign contacts [would] be intercepted . . . at some point in the future." 568 U.S. at 410. In response to that belief, the *Clapper* plaintiffs voluntarily "t[ook] costly and burdensome measures" that they said were necessary "to protect the confidentiality of their international communications." *Id.* at 402. But the Supreme Court held that the fear of interception was too speculative to justify those measures, because the plaintiffs "could not show that they had been or were likely to be subjected to that policy in any event." *FEC v. Cruz*, 596 U.S. 289, 297 (2022) (citing *Clapper*, 568 U.S. at 402, 416). And their claimed injury relied upon a series of contingencies conditional on the collapse of guardrails against improper surveillance. *Clapper*, 568 U.S. at 402, 410.

Here, in contrast, the harm that Plaintiffs fear is the direct result of applying Section 7 to the FEC. And such application is not speculative: the only reason for the President to include the FEC within the scope of Section 7 and to defend that inclusion before this Court, Trump Mem. 12–13, is if the President intends to impose binding legal determinations on the Commission. And when he does so, Plaintiffs—national party committees of the political party opposed to the President—are precisely the entities who are most likely to be targeted.

This case is also very different from *United Presbyterian Church in the U.S.A. v. Reagan*, where the D.C. Circuit held that the plaintiffs—congressmen, religious and political organizations, journalists, academics, and politically active individuals—lacked standing to challenge an executive order establishing a framework for governmental and military intelligence-gathering functions. 738 F.2d 1375, 1380–81 (D.C. Cir. 1984). There, "no part of the challenged scheme impose[d] or even relate[d] to any direct governmental constraint upon the plaintiffs," and the

12

corresponding "subjective chill" on their rights could not satisfy Article III's requirements. *Id.* at 1379–80. As the court emphasized, the executive order at issue did not itself "*direct* intelligence-gathering activities against all persons who could conceivably come within its scope, but merely *authorize[d]* them," and thus the plaintiffs instead could "challenge any illegal surveillance of them when (and if) it occurs." *Id.* at 1380 (emphasis in original). Similarly, *Center for Democracy & Technology v. Trump* involved an executive order that directed agencies to "file *a petition* for rulemaking requesting that the FCC expeditiously *propose* regulations, to *review* Federal spending, to *consider* taking action, to *consider* developing a report, to establish a *working group*, and to develop a *proposal* for Federal legislation." 507 F. Supp. 3d 213, 222 (D.D.C. 2020) (cleaned up and emphases in original). And the same goes for the executive order at issue in *Public Citizen v. Trump*, where the court dismissed plaintiffs' claims for lack of jurisdiction because "there is no telling when" the underlying rulemaking at issue would conclude and if, "as a result . . . even in the absence of the Executive Order, the rule would be in place in time to benefit" the plaintiffs' members. 435 F. Supp. 3d 144, 155 (D.D.C. 2019).

Unlike the executive orders in those cases, Executive Order 14,215 itself *requires* the FEC, its Commissioners, and their employees to abide by any and all legal opinions of the President and Attorney General. The Order commands adherence to President Trump's "authoritative interpretations of law," provides that President Trump's "opinions on questions of law are controlling on all employees in the conduct of their official duties," and prevents any FEC employee from "advanc[ing] an interpretation of the law as the position of the United States that contravenes the President or the Attorney General's opinion on a matter of law." E.O. 14,215 § 7. In so doing, the Executive Order empowers the President and Attorney General to personally

dictate how Plaintiffs are regulated by campaign finance laws, and it thereby inflicts a concrete injury now that confers standing.

### B.    Plaintiffs' claims are ripe.

The FEC (but not President Trump and the Attorney General) also argues that Plaintiffs' claims are not ripe because the Commission has not yet had an "'opportunity to . . . apply its expertise' in implementing the Executive Order consistent with FECA." FEC Mem. 18 (quoting *Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs*, 873 F. Supp. 2d 363, 369 (D.D.C. 2012)). The Court should reject this argument. The lawfulness of applying the Executive Order to the FEC is a "purely legal issue," which reduces ripeness concerns. *U.S. Air Tour Ass'n v. FAA*, 298 F.3d 997, 1014 (D.C. Cir. 2002). And the Commission will *never* have the opportunity to "apply its expertise" in implementing the Executive Order, FEC Mem. 18, because the Executive Order compels the Commissioners to parrot President Trump's legal positions and prohibits them from advancing contrary positions of their own. Moreover, contrary to the Commission's argument, FEC Mem. 19, withholding adjudication until the Commission takes enforcement action against Plaintiffs would severely harm Plaintiffs, because Plaintiffs' constitutionally protected political activities are already being affected and chilled by President Trump's assertion of absolute authority over the Commission's legal positions. *See supra* Section I.A.

The ripeness cases the Commission cites are also distinguishable. Unlike *Missouri v. Biden*, 558 F. Supp. 3d 754, 770 (E.D. Mo. 2021), this case does not involve fears about not-yet-issued regulations that will govern future conduct, but rather involves the effect of the already-issued executive order on the day-to-day decisions that Plaintiffs have no choice but to make *now*. Courts routinely hold that disputes are ripe under similar circumstances. *See, e.g.*, *Pac. Gas & Elec. Co. v. State Energy Res. Conserv. & Dev. Comm'n*, 461 U.S. 190, 201 (1983) (holding dispute ripe where the plaintiffs needed to make decisions about constructing nuclear plants that would be

affected by the challenged law and to "require the industry to proceed without knowing whether the moratorium . . . is valid would impose a palpable and considerable hardship on the[m]"); *Chamber of Com. of U.S. v. Reich*, 57 F.3d 1099, 1101 (D.C. Cir. 1995) (per curiam) (explaining that the "choice[] between taking immediate action to [employers'] detriment and risking substantial future penalties for non-compliance[] presents a paradigm case of 'hardship'" favoring immediate review). And that is all the more so where, as here, Plaintiffs' argument is that any subsequent proceeding would be rendered unlawful by the very claim of presidential authority that they challenge. *See Axon Enterp., Inc. v. FTC*, 598 U.S. 175, 191 (2023) (holding plaintiffs need not await adverse agency decision where they challenged "an illegitimate decisionmaker"); *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 490–91 (2010) (holding plaintiffs need not "bet the farm" to incur an injury before challenging agency structure, nor must they await agency adjudication of a dispute about the agency's powers (quotation omitted)).

The injury that Executive Order 14,215 inflicts on Plaintiffs directly undermines the very foundation of our constitutional order: protection against government suppression of speech, competition, and opposition. *Cf. United States v. Carolene Prods. Co.*, 304 U.S. 144, 153 n.4 (1938) (recognizing heightened need for judicial intervention where ordinary political processes are restricted, including by "interference[] with political organizations"); *Save Jobs USA v. Dep't of Homeland Sec.*, 942 F.3d 504, 508–09 (D.C. Cir. 2019) ("when regulations illegally structure a competitive environment—whether an agency proceeding, a market, or a reelection race—parties defending concrete interests in that environment suffer legal harm under Article III" (quotation omitted)); *Shays v. FEC*, 414 F.3d 76, 86 (D.C. Cir. 2005) (finding injury-in-fact where government action "fundamentally alter[s] the environment in which rival parties defend their concrete interests (e.g., their interest in . . . winning []election[s])"). Plaintiffs' election-related

activities are now regulated by the head of their rival political party, in direct contravention of Congress's decision to insulate that regulation from the President. This direct injury both confers standing and presents a ripe issue fit for adjudication now.

## II.    Both counts of the Complaint state claims for relief.

In addition to challenging justiciability, both sets of Defendants argue that the Complaint fails to state a claim for which relief can be granted. But while their arguments for dismissal may seem similar on the surface, they are directly contradictory where it matters. President Trump and the Attorney General argue that the Executive Order is lawful because FECA allows the President to control the FEC's legal positions, Trump Mem. 12–13, while the Commission argues that the Executive Order is lawful because it does not and cannot claim such power, FEC Mem. 24–31. The Commission's position would be fine with Plaintiffs, whose only goal is to preserve the FEC's independence. But the President who signed the Executive Order rejects the FEC's reading, and Plaintiffs have stated a claim that the President's reading is contrary to law.

### A.    Count I would state a claim if the President and Attorney General had not waived their constitutional arguments.

Count I of the Complaint seeks a declaratory judgment that FECA's protection of the FEC's independent authority to decide questions of law in carrying out its statutory duties is consistent with Article II of the Constitution, and that Section 7 of the Executive Order is therefore unlawful as applied to the Commission. Compl. ¶¶ 62–73. The Commission—but not President Trump and the Attorney General—argues that Count I fails because there is no adversity between the parties over FECA's constitutionality and because the claim falls outside of § 30110's scope. *See* FEC Mem. 19–23.[3]

---

[3] President Trump and the Attorney General do not challenge Count I on the merits at all. *See generally* Trump Mem.

In one respect, Plaintiffs agree with the Commission. Plaintiffs expected a constitutional dispute when they filed the Complaint, because the Executive Order expressly grounds its unprecedented assertion of authority over independent agencies in claims of extraordinarily broad presidential power under Article II, *see* E.O. 14,215 § 1, and because the President has made other aggressive arguments that statutory restrictions on his authority over independent agencies violate Article II, *see, e.g.*, *Harris v. Bessent*, --- F. Supp. 3d ----, 2025 WL 679303 (D.D.C. Mar. 4), *stay pending appeal granted*, No. 25-5037 (D.C. Cir. Mar. 28, 2025). But the expected constitutional arguments have not come. The President and Attorney General's motion to dismiss makes only the statutory argument that FECA does not protect the FEC's right to make independent legal determinations, while emphasizing that no one "has asserted that the FECA is unconstitutional." Trump Mem. 12–13. And while Plaintiffs' preliminary injunction motion defended FECA's constitutionality at length, *see* Pls.' Mem. in Supp. of Mot. for Prelim. Inj. 11–16, ECF No. 12-1, the President and Attorney General relied exclusively on their statutory argument in response, Trump & Bondi Mem. in Opp. to Pls.' Prelim. Inj. Mot. 19–22 & n.7, ECF No. 30. The President and Attorney General then opposed certification to the D.C. Circuit under 52 U.S.C. § 30110 because "no Defendant is arguing that FECA is unconstitutional." *Id.* at 16.

By taking this approach, the President and Attorney General have waived any constitutional challenge to FECA. When a party opposing a motion "addresses only some of the movant's arguments, the court may treat the unaddressed arguments as conceded," which "acts as [a] waiver." *Wannall*, 775 F.3d at 428 (quoting *Geller*, 40 F.3d at 1304). This rule is fully applicable when a party's failure to respond to other arguments was a choice made "as part of [their] litigation strategy," to avoid undermining some other argument. *Id.* And that is just what happened here. Eager to avoid certification to the *en banc* D.C. Circuit under 52 U.S.C. § 30110,

the President and Attorney General opted not to make the "contingent argument" that FECA is unconstitutional if it protects the FEC's independent legal judgment. *Id.* The Court should hold them to that strategic choice.

If the Court agrees that any constitutional challenge to FECA has been waived, then Plaintiffs agree with the FEC that there is no live dispute for the Court to resolve under Count I and the Court can move on to Count II. If, however, the Court will allow the President and the Attorney General to defend the Executive Order by arguing later in this proceeding that FECA's independence provisions are unconstitutional, then Count I states a valid claim over which this Court has jurisdiction. The Commission's argument that there is no adversity on this issue, FEC Mem. 20–21, presupposes that the President and Attorney General will not be allowed to raise constitutional arguments later. And regardless, identifying adversity and avoiding advisory opinions is the purpose of the standing, ripeness, and mootness doctrines. *See, e.g.*, *Jordan v. Fed. Bureau of Prisons*, No. 21-5217, 2024 WL 2932371 (D.C. Cir. June 11, 2024) (per curiam) (standing); *Lutter v. JNESO*, 86 F.4th 111, 123 & n.6 (3d Cir. 2023) (standing); *Pub. Utils. Comm'n of Cal. v. FERC*, 236 F.3d 708, 714 (D.C. Cir. 2001) (mootness); *Nat'l Black Police Ass'n v. Dist. of Columbia*, 108 F.3d 346, 349 (D.C. Cir. 1997) (mootness); *Cueto v. ICE*, 584 F. Supp. 2d 147, 149 (D.D.C. 2008) (mootness). The Commission does not cite any case adopting "adversity" as a standalone requirement, and it is not.

The Commission also argues that Plaintiffs' claim falls outside § 30110 because there is no "live question as to [FECA's] meaning" or constitutionality, only a question about the meaning of the Executive Order. FEC Mem. 23. But that is just not so. The constitutional question which Plaintiffs ask the court to "construe" under § 30110 is whether the FECA provisions making the FEC independent of presidential control, which the Executive Order violates, are themselves

constitutionally valid. That question falls directly within § 30110's broad language authorizing actions to "construe the constitutionality of" FECA provisions, in sharp contrast to the similar judicial review provision in the Bipartisan Campaign Reform Act of 2002, Pub. L. No. 107-155, 116 Stat. 81 (2002), which is limited to actions "to *challenge* the constitutionality of any provision of this Act." 52 U.S.C. § 30110 note (emphasis added). Nothing about § 30110's broad language limits it in the way the Commission suggests. And the fact that there is a prior question of statutory interpretation is not a barrier to certification. Rather, courts hearing claims under § 30110 have made clear that they are free to "first constru[e] the statutes under constitutional attack to determine whether they apply." *FEC v. Cent. L.I. Tax Reform Immediately Comm.*, 616 F.2d 45, 52 (2d Cir. 1980) (en banc) (per curiam).

Had the President and Attorney General not waived any constitutional challenge to the relevant provisions, Count I would therefore state a claim for relief.

### B.    Count II states a claim for equitable relief.

Count II also states a valid claim. The two sets of Defendants move to dismiss Count II on directly conflicting grounds. President Trump contends that nothing in FECA prevents him from issuing authoritative legal interpretations of the Act that bind the Commissioners in the course of their duties. *See* Trump Mem. 12–13. The FEC, conversely, insists that because FECA *does* preserve the Commissioners' independence, the Executive Order should be read so as not to encompass such a power. Plaintiffs have no objection to the FEC's approach, but given that the President and Attorney General disagree, it provides no basis for dismissing Plaintiffs' claim.

### 1.    Contrary to the President and Attorney General's arguments, FECA protects the FEC's independence.

The President and the Attorney General address the merits of Count II only briefly, Trump Mem. 11–13, and each of their arguments fails. They argue that no provision of FECA explicitly

prohibits "the President or Attorney General from promulgating authoritative legal interpretations." *Id.* at 12. But FECA expressly forecloses the Executive Order's approach of requiring Commissioners to defer completely to the President's and Attorney General's legal views. In particular, FECA bars Commissioners from "delegat[ing] to any person . . . any decisionmaking authority or duty vested in the Commission." 52 U.S.C. § 30106(c). A Commissioner who follows the Executive Order and makes decisions based on the President's or Attorney General's legal position instead of reaching his own conclusions does precisely what that provision prohibits. President Trump and the Attorney General's analogy to an immigration law provision, *see* Trump Mem. 13 (citing 8 U.S.C. § 1226a(a)(3)), does not suggest anything different. That statute requires the "Attorney General" to make a particular determination and authorizes delegation "only to the Deputy Attorney General." 8 U.S.C. § 1226a(a)(3). President Trump and the Attorney General assume that the President could make the determination instead, but they cite no authority supporting that assumption, and the statute's plain text precludes it, just as FECA's plain text precludes application of Section 7 of the Executive Order to the Commission.

In any event, executive orders are unlawful and properly enjoined not only if they directly contradict an express statutory provision, but also if they are "incompatible with the overall statutory scheme governing" a particular issue. *HIAS, Inc. v. Trump*, 985 F.3d 309, 325 (4th Cir. 2021) (quoting *Kouambo v. Barr*, 943 F.3d 205, 213 (4th Cir. 2019)) (affirming injunction against executive order that was inconsistent with the statutory scheme governing refugee settlement, even though it did not contradict any one provision). That is the case here. FECA's purpose and structure are deeply inconsistent with the President's claimed power to control the Commission's legal decision-making, as Plaintiffs, Commissioner Weintraub, and *even the FEC* have all shown. *See*

Pls.' Mem. in Supp. of Mot. for Prelim. Inj. 4–6, 9–11, ECF No. 12-1; Weintraub Br. 4–11; FEC

Mem. 25–26.

Take, for example, FECA's requirements that the FEC be led by six Commissioners, with

no more than three affiliated with the same political party, and with the agreement of four

Commissioners required for any substantive action. *See* 52 U.S.C. §§ 30106, 30107, 30109. The

Executive Order is impossible to square with those requirements. Many of the substantive actions

within the FEC's purview require legal interpretation—from making rules to initiating court

actions to issuing advisory opinions. *See id.* §§ 30106(c), 30107(a)(6)–(9), 30109(a). And it would

make no sense to require a legal interpretation to be supported by four different Commissioners if

the President can command all six to adopt it, and prohibit them from articulating any inconsistent

view. Nor would it make sense to condition all FEC action on the consent of at least one

Commissioner who is not affiliated with the President's political party if all Commissioners are

equally bound by the President's legal positions. Courts have recognized time and again that the

FEC is the quintessential independent agency. *See, e.g.*, *FEC v. NRA Pol. Victory Fund*, 513 U.S.

88, 94 (1994); *FEC v. DSCC*, 454 U.S. 27, 37 (1981); *Buckley v. Valeo*, 424 U.S. 1, 141 (1976);

*NRA Pol. Victory Fund*, 6 F.3d at 826. Such independence is inherently incompatible with the

Executive Order's command that Commissioners substitute the President's legal judgment for their

own.

That does not mean, as the President and Attorney General put it, that FECA "preclude[s]

a role of the President or Attorney General in administering the election laws." Trump Mem. 12.

Plaintiffs have never asserted that "the President must have no say" in campaign finance

regulation. *Contra id.* at 13. The President and only the President, *see NRA Pol. Victory Fund*, 6

F.3d at 827, may choose the Commissioners who comprise the FEC's leadership, subject to the

Senate's advice and consent, *see* 52 U.S.C. § 30106(a)(1). The President may, through the Solicitor General, choose whether and how to represent the FEC in certain Supreme Court matters. *See NRA Pol. Victory Fund*, 513 U.S. at 96. And the President may share with the public and with Congress his views on statutory ambiguities or opportunities for reform as part of the regular political process. *See, e.g.*, U.S. Const. art. II, § 3. What the President may not do is to overrule the Commissioners' independent legal judgment and command them to follow his interpretations instead, as the Executive Order does. To do so is to usurp decision-making functions that FECA assigns to the Commissioners alone, an assignment that is "essential to effective and impartial administration of the entire substantive framework of [FECA]." *Buckley*, 424 U.S. at 141.

The fact that the Executive Order does not *entirely* obliterate the Commission's authority because it does not also seek to requisition for the President and Attorney General the Commission's factfinding function does not resolve matters. Trump Mem. 12. The attack on the Commissioners' independent legal judgment remains. And that independent legal judgment is extraordinarily important: many matters in front of the FEC are predominantly or entirely legal. In the FEC complaint pending against DSCC, for example, the underlying facts are largely undisputed, so the legal interpretation of the relevant FECA provisions will be dispositive. *See* Compl. ¶¶ 7, 51–54. By seizing for himself the authority to issue that interpretation, President Trump has divested Commissioners of core statutory duties. That the President and Attorney General need not weigh in on every issue before the Commission does not help either. Trump Mem. 12. Even occasional enforcement of the unlawful Executive Order against the FEC will harm Plaintiffs, and the threat of such enforcement is injuring them already. *See supra* Part I. Because FECA squarely forbids President Trump and the Attorney General from doing so, their motion to dismiss should be denied.

## 2.    The FEC's arguments do not support dismissal of Count II.

The FEC's motion takes exactly the opposite position from the President and Attorney General—it argues that Section 7 of the Executive Order does not apply to the FEC at all. To reach this conclusion, the Commission relies almost entirely on Section 8(c) of the Executive Order, *see* FEC Mem. 23–31, which states that "[t]his order shall be implemented consistent with applicable law and subject to the availability of appropriations," E.O. 14,215 § 8(c).

In making this argument, the Commission agrees with Plaintiffs that FECA guarantees the FEC's independence, and that applying Section 7 to the Commission would violate those guarantees. FEC Mem. 23–31. It correctly notes that "FECA vests the Commission with '*exclusive jurisdiction*' to administer, *interpret*, and civilly enforce the Act," and authorizes it "to perform a variety of rulemaking and enforcement functions." *Id*. at 25 (citing 52 U.S.C. §§ 30106, 30107) (emphasis added). And it emphasizes that "FECA adopted a unique structure to ensure that the Commission remained nonpartisan in action and decisions," specifically through the rules for its composition and through the four-vote requirement to initiate "enforcement investigations and proceedings, advisory opinions, rulemakings, and litigation," which "prevents these tools from being exercised in a partisan manner." *Id.* at 25–26. So far, so good—Plaintiffs agree.

The FEC then argues that because application of Section 7 to the Commission would violate these provisions of FECA, the Court should assume that the Executive Order will not be applied to the FEC due to Section 8(c). *Id.* But executive orders almost always include language requiring implementation "consistent with applicable law," and courts routinely reject arguments like the FEC's. To accept such an argument "would simply lead [the Court] into an intellectual cul-de-sac." *City & Cnty. of S.F. v. Trump*, 897 F.3d 1225, 1240 (9th Cir. 2018). That is, if Executive Order 14,215's proclamation that it is "'consistent with law' precludes a court from examining whether the Executive Order is consistent with law, judicial review is a meaningless

exercise, precluding resolution of the critical legal issues." *Id.*; *see also PFLAG, Inc. v. Trump*, --- F. Supp. 3d ----, 2025 WL 510050, at *15 (D. Md. Feb. 14, 2025) (citation omitted) (noting that "courts have repeatedly rejected the argument that simply including 'consistent with applicable law' or a similar boilerplate phrase" inoculates an unlawful executive order from judicial review).

Moreover, whatever merit the FEC's Section 8(c) argument might have in a vacuum, it has none at all in the face of President Trump and the Attorney General's directly contrary argument that FECA does *not* prevent the application of Section 7 to the Commission. President Trump and the Attorney General are the ones who will carry out Section 7, by providing "authoritative interpretations of law" and deciding when to authorize deviations from those interpretations. Unlike in the cases the FEC cites, there is therefore no "open question" as to what "interpretation" the President will adopt of the Order, *Open Soc'y Just. Initiative v. Trump*, 510 F. Supp. 3d 198, 216 (S.D.N.Y. 2021), and there is much more than a "mere possibility that [the President] might make a legally suspect decision," *Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002). *See also Common Cause v. Trump*, 506 F. Supp. 3d 39, 41, 47 (D.D.C. 2020) (case not ripe where court did not "know which aliens the Secretary will propose excluding from the apportionment base" in response to presidential memorandum). The President has already foreclosed the interpretation that the Commission favors, in this very case, by arguing that nothing in FECA prohibits him "from promulgating authoritative legal interpretations" of the Act that the Commissioners must follow. Trump Mem. 12–13.

Thus, because the President and Attorney General reject, in this case, the potentially lawful interpretation of the Executive Order that the FEC says the Court should assume will control, the FEC's argument provides no basis for dismissing Count II.

**CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' motions to dismiss.


Dated: April 2, 2025                    Respectfully submitted,

                                        */s/ Marc E. Elias*

                                        **ELIAS LAW GROUP LLP**
                                        Marc E. Elias (DC 442007)
                                        David R. Fox (DC 1015031)
                                        Jacob D. Shelly (DC 90010127)
                                        Robert Golan-Vilella (DC 1724616)
                                        Omeed Alerasool (DC 90006578)
                                        Julie Zuckerbrod (DC 1781133)
                                        250 Massachusetts Ave. NW, Suite 400
                                        Washington, DC 20001
                                        T: (202) 968-4652

*Counsel for Plaintiffs Democratic National Committee, DSCC, and DCCC*