UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEMOCRATIC NATIONAL COMMITTEE, <br><br> DSCC, <br><br> *and* <br><br> DCCC, <br><br>     Plaintiffs, <br><br>   v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, <br><br> PAMELA BONDI, in her official capacity as U.S. Attorney General, <br><br> FEDERAL ELECTION COMMISSION, <br><br> And <br><br> JAMES E. TRAINOR III, SHANA M. BROUSSARD, ALLEN DICKERSON, and DARA LINDENBAUM, in their official capacities as Commissioners of the Federal Election Commission, <br><br>     Defendants. | Civil Action No. 25-587 (AHA) |

**REPLY MEMORANDUM OF DEFENDANTS DONALD J. TRUMP AND PAMELA BONDI IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT**

## INTRODUCTION

In this case, Plaintiffs ask this Court to settle an imagined controversy regarding imagined future government actions and an imagined conflict between an Executive Order[1] and a federal statute, the Federal Election Campaign Act (FECA). But their request for such an advisory opinion neither satisfies Article III's requirement of a case or controversy nor states a claim for relief.

In opposing the Motion to Dismiss of President Trump and Attorney General Bondi,[2] Plaintiffs argue that they fear that the President and Attorney General will issue a legal opinion on some unspecified topic that will contravene Plaintiffs' position in some unspecified future matter they may have before the Federal Election Commission (FEC), and this will lead the FEC to take some unspecified future action against them.[3] But as they do not and cannot dispute, they have not alleged that any of these contingencies have occurred. Well established case law, which Plaintiffs unpersuasively attempt to distinguish, shows that such speculation about potential future harm is insufficient for standing. Nor can Plaintiffs manufacture standing by choosing to harm themselves by refraining from campaign activity based on their speculative fears of future injury.

Plaintiffs' Opposition also confirms that Count II, which seeks to enjoin Defendants from purportedly violating the FECA through the Executive Order, fails to state a claim. Plaintiffs' attempts to conjure a conflict between the statute and Executive Order rest on misreadings of the statute, no provision of which precludes the FEC or its Commissioners from taking into account the legal views of the President or Attorney General.

---

[1] Executive Order 14,215, *Ensuring Accountability for All Agencies*, 90 Fed. Reg. 10447 (Feb. 18, 2025) ("Executive Order" or "E.O. 14,215").
[2] Mot. to Dismiss the Compl., ECF No. 17; Mem. in Supp. of Mot. to Dismiss the Compl., ECF No. 17-1 ("Mem.").
[3] *See generally* Pls'. Consol. Mem. in Opp'n to Defs.' Mots. to Dismiss, ECF No. 39 ("Opp'n").

1

**ARGUMENT**

I.  **Plaintiffs Fail to Plead a Plausible Basis for Standing**

As Defendants explained, Plaintiffs have failed to plead a plausible basis for standing because their theory of injury rests on a speculative chain of contingencies about future legal opinions and regulatory actions that have not occurred and may never occur. Mem. 7-11. Plaintiffs' Opposition is most notable for what it does not dispute. Plaintiffs do not dispute that they do not allege that the President or Attorney General have issued any legal opinions on issues implicating the FEC, let alone on issues implicating matters Plaintiffs have before the FEC. Mem. 9-10.[4] Plaintiffs do not dispute that they do not allege that the FEC has taken or refrained from taking any action because of the Executive Order. Mem. 2. And they do not dispute that although they claim to fear hypothetical future actions by the FEC, they identify no specific matter before the FEC where they contend that the Executive Order will result in an adverse decision. *Id.* at 10. Therefore, it is clear that their claimed injury rests on "the possibility of potentially adverse regulation," but "Article III standing requires more." *Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1324-25 (D.C. Cir. 2013).

Plaintiffs' contrary arguments are unpersuasive. Plaintiffs argue that their claimed injury is concrete because the Executive Order "compel[s] the Commission to follow the President's and the Attorney General's legal positions." Opp'n 9. But while the Executive Order states that "[t]he President and the Attorney General's opinions on questions of law are controlling," E.O. 14,215 § 7, it does not obligate the President or Attorney General to provide such legal opinions on any

---

[4] Plaintiffs argue that there is no "evidentiary support" for the assertion "that the President and Attorney General have not yet taken further steps to enforce the Order against the FEC." Opp'n 8. But as Plaintiffs acknowledge, a facial challenge to subject-matter jurisdiction rests on the sufficiency of the allegations in the Complaint. *Id.* at 6. And Plaintiffs do not dispute that the Complaint does not *allege* that the President or Attorney General have taken any such action.

2

or every issue that comes before the Executive Branch. And Plaintiffs do not allege that the President or Attorney General have issued any legal opinions affecting administration of the FECA, let alone one that affects Plaintiffs' specific interests.

Plaintiffs attempt to analogize their case to cases in which plaintiffs subject to specific prohibitions in the FECA had standing to raise constitutional challenges to those prohibitions, Opp'n 9-10, but this analogy falls apart upon scrutiny. Those cases support standing where a plaintiff imminently wishes to take concrete actions that are prohibited by provisions of the FECA. *See*, *e.g.*, *Wagner v. FEC*, 717 F.3d 1007, 1008-09 (D.C. Cir. 2013) (plaintiffs wanted to make political contributions prohibited by the FECA); *NRSC v. FEC*, 712 F. Supp. 3d 1017, 1020, 1029 (S.D. Ohio 2024) (then-Senator Vance wished to make campaign expenditures above limits set by the FECA); *Libertarian Nat'l Comm. v. FEC*, 228 F. Supp. 3d 19, 21 (D.D.C. 2017) (plaintiff political committee wanted to accept a bequest that the FECA prohibited it from accepting in full). But here, Plaintiffs do not argue that there is any provision of the FECA or any FEC order on the books that prohibits them from doing anything they want to do. Plaintiffs merely speculate that the President or Attorney General will issue legal opinions in the future on unspecified issues that will lead the FEC to take unspecified actions that will harm the Plaintiffs in unspecified matters. The chain of events leading to potential harm has many more links than cases in which a plaintiff imminently wishes to violate an operative statutory provision of the FECA.

Plaintiffs protest, however, that a "plausible threat of government enforcement" can suffice for Article III standing. Opp'n 10. That is true up to a point, but only "if the threatened injury is 'certainly impending,' or there is a '"substantial risk"' that the harm will occur.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414 n.5 (2013)). In the cases cited by Plaintiffs finding a sufficient threat of future

3

enforcement, the government had taken past concrete actions substantiating such a threat, such as issuing a letter and press release threatening adverse action, *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 192-94 (2024), enforcing the statute at issue against the plaintiff in the recent past, *Susan B. Anthony List*, 573 U.S. at 153-55, or charging and convicting the appellant of violating the statute, *Smith v. People of the State of Cal.*, 361 U.S. 147, 148-49 (1959). Plaintiffs point to nothing remotely similar here.

As Defendants showed, case law supports the commonsense conclusion that speculation that agencies will implement an executive order in a manner unfavorable to plaintiffs is insufficient to show a concrete injury in fact. Mem. 9-10. Plaintiffs' attempts to distinguish these cases are unpersuasive. *United Presbyterian Church in the U.S.A. v. Reagan*, 738 F.2d 1375 (D.C. Cir. 1984) (Scalia, J.), where the D.C. Circuit rejected standing based on a theory that an agency could implement an executive order in a way that harmed plaintiffs, is directly on point. Plaintiffs argue that this case is distinguishable because the executive order did not itself direct activities against the plaintiffs, and the plaintiffs could challenge any future adverse agency action if and when it occurred. Opp'n 12-13 (citing *United Presbyterian Church*, 738 F.2d at 1379-80). The same is true here. This Executive Order, which applies only to federal employees and officials, does not direct anyone to take any action against the Plaintiffs or any regulated party. That is, Plaintiffs "[are] not [them]sel[ves] the object of the" Executive Order, which makes standing "'substantially more difficult' to establish." *Lujan v. Defs. of Wildlife*, 504 U.S. 552, 562 (1992)) (quoting *Allen v. Wright*, 468 U.S. 737, 758 (1984)). And if the FEC later takes some hypothetical future action that aggrieves Plaintiffs, they could then seek judicial review of such an action.

This Court's decision in *Center for Democracy & Technology v. Trump*, 507 F. Supp. 3d 213 (D.D.C. 2020), *vacated as moot sub nom. Center for Democracy & Technology v. Biden*, No.

4

21-5062, 2021 WL 11659822 (D.C. Cir. Aug. 9, 2021), is likewise on point. Plaintiffs argue that the chain of contingencies leading to future harm was more speculative in that case than here, Opp'n 13, but the reverse is true. In that case, an executive order required a specific official (the Secretary of Commerce) to file a petition for rulemaking before a specific agency (the Federal Communications Commission) on a specific topic (Section 230 of the Communications Decency Act) within a specific time frame (60 days). *Id.* at 216-17 (citing Exec. Order No. 13,925, 85 Fed. Reg. 34,079 (May 28, 2020)). Even then, the possibility of future harm was insufficient for standing: "the government might issue regulations that CDT does not like. But it is just as possible that it will not. 'Article III standing requires more than *the possibility* of potentially adverse regulation.'" *See id.* at 223 (quoting *Perciasepe*, 714 F.3d at 1324-25). Here, by contrast, the Executive Order does not require any specific action regarding the FEC or the FECA.

Plaintiffs argue that the mere fact the President issued the Executive Order and is defending it in litigation necessarily means that he "intends to impose binding legal determinations on the [FEC]." Opp'n 12. But the Executive Order applies generally to the Executive Branch and does not single out or even mention the FEC. And it does not obligate the President or Attorney General to issue legal opinions on any legal issue that may come before executive agencies, such as the FEC.

At bottom, Plaintiffs' argument that future harm is likely rests on their assertion that the President and officials in his administration are likely to "target[]" them because Plaintiffs represent "the political party opposed to the President." *Id.*; *see also id.* at 8 (speculating that FEC proceedings will not be "fair" because President Trump is "the leader of the Republican Party"); Compl. ¶ 3 (suggesting that future actions will "reflect the raw pursuit of electoral advantage by

political opponents").[5]  But these arguments run headlong into the "traditional presumption of regularity," which "has been recognized since the early days of the Republic." *Am. Fed'n of Gov't Emps., AFL-CIO v. Reagan*, 870 F.2d 723, 727 (D.C. Cir. 1989); *see also id.* at 727 n.33 (collecting cases).  Just last week, the Supreme Court reaffirmed that "agencies are entitled to a presumption of regularity." *Food & Drug Admin. v. Wages & White Lion Invs., L.L.C.*, No. 23-1038, --- S. Ct. ---, 2025 WL 978101, at *17 (U.S. Apr. 2, 2025); *see also id.* at *18 ("strong showing" needed to overcome the presumption's "high standard").  The presumption also applies to actions of the President.  *Reagan*, 870 F.2d at 728.  Notably, Plaintiffs do not contend that any actions the FEC has taken so far have been guided by targeting of them or the President's political opponents.  In light of the presumption of regularity, Plaintiffs cannot nudge their claimed injury from speculative to plausible by asserting that it is inevitable that such actions will occur in the future.

Plaintiffs cannot salvage their claim to standing by arguing that they are presently refraining from taking various steps based on their fear that the FEC will take adverse actions against them in the future.  *See* Opp'n 8.  Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416.  Plaintiffs get no further by characterizing their alleged self-inflicted "curtailing" of campaign activity as a violation of the First Amendment.  Opp'n 11.  The Complaint contains no First Amendment claim and does not even mention the First Amendment.  *See generally* Compl.  "[I]t is axiomatic that a party may not amend [its] complaint

---

[5] Along those same lines, Plaintiffs' preliminary injunction submission contends that future FEC actions will be "punitive" and "weaponized against" Plaintiffs, to enact "political retribution." *See* Plaintiffs' Mem. in Supp. of Mot. for Prelim. Inj. ECF No. 12-1, at 19, 21; Decl. of Liberty Schneider ¶ 13, ECF No. 12-2.

through an opposition brief." *Cowtown Found. v. U.S. Dep't of Agriculture*, 638 F. Supp. 3d 1, 9 n.4 (D.D.C. 2022) (quoting *Singh v. Dist. of Columbia*, 55 F. Supp. 3d 55, 70 (D.D.C. 2014)).

## II.     Count II Fails to State a Claim for Relief

Count II of the Complaint, which asks this Court to permanently enjoin Defendants from violating the FECA through the Executive Order, fails to state a claim because the Executive Order does not conflict with the FECA.  Mem. 11-13.

In arguing that such a conflict exists, Plaintiffs rely most heavily on a provision stating that a Commissioner "may not delegate to any person his or her vote or any decisionmaking authority or duty vested in the Commission by the provisions of this Act."  52 U.S.C. § 30106(c).  Plaintiffs argue that a Commissioner who follows a hypothetical future legal opinion issued by the President or Attorney General "does precisely what that provision prohibits."  Opp'n 20.  Not so.  A delegation of statutory authority by an agency official is a formal act in which the official confers authority upon someone else to exercise power conferred on that official by Congress.  For example, the Comprehensive Drug Abuse Prevention and Control Act of 1970, which includes the Controlled Substances Act, confers various authorities on the Attorney General.  *See, e.g.*, 21 U.S.C. § 811.  But the Attorney General has broadly delegated "functions vested in the Attorney General" by that statute to the Administrator of the Drug Enforcement Administration ("DEA").  28 C.F.R. § 0.100(b).  Thus, the DEA Administrator routinely takes actions under the Controlled Substances Act, such as promulgating rules and issuing orders rescheduling controlled substances, acting on authority granted by statute to the Attorney General, which the Attorney General delegated to the DEA Administrator by regulation.  Courts have consistently upheld that delegation.  *See, e.g.*, *Hemp Indus. Ass'n v. Drug Enf't Admin.*, 36 F.4th 278, 282 (D.C. Cir. 2022); *United States v. Burnes*, 816 F.2d 1354, 1360 (9th Cir. 1987).  Section 30106(c) would prohibit FEC Commissioners from similarly delegating to another official the authority to promulgate rules

7

or issue orders under the FECA. But that provision does not preclude Commissioners from taking into account the legal views of the President or Attorney General when the Commissioners exercise statutory authority.

Plaintiffs argue alternatively that the Executive Order is unlawful even if it does not "directly contradict an express statutory provision," Opp'n 20, citing a case holding an executive order unlawful after concluding that it was "incompatible with the overall statutory scheme governing" a particular issue. *Id.* (quoting *HIAS, Inc. v. Trump*, 985 F.3d 309, 325 (4th Cir. 2021)). But in that case, the court found a direct contradiction with an express statutory provision, holding that the order under review was "inconsistent with the ordinary meaning" of a statutory term. *HIAS*, 985 F.3d at 321. That case did not, as Plaintiffs ask this Court to do here, hold an executive order unlawful based on nebulous alleged tension with a statute's "purpose and structure." Opp'n 20.

Moreover, Plaintiffs' arguments that implicit tension exists between the Executive Order and the FECA are misguided. Plaintiffs point to provisions empowering the FEC to promulgate rules, initiate court actions, and issue advisory opinions, based on a majority vote of at least four Commissioners, of whom no more than three may be affiliated with the same political party. Opp'n 21; 52 U.S.C. §§ 30106, 30107, 30109. But the Executive Order does not change the FEC's authority to take such actions, nor does it alter the majority vote or partisan balance requirements. Plaintiffs note that some of these actions "require legal interpretation," Opp'n 21, but they concede that in certain Supreme Court matters, the FEC's legal position is determined by the Solicitor General, who serves under the Attorney General at the pleasure of the President, *see* Opp'n 22; *FEC v. NRA Pol. Victory Fund*, 513 U.S. 88, 96 (1994). Given that authority to direct the FEC's legal position in perhaps the most important legal matters, there is no basis to read into the FECA

8

an implicit requirement that Commissioners must disregard the legal views of the President or Attorney General in other matters.[6]

In sum, Plaintiffs fail to establish any conflict between the Executive Order and the FECA. Therefore, Count II, which argues that the Court must "enjoin Defendants from applying" Section 7 of the Executive Order to the FEC or its Commissioners, Compl. ¶ 79, in order to remedy "violat[ions]" of FECA, *id.* ¶ 77, fails to state a claim.

## CONCLUSION

The Court should dismiss the compliant for lack of subject-matter jurisdiction and should dismiss Count II for failure to state a claim.

---

[6] Plaintiffs are incorrect that Defendants Trump and Bondi have waived any legal position on the constitutionality of the FECA. *See* Opp'n 2, 16-17. Any concession based on not responding to arguments in Plaintiffs' preliminary injunction motion is limited to that motion itself. *See* Local Rule 7(b) ("the Court may treat the motion as conceded" if the opposing party does not respond). And a preliminary injunction motion merely addresses whether a plaintiff is likely to succeed on the merits, not the ultimate merits. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 394-95 (1981). Therefore, a party need not raise all merits arguments at the preliminary injunction stage to preserve them. Regarding Defendants' Motion to Dismiss, arguments that a complaint fails to state a claim are not waived by omitting them from a motion to dismiss, and they may be raised later in litigation, as late as at trial. *See* Fed. R. Civ. P. 12(h)(2); *Newman v. Moore*, 717 F. Supp. 3d 43, 65 & n.14 (D.D.C. 2024) (merits arguments omitted from Rule 12(b)(6) motion can be raised later). Defendants maintain their position that this case presents no live controversy regarding the FECA's constitutionality. But if the Court disagrees, then the "the plain text of [§ 30110] grants exclusive merits jurisdiction" over such a controversy "to the *en banc* court of appeals." *Wagner*, 717 F.3d at 1011. This Court cannot resolve the merits of any question regarding the FECA's constitutionality, and certainly not based on a misguided waiver argument.

| | |
|---|---|
| Dated: April 7, 2025 | Respectfully Submitted, |

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

CHRISTOPHER R. HALL
Assistant Director, Federal Programs Branch

<u>/s/ Jeremy S.B. Newman</u>
JEREMY S.B. NEWMAN
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 532-3114
Fax: (202) 616-8470
Email: jeremy.s.newman@usdoj.gov

*Attorneys for Defendants Donald J. Trump and Pamela Bondi*