# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEMOCRATIC NATIONAL COMMITTEE, *et al.*, <br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, *et al.*, <br> *Defendants*. | Civil Action No. 25-cv-587-AHA |

**BRIEF OF *AMICUS CURIAE* AMERICAN CENTER FOR LAW & JUSTICE IN SUPPORT OF DEFENDANTS**

Jordan Sekulow
   (D.C. Bar No. 991680)
Donn Parsons*
   (Ohio Bar No. 87305)
Stuart J. Roth
   (D.C. Bar No. 475937)
Andrew J. Ekonomou*
   (Ga. Bar No. 242750)
Benjamin P. Sisney
   (D.C. Bar No. 1044721)
Liam R. Harrell*
   (D.C. Bar No. 1740309)
AMERICAN CENTER FOR LAW & JUSTICE
201 Maryland Ave. NE
Washington, DC 20002
Phone: (202) 641-9163
Fax: (202) 546-9309
Email: bsisney@aclj.org

*Counsel for Amicus Curiae*

*Not Admitted in this Court

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTEREST OF AMICUS CURIAE ........................................................................................ 1

ARGUMENT ........................................................................................................................... 2

    I.      The Executive must be unified to be effective. ................................................ 4

    II.     The FEC is more than a "quasi-judicial" agency; it exercises truly executive power. ........................................................................................... 7

          A.     Law Enforcement ................................................................................... 7

          B.     Executive Policy Implementation .......................................................... 8

          C.     Discretionary Enforcement .................................................................... 8

    III.    Allowing an Executive Agency the power to contradict the President violates the Constitution and is contrary to good government. ..................... 9

CONCLUSION ...................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Buckley v. Valeo* 424 U.S. 1, 125-28 (1976)..................................................................................3

*Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477 (2010) ..5, 10, 11

*Freytag v. Comm'r*, 501 U.S. 868, 921 (1991)................................................................................6

*Heckler v. Chaney*, 470 U.S. 821, 831 (1985)................................................................................9

*Humphrey's Ex'r v. United States*, 295 U.S. 602, 624 (1935)......................................................10

*INS v. Chadha*, 462 U.S. 919, 944 (1983) .....................................................................................3

*Marbury v. Madison*, 5 U.S. 137, 178 (1803) .............................................................................14

*Morrison v. Olson* 487 U.S. 654, 754 (1988) ......................................................................4, 8, 10

*Myers v. United States*, 272 U.S 52 (1926).....................................................................................6

*Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197 (2020) ...........................................6

*Wiener v. United States*, 357 U.S. 349, 353 (1958)......................................................................10

**Statutes**

52 U.S.C. § 30107 .....................................................................................................................7, 12

52 U.S.C. §§ 30106 .......................................................................................................................12

**Other Authorities**

*Collected Works of Abraham Lincoln* 461 (1953) ..........................................................................7

THE FEDERALIST NO. 47 ................................................................................................................2

THE FEDERALIST NO. 49 ..............................................................................................................13

THE FEDERALIST NO. 70 ....................................................................................................... passim

**Treatises**

Elena Kagan, *Presidential Administration*, 114 Harv. L. Rev. 2245, 2332 (2001) .....................6

**Constitutional Provisions**

.S. Const. art. I, § 9, cl. 3...............................................................................................................9

U.S. Const. art. II, § 1, cl. 1 ............................................................................................................4

## INTEREST OF AMICUS CURIAE [1]

The American Center for Law and Justice ("ACLJ") is an organization dedicated to the defense of constitutional liberties and the constitutional structure of government as originally understood by the Framers. The ACLJ possesses a fundamental interest in supporting the separation of powers and the constitutionally assigned authority of the executive branch. ACLJ attorneys have appeared often before the Supreme Court as counsel for parties, *e.g.*, *Trump v. Anderson*, 601 U.S. 100 (2024) (unanimously holding that states have no power under the U.S. Constitution to enforce Section Three of the Fourteenth Amendment with respect to federal offices); *McConnell v. FEC*, 540 U.S. 93 (2003) (unanimously holding that minors enjoy the protection of the First Amendment); *Lamb's Chapel v. Center Moriches Sch. Dist.*, 508 U.S. 384 (1993) (unanimously holding that denying a church access to public school premises to show a film series on parenting violated the First Amendment); or as amici, *e.g.*, *Republican Nat'l Comm. v. Genser*, No. 24A408 (2024); *Trump v. United States*, 603 U.S. 593 (2024); *Fischer v. United States*, 603 U.S. 480 (2024); and *Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 600 U.S. 181 (2023).

---

[1] Pursuant to Fed. R. App. P. 29(a)(4)(E), *amicus curiae* states that no counsel for any party authored this brief in whole or in part, and no entity or person, aside from amicus curiae, its members, and its counsel, made any monetary contribution toward the preparation or submission of this brief. All parties have consented to the filing of this amicus brief.

**ARGUMENT**

Plaintiffs ask this Court to grant the extraordinary relief of a preliminary injunction against an Executive Order, one which merely requires that officers of the Executive Branch consult with the head of the Executive Branch. This Court should deny this relief, not only because any risk of harm is purely speculative and self-imposed, but also because Plaintiffs stand with no likelihood of success.

The Framers of our Constitution clearly laid out a tripartite separation of powers with three vesting clauses that begin the first three articles of the Constitution. Far from being an incidental feature, "[n]o political truth is certainly of greater intrinsic value, or is stamped with the authority of more enlightened patrons of liberty," than the separation of powers; allowing the accumulation of powers in any one branch, "whether hereditary, self-appointed, or elective may justly be pronounced the very definition of tyranny." THE FEDERALIST NO. 47 (James Madison). In that system the Executive, unlike the other branches, requires "unity," requiring that this power not be destroyed by "vesting the power in two or more magistrates of equal dignity and authority; or by vesting it ostensibly in one man, subject, in whole or in part, to the control and co-operation of others, in the capacity of counsellors to him." THE FEDERALIST NO. 70 (Alexander Hamilton).

In recent years, Congress has begun the creation of "independent agencies," such as the Federal Election Commission ("FEC") which was designated an "independent

establishment within the executive branch." Sec. 308 (a) of the Federal Election Campaign Act ("FECA") (as amended 1974, later changed)). In this Act, Congress significantly restrained the President's ability to choose his own officers to fill the Commission, a blatantly unconstitutional encroachment on the appointment power. *Buckley v. Valeo* 424 U.S. 1, 125-28 (1976) (*per curiam*; even with five dissents in part, no justice dissented on the unconstitutionality of the congressional appointment scheme). In its *Buckley* decision, the Supreme Court made it clear that the formalized intent of the Framers, as expressed in the Constitution's plain text, controls over convenience, custom, or innovation. *See Id.* at 138-39. Furthermore, the Court has clearly expressed that "the fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution." *INS v. Chadha*, 462 U.S. 919, 944 (1983) (striking down a single-chamber congressional veto of Executive decisions). Processes like the Appointments Clause should not be read as mere "etiquette or protocol," but instead are demonstrative of the Framers' "expressions of fear that the Legislative Branch of the National Government will aggrandize itself at the expense of the other two branches." *Buckley*, 424 U.S. at 129. Now, Plaintiffs contend Congress should be allowed to thwart Executive unity by insisting that the FEC's officers may promulgate legal and policy opinions contrary to those of the democratically elected head. Plaintiffs' argument dramatically expands previously recognized exceptions, such as tenure in office and civil service protections, effectively creating a new fourth branch

Page 3 of 15

of government, a "co-Executive" democratically accountable to no one and in stark contrast to the Framers' clear intent of a unitary executive.

## I.     The Executive must be unified to be effective.

The Unitary Executive Theory stands on a fundamental constitutional premise: effective executive power requires unity of purpose, decision, and action. This principle was not merely an administrative preference of the Framers—it was a deliberate constitutional design choice based on historical experience and political wisdom.

Article II begins unambiguously: "The executive Power shall be vested in a President of the United States of America." U.S. Const. art. II, § 1, cl. 1. This singular vesting contrasts sharply with Article I's plural vesting of legislative power in a "Congress" consisting of two chambers. As Justice Scalia noted in his dissent in *Morrison v. Olson*, "this does not mean some of the executive power, but all of the executive power." *Morrison v. Olson* 487 U.S. 654, 754 (1988) (Scalia, J., dissenting). The Federalist Papers clarify this intent extensively. In Federalist No. 70, Alexander Hamilton provides the definitive explanation:

> Decision, activity, secrecy, and dispatch will generally characterize the proceedings of one man in a much more eminent degree than the proceedings of any greater number; and in proportion as the number is increased, these qualities will be diminished.

THE FEDERALIST NO. 70 (Alexander Hamilton). Hamilton further warned that plurality in executive authority would tend to "conceal faults, and destroy responsibility." *Id.* A

divided executive creates confusion about who bears ultimate responsibility, enabling blame-shifting and accountability evasion.

The Framers understood that effective governance requires different attributes (and limitations) for different branches. While deliberation and debate benefit the legislative process, they hamper executive function. As the Supreme Court made clear in *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, if Congress hampers the executive, "the President could not be held fully accountable for discharging his own responsibilities; the buck would stop somewhere else . . . diffusion of authority 'would greatly diminish the intended and necessary responsibility of the chief magistrate himself.'" 561 U.S. 477, 513-14 (2010) (quoting THE FEDERALIST NO. 70). Executive power exists precisely to execute laws with decisiveness and coherence. When this power fragments across independent agencies or officers not fully accountable to the President, several problems emerge: diminished accountability, policy incoherence, ineffective response to crisis, and a lack of democratic legitimacy.

The Framers had witnessed the ineffectiveness of the Articles of Confederation's weak executive structure. They deliberately rejected plural executives like ancient Rome's consuls or triumvirates, systems that had historically led to paralysis or power struggles. *See* THE FEDERALIST NO. 70 (Alexander Hamilton). In *Myers v. United States*, Chief Justice Taft, himself a former President, emphasized that the Constitution grants the President

"the power of appointment and removal of executive officers—a conclusion confirmed by his obligation to take care that the laws be faithfully executed." 272 U.S 52, 164 (1926).

While the Court has allowed certain limitations on presidential control, justices across ideological lines have recognized the importance of executive unity. As Justice Elena Kagan wrote before her appointment, "the Presidency's unitary power structure, its visibility, and its 'personality' all render the office peculiarly apt to exercise power in ways that the public can identify and evaluate." Elena Kagan, *Presidential Administration*, 114 Harv. L. Rev. 2245, 2332 (2001). The Court's decision in *Seila Law v. Consumer Financial Protection Bureau* (2020), reinforced this principle, invalidating for-cause removal protection for the single director of an independent agency as incompatible with Article II's vesting of executive power. *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197 (2020).

The Unitary Executive Theory is not merely about presidential power—it's about constitutional design. The Framers understood that a divided executive, with multiple competing wills and minds, would be ineffective at best and dangerously dysfunctional at worst. As Justice Scalia warned, departures from this principle create "a headless Fourth Branch" of government unaccountable to the people. *Freytag v. Comm'r*, 501 U.S. 868, 921 (1991) (Scalia, J., concurring in part and concurring in judgment). For the Executive to fulfill its constitutional role with the energy and efficiency the Framers envisioned, it must maintain unity in task, purpose, and mind—just as the Constitution

intended. As Abraham Lincoln famously said, a "house divided against itself shall not stand." 2 *Collected Works of Abraham Lincoln* 461 (1953) (quoting *Matthew* 12:25).

**II.    The FEC is more than a "quasi-judicial" agency; it exercises truly executive power.**

It is certainly true that the FEC engages in quasi-legislative and quasi-judicial roles. *See, e.g.*, 52 U.S.C. § 30107(a) (1)-(5). However, many of its powers are firmly executive. Quasi-judicial and quasi-legislative functions do not negate the fundamentally executive nature of its other responsibilities. Most importantly, the FEC acts not only as judge, but also prosecutor: the FEC may *initiate* its own civil actions. 52 U.S.C. § 30107(a)(6). The enforcement of campaign finance laws—investigating violations, bringing actions against violators, and ensuring compliance—remains an executive function that, under the Constitution's design, should remain accountable to the President. The current structure of the FEC, which purports to insulate these executive functions from presidential control, stands in tension with the Constitution's vesting of executive power in a single, accountable President. This division of executive authority undermines the unity of purpose, mind, and action that the Framers understood as essential to effective governance.

**A.    Law Enforcement**

The FEC investigates potential violations of campaign finance laws and pursues civil enforcement actions against violators. As the Supreme Court recognized in *Morrison*

*v. Olsen*, "[g]overnmental investigation and prosecution of crimes is a quintessentially executive function." *Morrison*, 487 U.S. at 706 (Scalia, J., dissenting). *Accord Morrison*, 487 U.S. at 691 ("there is no real dispute that the [law enforcement] functions . . . are 'executive'") (majority op.). The law enforcement power, the power to investigate wrongdoing, gather evidence, and bring actions against violators, has been recognized since the earliest days of the Republic as a quintessential executive power, one that requires unified direction and accountability.

### B. Executive Policy Implementation

The Commission establishes enforcement priorities and procedures, determining how and when to deploy its investigative resources. This discretionary authority to determine the focus and methods of law enforcement embodies the kind of executive judgment that Hamilton described in Federalist No. 70 as requiring "decision, activity, secrecy, and dispatch." THE FEDERALIST NO. 70 (Alexander Hamilton). The FEC's implementation choices directly impact how election laws operate in practice—decisions that should be subject to democratic accountability through the President.

### C. Discretionary Enforcement

The FEC exercises prosecutorial discretion in deciding which cases to pursue, a power traditionally vested in the Executive Branch. As the Court noted in *Heckler v. Chaney*, enforcement decisions are "peculiarly within [an agency's] expertise" and

involve "a complicated balancing of a number of factors" including "whether agency resources are best spent on this violation or another." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). Indeed, the Constitution specifically forbids the Legislature from invading this province by prohibiting Bills of Attainder. *See* U.S. Const. art. I, § 9, cl. 3. When the FEC decides to pursue some violations while declining to act on others, it performs a function that the Constitution assigns to the President, who takes an oath to "faithfully execute" the laws.

The Framers intentionally vested executive power in a single President to ensure accountability and effective governance. As Alexander Hamilton argued in Federalist No. 70, "a plurality in the Executive . . . tends to conceal faults and destroy responsibility." THE FEDERALIST NO. 70 (Alexander Hamilton). Congress is free to define the FEC's structure with however many Commissioners it may choose, however it cannot untether those officers from the authority of the chief executive.

### III. Allowing an Executive Agency the power to contradict the President violates the Constitution and is contrary to good government.

In an effort to demonstrate a likelihood of success on the merits, Plaintiffs argue that the FEC's structure is well established in law. Plaintiffs cite *Humphrey's Executor*, *Wiener* and *Morrison* to support this conclusion (P's Memo at 12). Plaintiffs focus on the makeup of the Commission, *i.e.*, the multi-member nature and the partisanship rules. *Id.* at 13. However, the structure of the Commission is not the subject of the President's

Order, rather the Order concerns the FEC's ability to act upon a legal conclusion in opposition to the Executive Branch's own. In *Humphrey's Executor*, the Supreme Court held that the FTC (before receiving many of its modern powers and scope of authority) was "predominantly quasi-judicial and quasi-legislative," and that its "duties are neither political nor executive." *Humphrey's Ex'r v. United States*, 295 U.S. 602, 624 (1935). Similarly, in *Wiener* the Supreme Court held that "the most reliable factor for drawing an inference regarding the President's power of removal . . . is the ***nature of the function that Congress vested***" in a particular officer or organ of government. *Wiener v. United States*, 357 U.S. 349, 353 (1958) (holding that the War Claims Commission was quasi-judicial) (emphasis added). *Cf. Free Enterprise Fund v. PCOAB*, 561 U.S. at 519 ("the Court in [separation of powers] circumstances has looked to function and context") (Breyer, J., dissenting). Finally, *Morrison* is completely inapposite to this case, as it delt with inferior officers, a category which nobody argues encompasses the Federal Trade Commissioners. *See, Morrison*, 487 U.S. 654. None of the cases support the argument actually proposed by Plaintiff: that the Congress has the power to partially strip the President of Executive power.

This is not to say that the removal cases cited by Plaintiffs are not informative; they speak to the extent of congressional checks on Presidential power. Ultimately, however, the case at bar is not about removal or civil service protections; instead, it speaks to a fundamental issue striking at the core of what the office of the President is. The President

is not a ceremonial head of state like the President of Germany or King of Sweden, nor is he a creature of the legislature serving at the whims of coalitions and faction like the United Kingdom's Prime Minister. The Constitution intentionally vests real executive power in a single President, ensuring accountability and effective governance.

As Alexander Hamilton argued, "a plurality in the Executive . . . tends to conceal faults and destroy responsibility." THE FEDERALIST NO. 70 (Alexander Hamilton). While the FEC's structure is certainly designable by Congress who retains final legislative power and can make an individual agency headed by a Commission rather than a single person, that Commission must be under the President. In *Free Enterprise Fund*, the Supreme Court emphasized that "Article II confers on the President 'the general administrative control of those executing the laws.'" *Free Enterprise Fund*, 561 U.S. at 492 (*citing Myers v. United States*, 272 U.S. 52, at 164). Indeed, it is "*his* responsibility to take care that the laws be faithfully executed." *Id*. at 493 (emphasis in original).

As discussed *supra*, the FEC exercises Executive functions. This fact was not disputed by Congress when it enacted the FECA nor is it disputed by Plaintiffs now. Rather, Plaintiffs argue that policy reasons can justify such a departure from the Constitution. Merely pulling on a thread, however, unravels the argument's tapestry. From where does Congress obtain its power to do so? The answer is from its own Article I vesting clause. This raises the question, though: why and how can Congress' Article I

vesting clause outweigh the President's Article II vesting clause? These are precisely the sort of "encroachments" of which the Founders warned.

There may be well-intentioned policy reasons to insulate the singular Executive from enforcement of political campaign laws. Congress certainly felt so when they enacted legislation giving the FEC "exclusive jurisdiction," separate from the President, to administer, interpret, and civilly enforce the FECA. *See generally* 52 U.S.C. §§ 30106, 30107. But that isolation from the President effectively altered the systems of checks and balances in the Constitution. Rather than "executive power vesting in a President of the United States of America," Congress assumed for itself the power to redirect a portion of the executive power into a new agency only indirectly influenced by the President. Plaintiffs must, to meet the high standard of an extraordinary preliminary injection, persuasively argue that this is likely to survive the Court's scrutiny. It will not.

Such a fundamental alteration would require amending the Constitution. As James Madison wrote:

> *As the people are the only legitimate fountain of power*, and it is from them that the constitutional charter, under which the several branches of government hold their power, is derived, *it seems strictly consonant to the republican theory, to recur to the same original authority*, not only whenever it may be necessary to enlarge, diminish, or new-model the powers of the government, but also *whenever any one of the departments may commit encroachments on the chartered authorities of the others*. The several departments being perfectly co-ordinate by the terms of their common commission, none of them, it is evident, can pretend to an

> exclusive or superior right of settling the boundaries between their respective powers[.]

THE FEDERALIST NO. 49 (James Madison) (emphasis added). This crystalizes the key issue: Congress may not circumvent the Constitution and the separation of powers it mandates by usurping the Executive's authority, placing restrictions on the Executive as it deems fit.

## CONCLUSION

Plaintiffs raise reasons why an independent FEC may in fact constitute legitimate policy. Any such reasons are irrelevant to this Court's analysis of its legality. "The Constitution is to be considered, in court, as a paramount law." *Marbury v. Madison*, 5 U.S. 137, 178 (1803). The statutory provisions upon which Plaintiffs rely are all ordinary legislative acts which, as John Marshall emphatically announced, when "contrary to the Constitution [are] not law." *Id.* at 177. Only the People of the United States, through the amendment process laid out in the Constitution, may alter the fundamental balance between the coordinate branches of government. To allow any one branch, no matter the good intentions or sound policy, to alter that arrangement is an affront to our Constitution's place as "paramount law." For these reasons, and others, Amicus urge this Court to conclude Plaintiffs are not likely to succeed on the merits of their case and to DENY Plaintiffs' Motion for Preliminary Injunction.

Respectfully Submitted,

Jordan Sekulow
Donn Parsons*
Stuart J. Roth
Andrew J. Ekonomou*

*/s/ Benjamin P. Sisney*
Benjamin P. Sisney
Liam R. Harrell*
American Center for Law & Justice
201 Maryland Ave., NE
Washington, DC 20002
Phone: (202) 641-9163

Fax: (202) 546-9309

Email: bsisney@aclj.org

*Not Admitted in this Court

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2025, I electronically filed a copy of the foregoing Brief of Amicus Curiae using the ECF System which will send notification of that filing to all counsel of record in this litigation.

Dated: March 25, 2025

<u>/s/ Benjamin P. Sisney</u>
Benjamin P. Sisney
*Counsel for Amicus Curiae*